**Exhibit 2**



1634 I Street NW, Suite 575, Washington, DC 20006
Telephone: 202-386-6920  Facsimile: 202-765-2173

Eugene Gorokhov, Esq.
eugene@burnhamgorokhov.com
Licensed to practice in Virginia
and the District of Columbia

February 17, 2025

**VIA EMAIL**

Steve Wasserman
United States Attorney's Office
District of Columbia
601 D St NW
Washington, DC 20004

> Re:   US v. Jin Guanghua, Case No. 1:23-cr-91—*Requests for Discovery and* **Brady** *Materials.*

Dear Counsel,

We have received from Mr. Jin's predecessor counsel what are labeled as government's discovery Productions 1 and 2. We are awaiting further information from the government regarding the iCloud evidence and any related warrant materials. We write separately now to make formal requests under Fed. R. Crim. Proc. 12, 16 and 26.2, *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and the Fifth and Sixth Amendment to the U.S. Constitution.

These requests encompass documents[1] and information in the possession, custody, or control of not just the United States Attorney's Office for the District of Columbia, but also any other individual or entity (including[2] any federal, state, or local agency) allied with the prosecution, or was involved in any way in the investigation or prosecution of this case. These requests also encompass documents and information reviewed or relied upon by any of the foregoing individuals or entities, or any agents thereof. In this letter, "government" and "you" refer to all of the foregoing entities.

To the extent there is underlying source material for any of the requested documents or information, the government should produce the underlying source material in addition to any summary letter or paraphrased description of that material. For example, if exculpatory information is contained

---

[1] The word "documents" refers to all media that contain information, including all books, papers, letters, correspondence, reports, memoranda, studies, calendars, appointment books, diaries, notes, messages, e-mail, text messages, digital records, other computer-facilitated or transmitted materials, images, photographs, audio or video tapes, recordings, transcripts, ledgers, receipts, printouts, and any other written, recorded, or memorialized material of any nature whatsoever.

[2] Throughout this document, "include" means "include without limitation," and "including" means "including but not limited to." This clarification applies to footnotes, including footnote 1 and this footnote, as well as to the body of the letter.

in an FBI-302, the government should disclose the FBI-302 report in addition to any summary of the exculpatory information. If the government is refusing to produce the underlying source material as to any request, please advise us so promptly.

As you are aware, the government's obligations are not limited to information that is tangible or recorded,[3] or even admissible under the Rules of Evidence.[4] All of the requests in this letter therefore cover information in whatever form, from whatever source, regardless of its admissibility. As you also know, the prosecution has a non-delegable duty to search for exculpatory information,[5] and must provide that information to the defense even if it is otherwise protected by privilege or statute.[6]

Finally, all of these requests are continuing in nature, requiring supplementation in accordance with Rule 16(c) of the Federal Rules of Criminal Procedure.[7]

## SPECIFIC REQUESTS

### I. Statements, Documents, and Objects of the Defendant.

Pursuant to Rule 16(a)(1)(A), (B), and (E)(iii), Mr. Jin requests all statements that he made or that were attributable to him, as well as all documents and objects obtained from him, including:

> (1) Any written or recorded statement or admission made by Mr. Jin that is within the government's possession, custody, or control, or of which the government knows or could learn through due diligence, including but not limited to all notes, reports, and memoranda summarizing any statement by Jin to law enforcement officials at the time of his arrest; all transcripts and recordings of conversations in which Jin was a participant; all wire and oral communications made by Jin that were transmitted to or intercepted by, for or on behalf of any government agent or employee or any agency or entity of the U.S. government; all written and recorded statements of witnesses that reflect, relate, or incorporate any statements made by Jin; and all other documents that purport to reflect, relate, or incorporate any statements made by Jin.[8]

---

[3] See, e.g., United States v. Rodriguez, 496 F.3d 221, 226 (2d Cir. 2007).

[4] See, e.g., Ellsworth v. Warden, 333 F.3d 1 (1st Cir. 2003); USAM § 9-5.001.C.

