IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 23CR91-CKK |
| | ) | |
| GUANGHUA JIN. | ) | |

MOTION TO STRIKE SURPLUSAGE

Guanghua Jin, through counsel, respectfully moves the Court, pursuant to Rule 7(d) of the Federal Rules of Criminal Procedure, to strike surplusage from the indictment irrelevant and prejudicial surplusage. The language that Mr. Jin moves to strike is highlighted in Exhibit 1 to this motion.

INTRODUCTION

Rule 7(c) of the Federal Rules of Criminal Procedure requires that an indictment be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c). In stark contrast to these requirements, lengthy sections of the indictment in this case are devoted to topics that have nothing whatsoever to do with the elements of the offenses charged. These topics include matters such as the legislative history of the charging statutes and other laws, the history of U.S. and international sanctions policy relating to North Korea, North Korea's military and its sources of revenue, North Korea's funding of weapons of mass destruction, and United States national security concerns. These matters have no bearing on technical violations of sanctions and related charging statutes.

The government should not be permitted to deprive Mr. Jin of his Sixth Amendment right to a fair trial by transforming this case into a seminar on the evils of North Korea and the threat that its military and weapons program pose to the United States and the world. Instead, as in

1

every other case, Mr. Jin is entitled to a fair trial where the government is required to prove each offense beyond a reasonable doubt with admissible and competent evidence.

## BACKGROUND

The indictment in this case was handed up on March 21, 2023. ECF 13–Indictment. The indictment charges Mr. Jin with conspiracy to commit bank fraud, conspiracy to violate the International Emergency Economic Powers Act (IEEPA) and committing substantive IEEPA violations, money laundering, and substantive money laundering violations. All of the charges relate to an alleged scheme to violate U.S. sanctions on North Korea, and center on financial transactions that are alleged to have cleared through financial institutions in the United States.

## THE SURPLUSAGE TO BE STRICKEN

Under Fed. R. Crim. Proc. 7(d), Mr. Jin moves to strike (1) references to North Korea's military, weapons programs, and U.S. national security, (2) references to any laws or policies (such as UN sanctions) that have no bearing on the charges in this case, and (3) references to other miscellaneous matters that are extraneous and inadmissible as a matter of law, and serve only to confuse and prejudice the jury. The language that Mr. Jin moves strike is designated in boldface type in Exhibit 1, which is incorporated by reference.

## ARGUMENT

"Upon the defendant's motion, the court may strike surplusage from the indictment or information." Fed. R. Crim. Proc. 7(d). "[T]here are two distinct prerequisites for striking superfluous language in an indictment: (1) irrelevance and (2) prejudice to the defendant." *United States v. Quinn*, 401 F. Supp. 2d 80, 97 (D.D.C. 2005). As to the designated portions of the indictment, both elements are met.

    **A. Irrelevant and prejudicial references to North Korea's military, weapons program, and U.S. national security**.

2

In *Quinn*, the defendants were charged with, *inter alia*, IEEPA, one of the statutes at issue here, based on the alleged export of goods and technology from the United States to Iran. *Id*. at 82-83. The defendants moved to strike surplusage from the indictment (1) regarding the background of the statutes as issue, and (2) language discussing Iran's support for international terrorism.

While deferring on the necessity of striking the portions of the indictment discussing the history and effect of various statutes and regulations to later determine if this language was relevant, the court held that the language relating to Iran's support for terrorism and the threat that Iran poses to the United States should be stricken as irrelevant:

> the policies underlying the trade embargo against Iran are irrelevant to the charges defendants face. Defendants are not charged with providing material support to terrorists or some similar crime. They are accused of trading with a country subject to an embargo without first obtaining government approval for the transactions. Furthermore, the crime that defendants are charged with is no more or less criminal because of the *reasons* the embargo is in place; the scienter element in this case requires the government to show only that defendants knew their conduct was illegal, not that they understood the policy motivations underlying the decision to prohibit it.

*United States v. Quinn*, 401 F. Supp. 2d 80, 98 (D.D.C. 2005). *See also United States v. Groos*, 616 F. Supp. 2d 777, 790 (N.D. Ill. 2008) (striking allegation referring to "an unusual or extraordinary threat to national security, foreign policy or economy of the United States" and finding that "[r]eferences to national security and terrorism are likely to inflame passions that could cause jurors to judge the facts more harshly than they would if presented with an indictment strictly discussing violations of a trade embargo.").

