UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 23-cr-91-02 (CKK) |
| | : | |
| v. | : | |
| | : | |
| JIN GUANGHUA, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION FOR DISCLOSURE OF GRAND JURY MATERIALS**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits its Memorandum in Opposition to Defendant's Motion for Disclosure of Grand Jury Materials (ECF #47). As grounds for this motion, the United States relies on the following points and authorities, and any other points and authorities that it may cite at a hearing on the motion.

**I.    BACKGROUND**

Defendant moves (ECF #47) for an order requiring the government to disclose the grand jury transcripts and legal instructions provided to the grand jury pursuant to Fed. R. Crim. P. 6(e)(3)(E)(ii). As the basis for this motion, defendant alleges that the government presented false and misleading evidence to the grand jury while also omitting exculpatory evidence related to the defendant. ECF # 47 at 1-2. As a result, the defendant asserts that a "ground may exist to dismiss the indictment because of a matter that occurred before the Grand Jury." *Id.* at 2-3. While defendant's motion largely constitutes a rehash of the meritless claims he makes in his Motion for a *Franks* Hearing and to Suppress the Fruits of Email Search Warrant (ECF #46, also referred to as "Motion to Suppress"), the assertions in the instant motion can be summarized as follows: (1)

˜1˜

the government misrepresented and/or omitted information bearing on the credibility of Cooperating Company 1 and its representatives; (2) the government misrepresented and/or omitted statements made by the defendant and falsely attributed statements to him during the undercover operation; (3) the government misrepresented the extent of defendant's prior dealings with Cooperating Company 1; and (4) the government provided inaccurate instructions on the law to the grand jury. *Id.* at 1-2.

The defendant's claims are without merit and the motion for disclosure of grand jury materials should be denied. The defendant fails to make the factual showing necessary to justify the request for disclosure.

## II.   ARGUMENT

### A. Legal Standards

The defendant's request must be denied because he has failed to meet his burden to show a particularized need for the grand jury materials he requests. "Federal Rule of Criminal Procedure 6(e) 'makes quite clear that disclosure of matters occurring before the grand jury is the exception and not the rule.'" *McKeever v. Barr*, 920 F.3d 842, 844 (D.C. Cir. 2019) (citation omitted). Accordingly, to pierce the secrecy of grand jury proceedings, the defendant must demonstrate a particularized need for the material. *United States v. Saffarinia*, 424 F. Supp. 3d 46, 81 (D.D.C. 2020); *United States v. Apodaca*, 287 F. Supp. 3d 21, 47 (D.D.C. 2017); *United States v. Wilkerson*, 656 F. Supp. 2d 22, 34 (D.D.C. 2009) ("Fed. R. Crim. P. 6(e)(3)(E)(i) allows district courts to authorize disclosure of grand jury matters "in connection with a judicial proceeding" if the party requesting disclosure demonstrates a "particularized need" or "compelling necessity" for the testimony."). "[D]isclosure is appropriate only in those cases where the need for it outweighs the

public interest in secrecy, and . . . the burden of demonstrating this balance rests upon the private party seeking disclosure." *United States v. Borda*, 905 F. Supp. 2d 201, 204 (D.D.C. 2012) (internal citation omitted). The defendant does not meet his burden here.

Here, the defendant's claimed particularized need is that, if the grand jury materials reveal that the government presented false and misleading evidence to the grand jury while also omitting exculpatory evidence related to the defendant, then a ground "may exist" to dismiss the indictment. To show that a ground may exist for dismissing the indictment because of an issue relating to the grand jury, the defendant must meet a high bar. "Grand jury proceedings are 'accorded a presumption of regularity, which generally may be dispelled only upon particularized proof of irregularities in the grand jury process.'" *Borda*, 905 F. Supp. 2d at 204 (quoting *United States v. Mechanik,* 475 U.S. 66, 75 (1986) (O'Connor, J., concurring)). "An indictment valid on its face may not be challenged on the ground that the grand jury acted on the basis of inadequate, unreliable or incompetent evidence." *Id*. (citing *Bank of Nova Scotia v. United States*, 487 U.S. 250, 261 (1988)). The standard for dismissing an indictment for an error in the grand jury "is so high that dismissal of an otherwise valid indictment is inappropriate even where the government failed to disclose substantial exculpatory evidence it possessed at the time of the grand jury." *Id*. (internal citation omitted). Accordingly, "conclusory or speculative allegations of misconduct do not meet the particularized need standard; a factual basis is required." *United States v. Naegele*, 474 F. Supp. 2d 9, 10 (D.D.C. 2007). Although it is the government's practice to present materially exculpatory information to the grand jury, the law does not require the government to present exculpatory evidence to the grand jury. *United States v. Williams*, 504 U.S. 36, 52-53 (1992).