[5] Kyles v. Whitley, 514 U.S. 419, 437 (1995).

[6] See, e.g., United States v. Kohring, 637 F.3d 895, 908 (9th Cir. 2010) ("prosecution ha[d] a duty to disclose the non-cumulative underlying exculpatory facts in the [prosecutor's] email" (internal quotations and citation omitted)).

[7] All subsequent references to a Rule refer to the Federal Rules of Criminal Procedure unless stated otherwise.

[8] To date, it is apparent that the government has failed to produce all such documents and information. For example, on or about May 15, 2019, the government's undercover agent discussed with James Han a "letter" that was allegedly sent to him or to ▓▓. See Transcript, USAO 0004051. However, no such communication has been included in the discovery provided to date.

(2) The portion of any written record containing the substance of any oral statement made by Mr. Jin in response to interrogation by any person then known to the defendant to be a government agent. This request includes all documents, including notes, prepared by any government employee or agent that contain the substance of any relevant statement made by Mr. Jin;

(3) The substance of any other oral statement made by Mr. Jin in response to the interrogation by any person Mr. Jin knew to be a government agent, whether before or after arrest;

(4) Any other statements made by Mr. Jin not covered by the above requests, including statements of third parties that include Mr. Jin's statements.[9]

(5) All transcripts and translations of any statement covered by the foregoing requests, to the extent such transcripts or translations exist and are in the custody, possession, or control of the government.

(6) All documents and objects, including without limitation books, papers, data, photographs, other tangible items, and the images and contents of any electronic device, that were obtained from or belonged to Mr. Jin, or to any entity under his alleged ownership or control at any point during the alleged crimes.

## II. Statements of Those with Knowledge.

Pursuant to Rule 16(a)(1)(E)(i), Mr. Jin requests all statements, written or oral, made by persons known to or interviewed by the government who have knowledge of facts pertaining to this case, or the government's investigation of this or related cases. The names of persons with knowledge of the facts relevant to the case are the most critical information obtainable for preparation of an adequate defense to ensure a fair trial.[10] Such statements should include, but are not limited to, statements by co-defendants, unindicted co-conspirators, informants,[11] victims, witnesses, as well as individuals acting as agents for entities, who were interviewed in the course of the investigation.

## III. Documents Relating to Financial Institutions.

Pursuant to Rule 16(a)(1)(E)(i), Mr. Jin requests the following materials:

---

[9] *See United States v. Thevis*, 84 F.R.D. 47, 55-56 (N.D. Ga. 1979); *Davis v. United States*, 413 F.2d 1226, 1230-31 (5th Cir. 1969) (recordings of conversation between defendant and Government informant held to be statement of defendant and discoverable); *United States v. Bailleaux*, 685 F.2d 1105, 1114 (9th Cir. 1982) ("We believe the government should disclose any statement made by the Defendant that may be relevant to any possible defense or contention that the Defendant might assert. Ordinarily, a statement made by the Defendant during the course of the investigation of the crime charged should be presumed to be subject to disclosure, unless it is clear that the statement cannot be relevant. Where the Government is in doubt, the written or recorded statement should be disclosed, if a proper request is made."), *modified on other grounds, Huddleston v. United States*, 485 U.S. 681 (1988).

[10] *United States v. Cadet*, 727 F.2d 1453, 1468-69 (9th Cir. 1984).

[11] As *used* in this letter, the term "informant" refers to any individual who worked or is working on behalf of the government for any form of consideration, as defined in § IX(5)b. *infra*, or who provided information to the government without expecting or receiving any such consideration. This term includes confidential informants, cooperating witnesses, undercover informants, etc.

    (1) All documents that the government alleges were transmitted to, shown, or in any manner shared with or made available to any financial institution by the Defendant or any alleged co-conspirator, in connection with the allegations set forth in the indictment;[12]

    (2) All statements, written or oral, made by the financial institutions (including U.S. and foreign financial institutions) that relate to any transaction that are alleged to have been performed as part of the conspiracies charged in the indictment.