In *Quinn*, the court also found that the allegations were prejudicial to the defendants and created a substantial risk that they would not receive a fair trial:

> The potential for prejudice, meanwhile, is substantial because of the seriousness with which the government and the public treat the present war on terrorism. Although there is no reason to think that the government plans to further invoke the specter of support for

3

>   terrorism in this trial . . . there is a real risk that jurors, if shown the indictment, would give improper weight to its references to terrorism, even if the Court instructs them that the indictment does not constitute evidence. The jury might, therefore, decline to give defendants the benefit of reasonable doubt.

*Id.* at 99.

For the same reasons as those set forth in *Quinn*, this Court should strike the specified portions of the present indictment. The language is irrelevant to the charges against Mr. Jin. The *actus reus* and *mens rea* elements of the offenses alleged in this case simply have nothing to do with the facts motivating the United States to impose sanctions against North Korea and its military. *See, e.g.*, *United States v. Cooper*, 384 F.Supp.2d 958, 960 (W.D. Va. Apr. 13, 2005) (striking factual allegations regarding from an indictment that were " 'unnecessary' to establish a *prima facie* pleading of the violation" and that were inflammatory and unduly prejudicial). The reasons for sanctions against North Korea, or the downstream effects of the transactions at issue in this case have no bearing on Mr. Jin's innocence or guilt. As Judge Bates explained in *Quinn*, there is no legal requirement that the defendant understood the policy motivations behind the sanctions and applicable laws at issue in a case alleging sanctions violations. Indeed, such issues are irrelevant as a matter of law: under Fed. R. Evid. 401, the fact that the North Korean military may have benefited from the import of tobacco does not make any of the elements at issue in any of the charging statutes "more or less probable," nor are these matters "fact[s] of consequence in determining the action."

Second, while having no relevance or probative value to any of the charged offenses, there is little doubt that the inflammatory allegations will deprive Mr. Jin of the right to a fair trial by introducing the specter of issues such as the North Korean military, WMD's, and the consequent threat to the United States. Judges in this district have granted motions to strike allegations that pale in comparison to those here in order to ensure that the defendant received a

4

fair trial and was not presumed to have engaged in "criminal conduct before he has an opportunity to defend himself. *United States v. Espy*, 23 F. Supp. 2d 1, 11 (D.D.C. 1998) (striking the term "prohibited source" in a bribery case in favor of a more neutral term); *United States v. Hubbard*, 474 F. Supp. 64, 83 (D.D.C. 1979) (striking words such as "infiltrate," "burglary," "cover up," "covertly," "bogus," " illegally," and "operatives" as prejudicial to the defendant). Other courts have likewise recognized that irrelevant inflammatory allegations have the effect of depriving the defendant of a fair trial on the actual merits. *See, e.g.*, *Groos*, 616 F. Supp. 2d at 790; *United States v. Gerlay,* 2009 WL 3872143, (D. Alaska Nov. 17, 2009) (striking allegation that the defendant's medical license was "summarily" suspended based on finding of "*clear and immediate danger to the public health and safety"* as unnecessary to the charges and posing a sufficient "likelihood of unfair prejudice or confusion to the jury" and "more prejudicial to the defendant then relevant and beneficial to understanding the charges").

### B. Irrelevant, prejudicial, and confusing references to laws or legal policies that have no application in this case.

The indictment's references to UN sanctions similarly have no relevance to the offenses charged, and the jury's consideration of UN law is irrelevant to the *mens rea* the government must prove as to the charged offenses. The D.C. Circuit has invalidated convictions where there was a risk of confusion as to what the government had to prove regarding very specific conduct covered by a similar statute. *See, e.g.*, *United States v. Burden*, 934 F.3d 675, 692-3 (D.C. Cir. 2019) (holding that jury instruction that failed to specify that *mens rea* of willfulness had to be proven specifically as to the actus reus of "exporting the magazines and mount without a license," rather than merely exporting the items to Thailand). Because the statutes at issue are already highly technical, allegations regarding laws that have no application in this case will serve only to further confuse the jury and prejudice Mr. Jin.