**B. The Defendant's Repeated Assertions of Alleged False Statements/Material**

**Omissions by the Government Do Not Constitute Grounds for Dismissal of the Indictment.**

*1. Reliability of Company 1 Employee*

The defendant, realleging many of the same mischaracterizations from his motion to suppress evidence, first argues that the government presented to the grand jury or otherwise relied on incredible evidence from an employee[1] of Cooperating Company 1. As a basis for alleging the same, the motion parses various reports of interviews the employee gave to the FBI, and then claims that the employee lied to law enforcement when he stated he was not aware until 2019, after payments to the company from Winney had been frozen by the banks, that the tobacco the company sold to Winney was ultimately shipped to North Korea. ECF # 47 at 4-6. Defendant's assessment of the employee's credibility rests solely on his erroneous assertion that the employee made inconsistent statements about which entity—Winney or Cooperating Company 1— generated the shipping records for the shipment of tobacco. *Id.*

However, a close reading of the two reports of FBI interviews of the employee reveal that there were no material inconsistencies in the employee's statement. A May 2019 FBI report of the employee's interview states that the witness "further explained that the client, in this case Winney, was *usually* responsible for arranging shipping and completing any associated documentation." Def. Ex. 4 at 5-6 (emphasis added). A May 2022 FBI report of the employee's interview notes that the witness stated that co-defendant Han provided Cooperating Company 1 "all information (consignee, purchaser, and other information required) for the for (sic) bill of lading, which

---

[1] The employee of Cooperating Company 1 was referred to in the extradition affidavit as "Confidential Source 1 (CS-1) (see Def. Ex. 3 at 48, ¶ 20) and as "W-1" in the redacted FBI 302 reports provided to defendant in discovery (see Def. Exs. 4 and 5).

˘4˘

included shipping the tobacco to Dalian Port in China." Def. Ex. 5 at 6.

Contrary to the defendant's assertion, none of the interviews support that the employee stated that the bills of lading were generated by Cooperating Company 1.[2] The defendant points to a single email from 2018 in which co-defendant Han provided to Winney employees the shipping details for a single tobacco shipment, which did not include any references to North Korea, to be included on the shipping records two years after Winney had begun removing references to North Korea from shipping records involving Cooperating Company 1. Although there is no indication in the 2018 email that Cooperating Company 1 generated the shipping documents in accordance with Winney's instruction, there is also no mention of North Korea in the shipping information Winney provided in that email. Thus, it is the defendant's own assertion that is misleading as it relates to the employee's alleged knowledge that previous tobacco shipments for Winney had been destined for North Korea. *Id.*

Further, the extradition affidavit affirms what the employee told law enforcement, to wit, that "CS-1 confirmed that the Winney Entities were responsible for all changes on the bills of lading . . . ." Def Ex. 3 at ¶ 38. This information is consistent with what the employee previously told law enforcement—that Han generally provided Cooperating Company 1 with all the information listed on the bills of lading. Def. Ex. 5 at 6.[3]

---

[2] As noted in the government's opposition to defendant's motion to suppress (ECF # 64), the employee for Cooperating Company 1 was not responsible for managing the Winney account during the relevant periods in the indictment, particularly during the period between 2009 and 2016, when North Korea was listed on some of the bills of ladings. ECF # 64 at 12, n.3.

[3] Contrary to defendant's claim that the notes of the May 2022 interview establish that the employee had "complete knowledge of all fields in the shipping documents" and that Cooperating Company 1 actually prepared the shipping documents, these notes, which are not verbatim transcriptions of the employee's statement, do not demonstrate any inconsistency with prior

As discussed in the government's opposition to the motion to suppress, it is well established that a defendant's self-serving statement attacking the truth of an informant's statement is insufficient to establish a "'substantial preliminary showing' of affiant falsity required for a *Franks* hearing." *United States v. McDonald,* 723 F.2d 1288, 1293 (7th Cir. 1983) (citation omitted); *see United States v. Moody.* 931 F.3d 366, 374 (4th Cir. 2019) (defendant's conclusory contradiction of assertion in search warrant affidavit does not require a *Franks* hearing). Likewise, defendant's opinion of the employee's credibility in the absence of any clear facts supporting this opinion are insufficient to meet his burden to demonstrate a particularized need for grand jury material. *Saffarinia*, 424 F. Supp. 3d at 81.