    (3) All documents and communications between the government or any of its agencies or departments (including but not limited to the Office of Foreign Asset Controls and the Department of Treasury) and any financial institution (including both U.S. and foreign financial institutions) regarding any transaction alleged to have been performed as part of the conspiracies charged in the indictment.

    (4) All documents, internal records, memoranda, communications, or other information and material from any financial institution that are in the government's possession, custody, or control, that relates to or reflects the financial institution's attempt to investigate, freeze, block, or reject a transaction that is alleged to have been performed as part of the conspiracies charged in the indictment.

## IV. Grand Jury Materials.

Pursuant to Rule 16(a)(1)(E)(i), Mr. Jin requests the following:

    (1) All documents relating to Mr. Jin or the conduct alleged in the indictment that were introduced as exhibits before the grand jury. We request that any materials in this category be specifically identified from among the materials produced pursuant to the defendant's other Rule 16 and *Brady* requests.

    (2) All documents relating to Mr. Jin or the conduct alleged in the indictment that were obtained by or for the grand jury, or pursuant to any grand jury or trial subpoena. This request includes any documents furnished informally to prosecutors in lieu of formal compliance with a subpoena.

    (3) All documents relating to Mr. Jin or the conduct alleged in the indictment obtained from any witness who testified before the grand jury, or who was interviewed or consulted during the course of the grand jury investigation.

## V. Investigative Documents and Material.

Pursuant to Rule 16(a)(1)(E)(i), Mr. Jin requests the following:

---

[12] To the extent that such documents have already been produced in discovery, please identify with specificity any such document, the financial institution(s) to which such documents were provided, the date on which they were provided to the financial institution(s), and all related communications in connection with the provision of such documents to the financial institution(s) that received them.

   (1) All investigative materials in the possession of the DOJ, the FBI, DHS, or any other agency relating to the investigation of this case or any related cases.

   (2) All communications between law enforcement agencies, including federal, state, and local law enforcement agencies related to the investigation or prosecution of this case or related cases.

### VI. Inter- and Intra-Governmental Documents and Material.

Pursuant to Rule 16(a)(1)(E)(i), Mr. Jin requests the following:

   (1) All communications between the government and any foreign government, including but not limited to communications with any foreign government's law enforcement authorities, relating to the investigation of this case or any related case.

   (2) All communications between or with any other federal, state, or local agency, including but not limited to: OFAC, the Department of Treasury, the Department of State, and the Department of Commerce, related to the investigation or prosecution of this case or related cases.

   (3) All documents relating to Mr. Jin or the conduct alleged in the indictment obtained from any federal, state or local governmental, regulatory or legislative body or agency.

### VII. The Government's Case-in-Chief Material.

Pursuant to Rule 16(a)(1)(E)(ii), Mr. Jin requests all books, papers, documents, data, photographs, or tangible objects, or copies or portions thereof, that the government intends to use at trial in its case-in-chief. We ask that any materials in this category be specifically identified from among the materials produced pursuant to the defendant's other requests, both to enable counsel to prepare effectively for trial and to afford Mr. Jin an opportunity to move to suppress any evidence the prosecution intends to use in its case-in-chief. See Fed. R. Crim. P. 12(b)(3)(C) and 12(b)(4)(B).

### VIII. Documents Related to Specific Allegations in the Indictment

Pursuant to Rule 16(a)(1)(E)(i), Mr. Jin requests the following:

   (1) All documents, including but not limited to emails, bills of lading, invoices, payment records, shipping records, and government reports[13] that are specifically referenced in the indictment.

   (2) All documents and information relating to KKBC and FTB's alleged payments to the ENTITIES in connection with the charged conspiracies, whether such payments were made through DHID, other Chinese front companies, or any other entity not specifically identified in the indictment.

---

[13] For example, the Congressional Research Service report referenced in paragraph 32 of the indictment, or the U.S. Department of State report referenced in paragraph 33 of the indictment.

(3) All documents and information relating to the ENTITIES' alleged purchases (of Tobacco or otherwise) on behalf of KKBC, FTB, or any other North Korean entity that is alleged to have been performed as a part of the charged conspiracies in this case.