5

By contrast to *Burden*, the inclusion of extraneous laws and policies erroneously suggests that Mr. Jin is being accused of wrongdoing that is not even within the scope of the charging statutes. *United States v. Trie*, 21 F. Supp. 2d 7, 20-21 (D.D.C. 1998) ("[l]anguage that serves no purpose and encourages a jury to draw inferences that a defendant was involved in collateral activities irrelevant to [indictment] may be stricken.") (quoting *United States v. Weinberger*, Crim. A. No. 92–235, 1992 WL 294877, at *7 (D.D.C. Sept. 29, 1992)). Even where the legal allegations of an indictment were actually at issue, courts have held that such content is surplusage. *See, e.g.*, *United States v. Spalding*, No. 01-cr-152, 2002 WL 818129, at *5 (S.D. Ind. Apr. 24, 2002) (striking background legal section "because the legal principles defined in these paragraphs may lead to confusion of issues and, in any event, will be furnished in proper form to the Jury in the final instructions"). *United States v. White*, 766 F. Supp. 873, 885 (E.D. Wash. 1991) (striking nine paragraphs summarizing the government's version of environmental criminal statutes at issue as "neither relevant nor material to the charges").

### C. Miscellaneous references to matters that have no relevance to the charges.

Finally, for all of the same reasons, this Court should strike remaining miscellaneous language that serves no legitimate purpose, and creates only prejudice and confusion. Where the indictment repeatedly states that Mr. Jin and others engaged in conduct "for the benefit" of North Korea, this language should be stricken and the allegation should simply state "to North Korea." The indictment also makes the broad allegation that the charged defendant acted with the intent to "benefit" North Korea. This allegation has no basis in fact. But even if it did, this alleged intent is irrelevant to the *mens rea* elements of any offense with Mr. Jin is charged.

> The requirement that the mens rea relate to the charged actus reus is the baseline for any criminal mental standard. If a statute requires that the defendant knowingly perform the act that violates the law—even where he need not also know that the act is illegal—then he must knowingly perform the charged actus reus, not some other, uncharged act.

6

*Burden*, 934 F.3d at 692-3 (citing and quoting *Dixon v. United States*, 548 U.S. 1, 6 (2006) ("[C]riminal liability is normally based upon the concurrence of two factors, an evilmeaning mind [and] an evil-doing hand." (second alteration in original) (internal quotation marks omitted)); *See Bryan v. United States*, 524 U.S. 184, 193 (1998) ("[T]he term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense." (emphasis added))).

Likewise, extraneous content, such as the indictment's exegesis on the role of cigarettes in North Korea's economy and military funding plainly have no place in a federal indictment. If an individual were charged in this Court with illegally selling firearms, for example, there is no universe in which this Court would allow the government to present an indictment chronicling the history and statistics of gun violence, the legislative and law enforcement efforts to curb it, the traumatic psychological impact of gun violence on the public, etc., etc. An attempt by the government to plead such matters in an indictment would not pass the laugh test. For the same reasons, while they may perhaps constitute interesting topics for a Netflix documentary, the allegations regarding the manufacture of counterfeit cigarettes and their prevalence throughout the world dating as far back as two decades, the fact that counterfeit cigarettes "fuel transnational crime, corruption, and terrorism," and the fact that cigarettes generate significant revenue for North Korea are wholly irrelevant matters that have no place in a federal indictment.

Similarly, the government's digest relating to North Korea's reported use of front companies and other methods to engage in financial transactions and evade sanctions is not nothing more than inadmissible hearsay, irrelevant to the charges and facts that the government has the burden to prove beyond a reasonable doubt.

7

**CONCLUSION**

For all of the foregoing reasons, if the indictment is not dismissed outright, the Court should strike the language highlighted in Exhibit 1 as surplusage.

Respectfully submitted,

By:/s/ Eugene Gorokhov
Eugene Gorokhov, Esq.
DC Bar No. 979785
BURNHAM & GOROKHOV, PLLC
1634 I Street NW, Suite 575
Washington, DC 20006
(202) 386-6920 (phone)
(202) 765-2173 (fax)
eugene@burnhamgorokhov.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I served a copy of the foregoing motion via ECF which automatically sends a copy to all counsel of record.

    Respectfully submitted,

    By:/s/ Eugene Gorokhov
    Eugene Gorokhov, Esq.