### 2. Company 1's Motive

Defendant additionally argues that the government failed to disclose in the search warrant for his email account and the extradition affidavits Cooperating Company 1's alleged motive to curry favor with the government to gain release of the money that had been frozen by the banks, and therefore failed to disclose the same to the grand jury. ECF # 47 at 7. Contrary to this claim, the government did disclose the fact that, "[s]ubsequent to U.S. correspondent banks freezing Cooperating Company 1's U.S. dollar transactions, Cooperating Company 1 agreed to meet with the government." ECF # 46 (Def. Ex. 1 at 21, ¶ 19); ECF 64 at 10-11. Similar to defendant's misrepresentation that this evidence was excluded from the search warrant affidavit, defendant conveniently ignores that the extradition affidavit does in fact mention that payments to Cooperating Company 1 were blocked. Specifically, the extradition affidavit states:

> On July 2, 2019, an employee of the Winney Entities emailed Jin a chart of

---

statements made by the employee.

>historical payments and amounts paid related to tobacco purchases by NKTC1. The chart showed 15 payments arranged by the Winney entities. Two of those payments related to purchases of Company 1's tobacco productions, including a March 24, 2019 payment in the amount of $220,000.00, *which was blocked by the U.S. financial institution on or about April 3, 2019.*

Def. Ex. 3 at 22, ¶ 48 (emphasis added). The freezing of payments to Cooperating Company 1 is again mentioned in the extradition affidavit at paragraph 50. Accordingly, it is the defendant who appears to be engaged in a "pattern of false representations" that appear calculated to obscure from the Court the true nature of the evidence proffered to the grand jury.

### 3. *Undercover Conversation with Defendant*

Defendant next asserts that the government misstated and omitted material facts to the grand jury surrounding a conversation he had with an undercover agent (UC) on July 11, 2019. During this meeting, which was conducted in Spanish and Chinese, the UC (Spanish speaking) and Jin (Chinese speaking), each had their own translators who were translating the conversation. The government had a preliminary translation of this conversation completed and previously provided it to the defendant in discovery. Def. Ex. 7. As discussed in detail in the government's opposition to the motion to suppress, the defendant mischaracterizes the July 11, 2019 conversation while conveniently ignoring multiple statements he made that establish his intent and willingness to launder payments from Winney to Cooperating Company 1 via front companies. *See generally* ECF # 64 at 14-18.

Defendant relies on the preliminary translation of the July 11th conversation regarding a statement he claims was erroneously attributed to him, rather than his co-defendant Qin, in which he is wrongly alleged to have stated that Company 1 was "the ones committing fraud, I'm simply buying merchandise." ECF 47 at 8-11. This self-serving statement, in which the speaker is claiming

that he and Winney are *not* engaged in and *not* aware of any unlawful conduct, cannot be *inculpatory*. Accordingly, even assuming this statement was erroneously attributed to the defendant, it would not establish a ground to dismiss the indictment. *Borda*, 905 F. Supp. 2d at 204.

Defendant further makes the misleading claim that he refused to pay a portion of a "bribe" to the UC's putative bank insider-employee, because defendant did not want to engage in unlawful activities. ECF # 47 at 9. As discussed in the government's opposition to the motion to suppress, a thorough review of the conversation establishes that the defendant refused to pay the "bribe" because he did not believe it was the responsibility of Winney to bear the costs of efforts to obfuscate from the banks and law enforcement authorities the illicit nature of the transactions. ECF 64 at 16-17.

### C. Defendant's Additional Assertions of False Statements Made by the Government.

Defendant further relies on the inclusion in the complaint affidavit (Def. Ex. 2) that there was a statement attributed to him in which he responded to the UC, stating:

> My biggest concern is where the goods will end up, meaning its final destination. The US will surely investigate that. In fact, it has nothing to do with me whether I violate Argentina's law or not. I do not have any problem with that. The fact is that the US has been investigating, so it is necessary to guard against the US side.

Def. Ex. 2 at 31, ¶ 68. A review of the preliminary transcript appears to indicate that the above-referenced statement was made by the defendant's interpreter, who was translating what the UC was stating to the defendant. It appears that the complaint erroneously attributed this statement to the defendant. However, this statement was not included in the indictment.[4]

---

[4] The government can provide the Court with an *ex parte* proffer of the evidence presented to the

Defendant further alleges that the both the affidavit to the criminal complaint and the indictment include false statements attributing statements to him during a call with the UCs on May 21, 2019, in which defendant is alleged to have been confronted with the fact that Winney had sent tobacco to North Korea that resulted in the bank freeze. ECF # 47 at 12-13; Def Ex 2 at 26; ECF # 13 at 26, ¶ 26. Two recorded calls were made on May 21, 2019, and a review of the translation of the second call confirms that the statements in the complaint affidavit and the indictment concerning the statements attributed to both Jin and Qin were accurate.[5]

Accordingly, the defendant's assertion that there is reason to believe that false statements were presented to the grand jury related to this UC recording are inaccurate.