(4) All documents and information relating to any transaction between the ENTITIES, Company 1, KKBC, FTB, DHID, other chinese front companies, or any other entity, that is alleged to have been performed as a part of the charged conspiracies, wherein the transaction was investigated, frozen, blocked, or declined by a financial institution.

(5) All entity registration records or other documents of a similar nature for the ENTITIES reflecting time and place of registration, ownership, and changes in names.

(6) All "bank records" referenced in paragraph 43 of the Indictment.

(7) All documents relating to the "false and fraudulent pretenses, representations and promises" at issue in Count 1 of the indictment. Indictment ¶ 47.

(8) All documents and information relating to DHID, as well as any other "Chinese front company," or "front company" as those terms are used in the indictment, that is alleged to have paid money to the ENTITIES, Company 1, or otherwise is alleged to have conducted transactions on behalf of North Korea or North Korean banks. *See, e.g.* id. ¶¶ 48(a), 54(c).

(9) All documents[14] relating to the alleged "false information" referred to in Count 1 of the indictment. Id. ¶ 48(d).

(10) All documents and information relating to the name changes referred to in paragraph 48(f) of the indictment. Id. ¶ 48(f).

(11) All documents relating to the alleged specific "U.S. dollar financial transactions made by Chinese front companies" referred to in Count 1. Id. ¶ 50, *et seq.*

(12) All documents relating to the alleged "U.S. dollar financial transactions made by FTB" referred to in Count 1. Id. ¶ 51, *et seq.*

(13) All documents reflecting the alleged "reincorpora[tion]" of the companies referred to in Count 1. Id. ¶ 52, *et seq.*

---

[14] For documents relating to any financial transactions, the documents produced should include, but are not limited to, all documents in the possession of any financial institution(s) involved in the alleged transaction, as well as documents in the possession of the Office of Foreign Asset Controls ("OFAC") and the US Treasury. These documents should include, but are not limited to, all records of wire transfers including payment instructions, SWIFT messages and subsequent expansions or iterations of such messages, Fedwire messages/records., CHIPS messages/records, due diligence reports, logs, contracts, invoices, bills of lading, communications, and internal notes.

(14) All documents reflecting the alleged payments to Company 1 the sum of "approximately $35 million" through "102 wire transactions, all of which were processed by U.S. financial institutions" referred to in Count 1. Id. ¶ 53, *et seq.*

(15) All documents reflecting the alleged "payments to Company 1" referred to in Count 1. Id. ¶ 54, *et seq.*

(16) All documents reflecting the alleged "15 historical payments" referred to in Count 1. Id. ¶ 56.

(17) All shipping records specifically referenced in paragraph 57 of the indictment. Id. ¶ 57.

(18) All documents reflecting the "false information" allegedly supplied to Company 1 referred to in Count 1. Id. ¶ 58.

(19) All documents and communications relating to the government's request to introduce an undercover agent into Company 1. Id. ¶ 62.

(20) All documents reflecting the "financial transaction that had been frozen by a bank" referred to in Count 1. Id. ¶ 63.

(21) All documents reflecting the "problems Company 1 was having related to blocking of funds for the ENTITIES' transactions" referred to in Count 1. Id. ¶ 64.

(22) All documents reflecting any and all transactions subject to the "bank freeze" referred to in Count 1. Id. ¶ 65, 66.

(23) All documents reflecting the helicopter procurement referred to in Count 1. Id. ¶¶ 67-70.

(24) All documents reflecting the "U.S. dollar wire transfer" and related query referred to in Count 1. Id. ¶ 72.

(25) All documents relating to the "payment made by one of the ENTITIES to a South Korean tobacco filter supplier, which had been frozen by a U.S. financial institution" referred to in Count 1. Id. ¶ 73.

(26) All documents that were allegedly "circulat[ed]" by the ENTITIES, referred to in Count 1. Id. ¶ 74.