### D. Defendant's Assertion of Inaccurate Instructions on the Law to the Grand Jury.

Defendant claims in his motion that the extradition affidavit "fails to incorporate the elements of substantive bank fraud, and specifically that this requires an intent to obtain money or property from a bank." ECF 47 at 14. He further asserts that the extradition affidavit "omits the element of willfulness, which is an element of the object offense (of Count 2—IEEPA) and therefore extends to the conspiracy . . . ." *Id.* Accordingly, defendant posits that "that there is a genuine concern that the government failed to adequately instruct the jury on the elements of the charged offenses." *Id.* at 15. Defendant's claims on this point are meritless. The indictment properly alleges the elements of the offenses—which the defendant does not appear to dispute. Rather, he wrongly asserts that the extradition affidavit fails to incorporate the elements of

---

grand jury if necessary.
[5] In response to defendant's motion, the government reviewed all of the call records and determined that only one of the two May 21, 2019 calls had been produced due to inadvertent error. The government has since produced the second May 21, 2019 call.

substantive bank fraud. *Id.* at 14. Defendant blatantly ignores that the extradition affidavit specifically incorporated the charging language from paragraph 47 of the indictment:

> Specifically, Count 1 alleges that between February 2009 and March 2019, Jin and his co-conspirators engaged in a conspiracy to execute a scheme or artifice (i) to defraud a financial institution; and (ii) *to obtain money, funds, credits, assets, securities, and other property owned by and under the custody and control of, a financial institution* by means of false and fraudulent pretenses, representations, and promises. Count 1 alleges that Jin and his-coconspirators did so by concealing from a financial institution that it was engaged in financial transactions for the benefit of North Korea and North Korean entities and through use of Chinese front companies. (See Indictment ¶ 47).

Def. Ex. 3 at 30, ¶ 8 (emphasis added). Further, as noted above, the indictment was attached as an exhibit to the extradition affidavit. The charging language in the indictment included the intent element, as well as the citation to the definition of a financial institution (18 U.S.C. § 20). *See* ECF # 13 at 14-15, ¶ 47.

Defendant's reliance on the recitation of the elements for Count 2--conspiracy to violate IEEPA, as set forth in the extradition affidavit is likewise meritless. Defendant incorrectly asserts that the extradition affidavit "omits the element of willfulness, which is an element of the object offense . . . ." ECF # 47 at 14-15. Defendant again ignores the fact that the indictment includes the required intent elements for Count 2 and that the indictment was attached to the extradition affidavit. ECF # 13 at 30-31, ¶ 78. Defendant also omits the fact that the elements for the substantive IEEPA offenses (Counts 3-6), which were listed in the extradition affidavit, specifically included the intent element of willfulness. Def. Ex. 3 at 34-35, ¶ 82.

The aforementioned facts are therefore fatal to the defendant's claim of a particularized need for any grand jury materials in relation to claims about the grand jury charge. *See Saffarinia*, 424 F. Supp. 3d at 81 (denying request for grand jury minutes where defendant's claim that grand

jury was improperly instructed on the law was speculative and indictment sufficiently alleged essential elements); *United States v. North*, 708 F. Supp. 370, 371-72 (D.D.C. 1988) ("[T]here is no requirement that the grand jury be instructed on every aspect of the law. . . . Never have prosecutors had to present all possible legal defenses to a grand jury.").

WHEREFORE, for the foregoing reasons, the Court should deny the defendant's motion.

Respectfully submitted,

EDWARD R. MARTIN, JR.
United States Attorney

By:   /s/ Steven Wasserman
Steven B. Wasserman
D.C. Bar #453251
Karen Seifert
N.Y. Bar No. 4742342
Assistant United States Attorneys
National Security Section
601 D Street, NW, 5th Floor
Washington, DC 20530
(o) 202-252-7719 (Wasserman)
(o) 202-252-7527 (Seifert)
steve.wasserman@usdoj.gov
karen.seifert@usdoj.gov

Christina Clark
D.C. Bar # 995326
Trial Attorney
U.S. Department of Justice
National Security Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
christina.clark3@usdoj.gov
(o) 202-412-4213