(27) All documents relating to the "financial services," "financial institutions located in the United States," and "North Korean entities" referred to in Counts 2 through 6. Id. ¶¶ 78, 80.

(28) All documents and information relating to the "place in the United States" referred to in Counts 7 through 12 of the indictment, including, but not limited to, documents reflecting the specific branches of the U.S. financial institutions that allegedly processed the transactions at issue. Id. ¶¶ 83-84.

(29) All documents reflecting the alleged monetary transactions and transfers referred to in Counts 8-12. Id. ¶ 84.

### IX. Other Documents Material to the Preparation of the Defense

Pursuant to Rule 16(a)(1)(E)(i), Mr. Jin requests the following:

(1) All books, papers, documents, data, photographs, or tangible objects, or copies or portions thereof, that are material to Mr. Jin's defense including all law enforcement reports or memoranda prepared in connection with the investigation of this case or any related cases.[15]

(2) All translations of conversations, emails and documents that the government or any of its agents created but that have not been produced to date.[16]

(3) All documents relating to press releases or press conferences concerning Mr. Jin or the investigation of the defendant, and all other documents relating to any contacts between the government and representatives of the media concerning Mr. Jin or the investigation of the defendant.

(4) All documents relating to the reputation of Mr. Jin, including, without limitation, any documents relating to Mr. Jin's reputation for honesty, integrity, or competence.

### X. Reports of Examinations and Tests.

Pursuant to Rule 16(a)(1)(F), Mr. Jin requests the results or reports of any physical or mental examinations, scientific tests, or experiments that were conducted in connection with the investigation of the charges contained in the indictment. This information includes, but is not limited to: all forensic examinations of any computer hard drive, handheld cellular telephone or mobile device that Mr. Jin possessed or to which Mr. Jin had access; all forensic examinations of any social media account, email account, or cloud computing account that Mr. Jin possessed or to which he had access; all handwriting exemplars, handwriting samples, handwriting or document analyses, and all documents examined or used in or related to such analyses; all fingerprint and palm print exemplars, fingerprint samples, comparisons, and opinions of fingerprint experts, and all documents examined or used in connection with, or that relate to, those opinions; and all polygraph examinations, psychological stress examinations, hypnotic procedures, or any other scientific procedures devised to determine whether a subject is telling the truth, or to refresh a witness' memory, and all documents that refer or relate to such examinations.

### XI. Expert Notice and Disclosure.

---

[15] To date, we have received a total of four documents that were produced in a sub-folder called "302s." However, it is apparent that not all interview memoranda or notes of interviews have been produced. For example, Agent Gallante's search warrant affidavit, signed by the Court on December 10, 2019, refers to a "Cooperating Company 2" that was interviewed by law enforcement in 2019, but no interview notes, memoranda, or other records of such interview(s) have been produced to the defense.

[16] While the government has produced translations of certain phone calls and meetings, the indictment and warrants make multiple references to documents and communications in Chinese and refers to translations of these documents.

8

Please provide information regarding all expert witnesses in accordance with Rule 16(a)(1)(G), as amended in 2022.

### XII. Fed. R. Evid. 1006 Summaries.

Mr. Jin requests that he be advised whether the government will seek to offer any chart, summary, or calculation in evidence and, if so, (1) that all such charts, summaries, and calculations be produced, and (2) that all writings, recordings, or other information on which such charts, summaries, or calculations are based be produced to the defense, or be made available for inspection and copying.

### XIII. Evidence of Uncharged Criminal Conduct or Other Misconduct.

Pursuant to Federal Rule of Evidence 404(b) and 403, and the Fifth and Sixth Amendments to the US Constitution, Mr. Jin requests all evidence of any uncharged crime, wrong, or other misconduct that the government may seek to introduce at trial (including in rebuttal). This disclosure should be made with at least the degree of particularity required in an indictment, with the witnesses named. This disclosure should identify whether any such evidence will be introduced by means of a documentary exhibit and, if so, the identity of the document. This disclosure should address whether the uncharged misconduct is presently the subject of a pending charge or ongoing investigation, the purpose for which the uncharged misconduct is offered, and should include any "reverse" 404(b) evidence that may tend to negate Mr. Jin's guilt as to the charged misconduct.

### XIV. Jencks Materials.

Pursuant to the Jencks Act, 18 U.S.C. § 3500, and Rule 26.2 of the Federal Rules of Criminal Procedure, Sadr requests that the government provide a list of the names and addresses of all witnesses that the government intends to call in its case-in-chief and all statements of those witnesses in the possession, custody, or control of the government or any other government entity, including, but not limited to, notes of interviews, interview reports and memoranda, or other summaries prepared by government attorneys or agents, and grand jury transcripts and any other witness statements. We request that the government provide this material as soon as possible, or in any event no later than ninety (90) days prior to the start of trial.

### XV. Hearsay Statements.

Mr. Jin requests notice of any hearsay statement that the government plans to offer at trial under Federal Rule of Evidence 807, including its particulars, the declarant's name and address, and other information giving Mr. Jin fair opportunity to confront and present relevant facts and defenses relating to the statement. Fed. R. Evid. 807(b).

### XVI. Materials Relating to Suppression.

As a predicate to potential motions pursuant to Fed. R. Crim. P. 12, Mr. Jin requests that he be informed of and receive all documents and information pertaining to the following:

(1) All search warrants and relating documents, including but not limited to affidavits, search warrant inventories, and chains of custody.

(2) All documents relating to Mr. Jin or the conduct alleged in the indictment obtained from any searches or seizures, regardless of whether any such search or seizure was conducted pursuant to a warrant.

(3) Whether the government intends to offer into evidence any statement made by Mr. Jin or any family member, and the substance of any such statement;

(4) Whether any evidence in the government's possession, custody, or control was obtained by a search and seizure conducted by the government, and a description of such evidence;

(5) Whether any evidence in the government's possession, custody, or control was obtained through electronic or mechanical surveillance (including wiretaps, body wires, pen registers, computer code, and surveillance of telephone calls) and a description of such evidence;

(6) Whether any evidence in the government's possession, custody, or control was obtained through the use of a beeper or other tracking device, and a description of such evidence;

(7) In connection with any tape recording, wiretaps, or other surveillance of Mr. Jin during the investigation of the allegations of the indictment or any related allegations, Mr. Jin seeks:

   a. The names and addresses of all persons whose personal or business telephones the government tapped or monitored, or whose computer activities, communications, conversations or actions the government monitored by other means without the person's knowledge;

   b. Transcripts, including drafts and final versions, or other records of the statements or conversations monitored;

   c. The procedures used to conduct such surveillance;

   d. The original recorders created during such surveillance;

   e. The procedures used to conduct such surveillance; and

   f. The authority under which such surveillance was conducted.

(8) The identities of any informant employed by the government during its investigation of the charges in the indictment, and

(9) Any other evidence not covered in the foregoing requests, for which the defendant may have a non-frivolous basis to file a motion to suppress or which may form the non-frivolous basis to file a motion to suppress.

### XVII.    Criminal Record.

Pursuant to Fed. R. Crim. Proc. 16(a)(1)(D) of the Federal Rules of Criminal Procedure, Mr. Jin requests copies of his prior criminal record, if any.

### XVIII.   Electronically Stored Information.

Mr. Jin requests that the government comply with the "Recommendations for Electronically Stored Information (ESI) Discovery Production in Federal Criminal Cases" issued by the Department of Justice and Administrative Office of the U.S. Courts Joint Working Group on Electronic Technology in the Criminal Justice System in February 2012. To that end, Mr. Jin requests the ability to "meet and confer" with the government as needed to discuss the nature, volume, and mechanics of the government's production of ESI discovery. Among other things, Mr. Jin makes the following requests:

(1) The government should produce ESI received from third parties in the format it was received. However, if the government has further processed ESI received from third parties, such as by adding load files, converting native files to TIFF images, extracting metadata or other coding, or making electronic files, the government should produce such enhanced ESI in discovery to save Mr. Jin the expense of replicating this work. Mr. Jin does not seek any government attorney work product by this request.

(2) The government should produce a table of contents describing the general categories of information available as ESI discovery in order to expedite Mr. Jin's review of discovery and avoid discovery disputes, unnecessary expense, and undue delay. Further, the government should produce the cover letters that accompanied and described the third-party productions of ESI and other documents to facilitate Mr. Jin's review.

(3) For all ESI produced from a seized, searched, or subpoenaed third-party digital device (e.g., computer, hard drive, thumb drive, CD, DVD, cell phone, Blackberry, iPhone, Android, smart phone, smart watch, or personal digital assistant), the government should identify the digital device that held the ESI, identify the device's owner or custodian, and identify the location where the device was seized, searched, or from where it was produced.

(4) The government should produce any materials received in paper form in converted digital files that can be viewed and searched. These materials should be produced in multi-page TIFF and OCR format where each document is one file that may have multiple pages. Alternatively, a less preferable option would be production in multi-page, searchable PDF format. Under no circumstances should paper materials be converted into single-page TIFF images without document breaks.

(5) All production of ESI should maintain parent-child relationships between documents, such as where an email (the parent document) has attachments (the child documents).

### XIX. *Brady* Materials.

Pursuant to the United States Constitution and relevant case law interpreting its provisions, including *Brady v. Maryland*[17] and *Giglio v. United States*,[18] and Fed. R. Crim. P. 5(f), Mr. Jin requests immediate identification and disclosure of all documents and information (in whatever form) that are favorable to the defense, that would tend to exculpate or be favorable to Mr. Jin with respect to the charges in the indictment, that may provide a basis for suppression, or that are relevant to the issue of sentencing. This request includes, without limitation, the following:

(1) Any document or information indicating or tending to establish that any of the allegations in the indictment are not true, or do not constitute a federal crime or does not otherwise violate government laws, regulations, standards or established business practices;

(2) Any document or information that would provide a basis to suppress[19] or otherwise exclude the fruits of the searches conducted in this case, including but not limited to all documents and information that tends to contradict or is inconsistent with search warrant affidavits;

(3) Any documents or information indicating or tending to establish that Mr. Jin did not instigate, control, authorize, approve, know of, or acquiesce in the any of the acts that are alleged in the indictment;

(4) Any document or information indicating or tending to establish that Mr. Jin believed that any meeting, conversation, use of words, practice, or conduct that is the subject of the indictment or forms the basis of the indictment did not constitute a crime;

(5) Any document or information indicating or tending to establish that any other person (including but not limited to the alleged co-conspirators) believed that any meeting, conversation, use of words, practice, or conduct that is the subject of the indictment or forms the basis of the indictment did not constitute a crime;

(6) Any documents or information indicating or tending to establish that any of the alleged misrepresentations, or false or fraudulent pretenses, were not false

(7) Any documents or information indicating or tending to establish that the alleged false or fraudulent pretenses were not material;

(8) To the extent any alleged misrepresentation, scheme, or false or fraudulent pretense in this case involves the omission or concealment of information, any

---

[17] 373 U.S. 83 (1963).

[18] 405 U.S. 150 (1972).

[19] *See, e.g., United States v. Gamez-Orduno*, 235 F.3d 453, 461 (9th Cir. 2000) (*Brady* violated in pretrial context by suppression of report that would have demonstrated that defendants had Fourth Amendment standing to challenge search); *Nuckols v. Gibson*, 233 F.3d 1261, 1266-67 (10th Cir. 2000) (*Brady* violation when government failed to disclose allegations of theft and sleeping on the job of police officer whose testimony was crucial to the issue of whether a *Miranda* violation had occurred—and thus, crucial to the admissibility of the confession); *Smith v. Black*, 904 F.2d 950, 965-66 (5th Cir. 1990) (nondisclosure of *Brady* information may have affected fact finder's findings at the suppression hearing).

documents or information indicating or tending to establish that there was no duty on the part of the alleged conspirator(s) to furnish that information, or no duty on the part of the recipient(s) to seek that information.

(9) Any documents or information indicating or tending to establish that a person other than Mr. Jin was responsible for, or had decision-making authority over, any of the financial transactions at issue in any count of the indictment;

(10) Any document or information indicating or tending to establish that Mr. Jin engaged in any conduct that forms the basis of the indictment in reliance upon advice provided by counsel, accountants, or other professional;

(11) Any document or information that could be used to impeach any potential government witness, or any person whose statements will be introduced pursuant to Federal Rules of Evidence 801(d)(2)(C), (D), or (E), including, but not limited to:

    a. Any document or information relating to any conviction, arrest, or criminal record of, and any criminal charge brought against, any potential government witness;

    b. Any document or information relating to promises, consideration, or inducements offered or made to any potential government witness, whether directly to the witness or indirectly to a third party (including the witness' attorney, friends, family, employer, or business associates). "Consideration" means anything of value or use, including witness fees, transportation or relocation assistance, money, immunity grants (whether formal or informal), forbearance from prosecution, dropped or reduced charges or suggestions of favorable treatment with respect to any matter (whether federal, state or local criminal, civil, or administrative), expectations of downward departures or motions for reduction of sentence, considerations regarding forfeiture of assets, and stays of deportation or other immigration status considerations;

    c. Any document or information tending to show the bias or motivation of a potential government witness, including but not limited to animosity toward Mr. Jin, or known but uncharged criminal conduct that may provide an incentive to curry favor with a prosecutor;

    d. Any document or information affecting the reliability of a potential government witness's testimony, including known alcohol or substance abuse, mental health issues, or other issues that could affect the witness' ability to perceive and recall events;

    e. Any document or information relating to inconsistencies in statements given by any potential government witness;

    f. Any document or information relating to any inconsistencies between government documents, including but not limited to inconsistencies

      between agents' notes and memoranda of interviews of any potential government witnesses;

    g. Any document or information bearing adversely on the character or reputation for truthfulness of any potential government witness; and

    h. Each specific instance of conduct from which it could be inferred that any potential government witness is untruthful.

(12) The date of and participants in each and every interview—going back to the initiation of the government's investigation of the charged conspiracy—debriefing, "queen for a day" session, proffer, or other statement or description of the alleged facts made by each potential government witness (whether directly or indirectly, such as a proffer made by counsel). In addition, please specify, as to each such witness, the first date on which the witness made any allegation that Mr. Jin engaged in any allegedly unlawful conduct or any conduct alleged in the indictment.

(13) The date of and participants in each and every interview—going back to the initiation of the government's investigation of the charged conspiracy—debriefing, "queen for a day" session, proffer, or other statement or description of the alleged facts made by each potential government witness wherein the witness failed to identify Mr. Jin as a participant in any allegedly unlawful conduct or transaction.

(14) The identity of any informant or undercover agent who participated in any transaction relating to the subject of the indictment or who provided any information regarding Mr. Jin in relation to the subject of the indictment and all *Brady* and *Giglio* information (as already set forth above with respect to government witnesses) regarding such individual(s).

(15) All documents and information relating to any transaction set forth in the indictment, or any other transactions involving the Winney Entities and Company 1, in which the transaction at issue was investigated and/or blocked by the financial institution, OFAC, or any other entity, but in which the funds were ultimately released to the intended recipient.

(16) All transactions alleged in the indictment that were not processed or settled in the District of Columbia, along with all underlying documents relating to these transactions;

Please advise us promptly whether the government will be producing *Brady* material immediately, even if it is contained in what might otherwise be considered Jencks material, or whether you take the position that you are not obligated to produce such material at this time. We also request the underlying source material for any *Brady* information, as opposed to any summary letter or paraphrased description of the information. Please advise us promptly whether the government will not be producing underlying source material.

Thank you for your attention to this matter. Please do not hesitate to contact me with any questions or for any other reason.

Sincerely,

Burnham & Gorokhov, PLLC

By: Eugene Gorokhov, Esq.

CC:

Christina Clark
Benjamin Koenigsfeld