IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 23CR91-CKK |
| | ) | |
| GUANGHUA JIN. | ) | |

**DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE EXPERT WITNESSES**

The government plans to call two experts at trial: (1) Ms. Emily Williams, an OFAC employee; and (2) Mr. Dawson Anglin, an FBI forensic Accountant. Despite having ample time to confer with these witnesses and provide the required Rule 16 disclosures, the government has utterly failed to fulfill its obligations in that regard. Worse, in the case of Mr. Dawson Anglin, the government has deliberately *evaded* the required disclosures—by characterizing his testimony about an "analysis of financial transactions" as lay opinion testimony.

The government's willful disregard of its expert disclosure obligations should not be tolerated. This Court should preclude these two witnesses from testifying.

With respect to the first witness, Emily Williams, the government identified her as an expert, but did not provide an expert disclosure that comes close to complying with the requirements of Rule 16. The government's disclosure:

(1) does not identify what opinions, if any, Ms. Williams will testify to;

(2) what bases or reasons support any of Ms. Williams' opinions;

(3) what Ms. Williams' qualifications are.

With respect to the second witness, Mr. Dawson Anglin, the government has gone even further by characterizing him as a lay witness. Thus, not only is there a complete absence of any

1

expert disclosure under Rule 16, but the government plainly intends to circumvent even the basic reliability standards under *Daubert*.

Expert disclosures are not luxuries for the criminal defendant. They are vital to the defendant's ability to have a fair opportunity to contest the government's evidence at trial. Moreover, inadequate disclosure of expert testimony undermines this Court's ability to discharge its gatekeeping obligations under *Daubert*.

Mr. Jin hereby moves *in limine* to preclude any opinions or testimony of either witness. Finally, if the Court declines to preclude Ms. Williams entirely, Mr. Jin moves to limit her opinions and testimony to those that do not state legal conclusions.

## PROCEDURAL HISTORY

The government indicted Mr. Jin on March 21, 2023. Undersigned counsel entered his Notice of Appearance on November 15, 2024. ECF 30.

On February 17, 2025, Mr. Jin requested discovery materials from the government. Exhibit A - Letter from Eugene Gorokhov dated February 17, 2025. Among these requests was a request that the government "provide information regarding all expert witnesses in accordance with Rule 16(a)(1)(G), as amended in 2022." Exhibit A at 8–9.

On February 20, 2025, the Court adopted its current Pretrial Scheduling Order. ECF 39. It ordered the government to provide notice of expert witnesses by March 14 and Mr. Jin to do the same by March 28. *Id.* at 1. It ordered that the government provide expert reports, and lay witnesses be identified, by April 28, 2025. *Id.*

On March 14, 2025, the government provided a Notice of Expert Witness identifying Ms. Emily Williams, an OFAC employee, as an expert the government intends to call at trial. ECF

No. 41. The Notice purported to satisfy the disclosure requirements of Federal Rule of Criminal Procedure 16(a)(1)(G).

On March 28, 2025, Mr. Jin notified the government that "the only expert he may call is a Mandarin translator . . . . However, because the government has not yet presented the translated documents and communications it intends to use at trial, Mr. Jin is not in a position to determine whether the testimony of such an expert is necessary." ECF 60.

On April 28, 2025, the government sent undersigned counsel a letter identifying three lay witnesses under Federal Rule of Evidence 701. Exhibit B - Letter from Steven Wasserman dated April 28, 2025. Among the purported lay witnesses is Mr. Dawson Anglin, an FBI forensic accountant. *Id.* at 1.

## ARGUMENT

For the reasons that follow, the Court should enter an order precluding the testimony of two of the government's proposed witnesses: that of Ms. Williams and Mr. Anglin.

## EMILY WILLIAMS

The government's Notice identifies Ms. Emily Williams, an OFAC employee, as an expert witness. The Notice sets forth the broad areas of her testimony, but lacks any specifics as to either the opinions she will offer, or the bases for any opinion. Given that the April 28, 2025 deadline for expert reports has passed, it is clear that no further disclosure regarding Ms. Williams' testimony is forthcoming. For the following reasons, the Court should preclude Ms. Williams' testimony.

**I.      The Government Notified Mr. Jin That It Intends To Call Ms. Williams As An Expert, but Has Failed To Comply With Rule 16's Notice Requirement.**

The Notice states that the government "intends to call Emily Williams of the U.S. Department of the Treasury, Office of Foreign Assets Control (OFAC)." ECF No. 41 at 1. It states

3

that her testimony "will be based upon, *inter alia*, her academic and professional training and experience, her review of applicable laws, policies, and procedures regarding U.S. sanctions, and her review of the particular transactions involving the defendants that are subject to U.S. sanctions, including any relevant agency records." *Id.* It further states that she "is an Enforcement Officer in OFAC at the U.S. Department of the Treasury," which "administers and enforces economic and trade sanctions . . . ." *Id.* It also asserts that "[a] statement of the witness's qualifications is attached," *id.*, but is attached to no such statement.

The Notice states that "Ms. Williams will explain for a jury how a sanctions program works." *Id.* at 2. It then summarizes how "Ms. Williams will describe the applicable prohibitions, restrictions, and requirements regarding transactions subject to U.S. economic and trade sanctions laws and regulations." *Id.* at 2. In particular, she will explain how the International Emergency Economic Powers Act, the North Korea Sanctions Regulations, and the Weapons of Mass Destruction Proliferators Sanctions Regulations prohibit certain conduct. *See id.* at 2–3. Finally, she will "describe the licensing application process employed by OFAC[,] will testify regarding the defendants' licensing history[,] and will establish that none of the individuals or entities listed . . . ever obtained a specific license from OFAC to export or re-export any item or service to North Korea[.]" *Id.* at 3; *see id.* at 4–5 (listing 54 individuals or entities).

## II. The Government's Expert Notice Does Not Satisfy Rule 16. As A Result, The Court Should Preclude The Expert's Testimony.

Rule 16 requires the government to disclose any expert testimony it intends to use at trial. This disclosure "'must contain,' *inter alia*, 'a <u>complete statement</u> of all opinions that the government will elicit from the witness in its case-in-chief' and '<u>the bases and reasons</u> for' each of those opinions." *United States v. Mrabet*, 703 F. Supp. 3d 442, 443 (S.D.N.Y. 2023) (quoting Fed. R. Crim. P. 16(a)(1)(G)(iii))(emphasis added). It must also identify "the witness's

4

qualifications, including a list of all publications authored in the previous 10 years." Fed. R. Crim. P. 16(a)(1)(G)(iii). "[T]hese provisions exist for good reason," namely, to guard against "the prior practice of merely providing a criminal defendant with a brief 'summary' of a prosecution expert's opinions[, which has] proved to be woefully inadequate." *Mrabet*, 703 F. Supp. 3d at 443-44. Indeed, the Rule was specifically amended in 2022, by inserting the phrase: "a complete statement," to address "the lack of adequate specificity regarding what information must be disclosed." *Id.* Here, the government has followed that inadequate prior practice, rather than the unambiguous requirements of Rule 16. Therefore, the government should be precluded from introducing Ms. Williams' testimony.

### A. The disclosure does not completely state all the opinions that the government intends to elicit from Ms. Williams.

Whereas Rule 16 requires "a *complete* statement of all opinions the expert will provide," Fed. R. Crim. P. 16, advisory committee note to 2022 amendments (emphasis added), here, the expert notice does not identify *any* opinion by Ms. Williams, much less a "complete statement" of all opinions that she will provide. Instead, the notice merely sets forth the general categories of her testimony–namely: (1) "how a sanctions program works;" (2) "the applicable prohibitions, restrictions, and requirements regarding transactions subject to U.S. economic trade sanctions laws and regulations;" (3) "how…Executive Orders empowered the Secretary of Treasury to promulgate [various regulations];" (4) "the licensing application process employed by OFAC;" and (5) "the defendants' licensing history" and their alleged failure to obtain an OFAC license. ECF 41 at 1 through 3.

This falls far short of what Rule 16 requires. The defense is left to guess at what opinions Ms. Williams will actually offer as to each of the foregoing categories. For example:

(1) What opinions will the expert offer as to the operation of a sanctions program?

5

      (2) What "prohibitions, restrictions, and requirements" are relevant to the instant case?

      (3) How is the licensing application process administered?

      (4) Why was an OFAC license not issued to the defendants?

The notice does not provide any information from which the defense can determine whether it needs to consult its own expert on the subject matters identified. Nor can this Court decide, based upon the notice provided, whether the proposed testimony meets the requirements of *Daubert*. *See generally Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Accordingly, the notice fails to comply with the requirements of Rule 16.

### B. The disclosure does not state any bases or reasons for Ms. Williams' opinions.

In addition to a complete statement of the witness' opinions, a Rule 16 expert disclosure must also provide "the bases of the expert's opinion." *Id.*, advisory committee note to 1993 amendment. "That should cover not only written and oral reports . . . and investigations, but any information that might be recognized as a legitimate basis for an opinion under Federal Rule of Evidence 703, including opinions of other experts." *Id.* The Expert Notice contains no such "bases and reasons." Fed. R. Crim. P. 16(a)(1)(G)(iii).

The contents of this Notice do not come close. With respect to the bases of Ms. Williams' opinions, the notice states only the following:

> This witness's testimony will be based upon, *inter alia*, her academic and professional training and experience, her review of applicable laws, policies, and procedures regarding U.S. sanctions, and her review of the particular transactions involving the defendants that are subject to U.S. sanctions, including any relevant agency records. The opinion offered by this witness will not be based on any classified information.

ECF 41 at 1.

As an initial matter, the notice implies that these are not the only bases for her opinion, insofar as it uses the phrase: "*inter alia*," i.e., among others that are not mentioned. Thus, the notice is facially deficient in that it fails to identify all bases for the expert's opinion.

Even assuming that the stated bases are exhaustive, the notice is still deficient. First, the notice fails the basic task of identifying what "training and experience" Ms. Williams' received or relied upon in reaching any opinion. Williams II.B, *infra*. Even if the government had deigned to specify why its proposed witness qualifies as an expert, "a statement of an opinion's bases and reasons cannot merely be 'the *ipse dixit* of the expert' from experience." *Mrabet*, 703 F. Supp. 3d at 444 (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

Second, the notice also fails to explain "how the expert came to [her] conclusion and what methodologies or evidence substantiate that conclusion." *Id.* (quoting *Riegel v. Medtronic, Inc.*, 451 F.3d 104, 127 (2d Cir. 2006)). The government does not specify which of the many potentially "applicable laws, policies, and procedures" the expert has reviewed. Likewise, the notice does not identify "the particular transactions involving the defendants that are subject to U.S. sanctions," or why it contends that they—whether that means the transactions or the defendants—are subject to sanctions. Finally, the government refers to "any relevant agency records" without identifying the agency, the specific records, or why they are deemed relevant. In short, this paragraph fails to identify a single basis for Ms. Williams' opinions. *See, e.g.*, *United States v. Naegele*, 468 F. Supp. 2d 175, 176-77 (D.D.C. 2007) (finding expert disclosures insufficient because the underlying documents were not provided).

Third, to the extent Ms. Williams will interpret laws and regulations, much of this testimony would, even if disclosed, be inadmissible as a legal conclusion. Williams III, *infra*. Mr. Jin cannot be more specific than that, because he does not know what Ms. Williams will state.

7

What specific conduct will she attest is prohibited? Will she tie that conduct to the defendants? The government has not explained. Furthermore, whatever opinions the government does plan to elicit, it has not provided any bases or reasons. The government does not provide legal reasoning, citations to particular sections, or even limit each paragraph to a single statute or regulation. "[T]his response completely fails to meaningfully describe the witness's opinions, the bases and reasons for those opinions." *United States v. McCafferty*, 772 F. Supp. 2d 863, 879 (N.D. Ohio 2011) (identification of various judicial canons is not sufficient); *see United States v. Day*, 524 F.3d 1361, 1371-72 (D.C. Cir. 2008) (list of tests, interviews, and reports were insufficient when expert did not provide conclusions from any of those).

"[T]he amendments to Rule 16 largely mirror what has long been required in civil cases under Federal Rule of Civil Procedure 26." *Mrabet*, 703 F. Supp. 3d at 444. Expert reports in civil cases "typically consist of 20 or more pages of specific opinions and detailed statements of the reasons for those opinions and the methodologies employed." *Id.* at 445. This disclosure in this case, which does not even come close to that, is plainly inadequate.

### C. The disclosure does not provide any of Ms. Williams' qualifications.

The government states that Ms. Williams will testify based upon "her academic and professional training and experience," but provides no way to understand what those qualifications are. It states that Ms. Williams is an Enforcement Officer at OFAC and describes what OFAC does. "That's it." *United States v. Hawthorne*,[1] 759 F. App'x 765, 770 (11th Cir. 2018). The government does not provide a curriculum vitae for Ms. Williams. *See United States v. Abdeljawad,* 250 F. Supp. 3d 839, 844 (D.N.M. 2017) (precluding expert testimony by FBI agent,

---

[1] Although the heading identifies the defendant as "Hawthrone," the text of the opinion reveals that to be a typographical error.

8

in part because "the Government has not provided [his] curriculum vitae"); *United States v. Cross*, 113 F. Supp. 2d 1282, 1286 (S.D. Ind. 2000) (expert disclosure "falls well short of the mark," in part because it "fails to provide a curriculum vitae for [the witness]" and "fails to show why he should be qualified as an expert"). Despite stating that Ms. Williams will rely on her "academic . . . training and experience," it reveals nothing about what those are. Neither does it describe Ms. Williams' career, other than her current position at OFAC. "And while it mentions [Williams'] [current] job title, it does not 'describe' how that position qualifies [her] to offer any opinions." *Hawthorne*, 759 F. App'x at 770. It does not describe her duties, how long she has served in that role, or how either has prepared her to testify in this case.

> **D. Given the severity of these deficiencies, and the need for prompt trial preparation, the appropriate remedy is preclusion of Ms. Williams' testimony.**

"If a party fails to comply with [Rule 16], the court may prohibit that party from introducing the undisclosed evidence." Fed. R. Crim. P. 16(d)(2)(C). The Court is not required "to conduct 'some sort of least restrictive alternative analysis' before excluding evidence as a sanction." *Day*, 524 F.3d at 1372 (quoting *United States v. Johnson*, 970 F.2d 907, 911 (D.C. Cir. 1992)). Neither is it required to find that the government acted in bad faith. *Id.* Indeed, courts frequently exclude evidence under Rule 16.[2]

---

[2] *See Day*, 524 F.3d at 1370-72 (affirming District Court's decision to exclude expert testimony under Rule 16); *see also United States v. Ulbricht*, 858 F.3d 71, 115 (2d Cir. 2017) ("The district court did not abuse its discretion in precluding the defense from calling its proposed experts. Not only were the disclosures late, more importantly, they were plainly inadequate."), *overruled on other grounds by Carpenter v. United States*, 585 U.S. 296 (2018); *Hawthorne*, 759 F. App'x at 770-71; *United States v. Concessi*, 38 F. App'x 866, 868 (4th Cir. 2002) (affirming decision to exclude expert testimony based on untimely and inadequate notice); *Abdeljawad,* 250 F. Supp. 3d at 844; *Cross*, 113 F. Supp. 2d at 1286 (finding no basis that inadequately disclosed witness is qualified and, therefore, precluding his testimony).

Here, preclusion is the appropriate sanction. The Rule 16 expert disclosure is intended to be a starting point to an orderly determination of the admissibility of expert testimony. A complete disclosure is necessary for the parties to litigate the admissibility of the proposed testimony. A *Daubert* hearing may be required, as well as further briefing and argument. By failing to comply with Rule 16's expert disclosure requirement, the government is not allowing the process to take place as required, ultimately preventing this Court from carrying out its duty as the gatekeeper.

In considering the appropriate sanction, it is important also to not overlook the human costs of the government's actions. Trial is scheduled to begin on September 8, 2025. Given the wide scope of the allegations at issue, involving 310 alleged transactions over more than a decade, even a complete disclosure at this point may well not give the defense enough time to prepare challenges to the purported expert testimony. By the current trial date, however, Mr. Jin will have been detained in connection with this case for two and a half years. Mr. Jin has already been separated for too long from his wife and children. The government should not be permitted to prolong Mr. Jin's misery by failing to live up to its discovery obligations.

If the Court will not preclude testimony, however, Mr. Jin moves for such alternative relief as the Court deems just. At the least, the Court should compel the government to disclose Ms. Williams' bases and reasoning as required by Rule 16.

**III.  At the Least, Ms. Williams Should Be Precluded from Usurping the Roles of Judge and Jury by Opining That Transactions Were Unlawful, or by Otherwise Testifying as to Legal Conclusions.**

Regardless of the government's compliance with Rule 16 and the relief ordered, this Court should also order that Ms. Williams is prohibited from testifying as to legal conclusions.

Much of Ms. Williams' proposed testimony involves interpreting laws and regulations. Yet, an expert may not offer legal opinions that would "infringe on the jury's role as the sole fact

finder." *United States v. Sutton*, 642 F. Supp. 3d 57, 73 (D.D.C. 2022). Neither may a party "in this manner be permitted to substitute its witness for the Court in charging the jury as to the applicable law." *Huff v. United States*, 273 F.2d 56, 61 (5th Cir. 1959); *see Convertino v. U.S. Dept. of Justice*, 772 F. Supp. 2d 10, 12 (D.D.C. 2010) ("Legal conclusions . . . 'intrude upon the duties of, and effectively substitute for the judgment of, . . . the responsibility of the Court to instruct the trier of fact on the law'" (quoting *United States ex rel. Mossey v. Pal–Tech, Inc.*, 231 F. Supp. 2d 94, 98 (D.D.C.2002))). It is well established that such testimony is inadmissible. *See United States v. Banks*, 262 F. App'x 900, 907 (10th Cir. 2008) ("Expert testimony of this type is often excluded on the grounds that it states a legal conclusion, usurps the function of the jury in deciding the facts, or interferes with the function of the judge in instructing the jury on the law." (quoting *United States v. Simpson*, 7 F.3d 186, 188 (10th Cir. 1993)).

To introduce an expert's opinion, the government must show that the opinion "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). "[A]n expert's legal opinions are inadmissible because these opinions cannot properly assist the trier of fact in understanding the evidence or determining a fact in issue." *Sutton*, 642 F. Supp. 3d at 73 (cleaned up) (quoting *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207 (D.C. Cir. 1997)). Therefore, "expert witnesses may not testify and offer legal conclusions *at all.*" *Convertino*, 772 F. Supp. 2d at 13.[3]

---

[3] *See also, e.g., Hyland v. HomeServices of America, Inc.*, 771 F.3d 310, 322 (6th Cir. 2014) ("Nonetheless, a witness may not testify to a legal conclusion."); *United States v. Ness*, 665 F.2d 248, 250 (8th Cir. 1981) ("where the opinion proffered necessarily encompasses a legal conclusion, a trial court may very properly conclude that a response would not be helpful to the trier of fact"); *United States v. Thanh Quoc Hoang*, 891 F. Supp. 2d 1355, 1361-62 (M.D. Ga. 2012) (excluding proposed expert testimony as a legal opinion), *aff'd*, 560 F. App'x 849 (11th Cir. 2014).

Naturally, this means that Ms. Williams may not directly state that Mr. Jin, or any person or entity associated with him, violated the law. *See Banks*, 262 F. App'x at 907 ("it still would have been error to allow [an expert witness] to testify Banks was 'most definitely' guilty"). Neither may she state that any particular transaction was unlawful. *See Huff*, 273 F.2d at 61 (prohibiting opinion that, under U.S. customs law, jewelry was commercial rather than personal); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 292 F. Supp. 3d 14, 50 (D.D.C. 2017) ("in an antitrust case, an expert may not opine as to whether there was a conspiracy or an agreement to engage in price fixing; that is a question for the fact-finder"), *aff'd*, 934 F.3d 619 (D.C. Cir. 2019). Similarly, she should be restricted from offering indirect legal conclusions, such as the use of terms with specialized legal meaning. *See Convertino*, 772 F. Supp. 2d at 12–13. Further, Ms. Williams may not characterize facts as evidence of wrongdoing. *See In re Rail Freight*, 292 F. Supp. 3d at 52 (finding inadmissible expert opinion that behavior was "evidence of collusion").

Finally, the government's disclosure states that Ms. Williams will describe what certain laws or regulations prohibit. To the extent this entails testimony that, for example, international wire transfers that involve U.S. intermediary banks are prohibited, that is a legal conclusion which is not permissible under Rule 702. The expert should not be permitted to interfere with "the responsibility of the Court to instruct the trier of fact on the law." *Convertino*, 772 F. Supp. 2d at 12.

## DAWSON ANGLIN

The government contends that an FBI forensic accountant and investigator, Mr. Anglin, will give lay opinion testimony. "But simply saying this does not make it so." *Gov't Emps. Ins. Co. v. Seco*, 644 F. Supp. 3d 1309, 1315 (S.D. Fla. 2022). Despite the government's assertions to the contrary, it is clear that Mr. Anglin's will be based upon specialized knowledge and skill,

without being disclosed or qualified as an expert. Therefore, he must be precluded from testifying. *See Lambland, Inc. v. Heartland Biogas, LLC*, No. 22-1184, 2023 WL 8276140, at *10 (10th Cir. Nov. 30, 2023); *Gianetti v. New Eng. Life Ins. Co.*, 633 F. App'x 22, 23–24 (2d Cir. 2016); *Lee v. Phelan Hallinan, PLC*, 303 F.R.D. 671, 672 (S.D Fla. 2014).

### I. The Government Has Disclosed Its Intention to Call Mr. Anglin, but not as an Expert Witness.

The government has stated that it intends to call several lay witnesses with "extensive subject matter expertise." Ex. B at 1. The government emphasizes that "[t]hese individuals are not testifying as expert witnesses." *Id.* Among these purported lay witnesses is Dawson Anglin, about whom the government states the following:

> Mr. Anglin is a Forensic Accountant with the Federal Bureau of Investigation. Mr. Anglin will testify regarding his analysis of the financial transactions conducted in this matter. Mr. Anglin may also testify to his training and experience as a forensic investigator, to include indicators he reviews to identify the use of "front companies" to conceal the illicit nature of the financial transactions[.]

*Id*.

### II. Mr. Anglin, a Forensic Accountant Who Will Testify About Forensic Accountancy, Must Be Excluded As an Undisclosed Expert Witness.

The government purportedly intends to call Mr. Anglin as a lay witness. Under Federal Rule of Evidence 701, however, "a [lay] witness' testimony must be scrutinized under the rules regulating expert opinion to the extent that the witness is providing testimony based on . . . <u>specialized knowledge</u> within the scope of Rule 702." Fed. R. Evid. 701 advisory committee's note to 2000 amendments (701 Note)(emphasis added). This scrutiny "eliminate[s] the risk that the reliability requirements set forth in Rule 702 will be evaded through . . . proffering an expert in lay witness clothing," and "ensures that a party will not evade the expert witness disclosure requirements set forth in . . . Fed.R.Crim.P. 16 by simply calling an expert witness in the guise of a layperson." *Id.*

13

Accountants are routinely recognized as experts.[4] Indeed, the Advisory Committee Notes to Rule 701 acknowledge that they are. *See* 701 Note ("most courts have permitted the owner or officer of a business to testify . . . without the necessity of qualifying the witness as an accountant, appraiser, or similar expert"). Of course, a witness' expertise in one subject does not preclude that witness from testifying as a *true* lay witness about others. But Mr. Anglin's testimony falls precisely in his area of expertise: "analysis of the financial transactions conducted" and, possibly, indicia of "front companies." These complicated financial topics "are beyond the understanding of an average juror" and thus inadmissible under Rule 701. *United States v. Wilson*, 605 F.3d 985, 1026 (D.C. Cir. 2010); *see Lambland*, 2023 WL 8276140, at *10 (vacating damages award because district court improperly admitted accountant economic analysis that was based on professional experience and financial expertise); *Hoot Winc, LLC v. RSM McGladrey Fin. Process Outsourcing, LLC*, No. 08cv1559 BTM (WMc), 2010 WL 3894966, at *2 (S.D. Cal. Sept. 29, 2010) (rejecting argument that undesignated "forensic accounting expert" was a lay witness).

It is clear that Mr. Anglin's testimony is based on his specialized knowledge as a forensic accountant. An ordinary lay witness would be incapable of testifying about an "analysis of the financial transactions conducted in this matter" or the "indicators…of front companies." Lay opinion testimony may not be "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c). Thus, Mr. Anglin's testimony must be rejected. *Gianetti*, 633 F. App'x at 23–24 (affirming exclusion of untimely disclosed accountant,

---

[4] *See, e.g.*, *Ahlgren v. Muller*, 555 F. Supp. 3d 688, 699 (D. Minn. 2021) (offering the opinion of a CPA as an expert witness); *Thanh Quoc Hoang*, 891 F. Supp. 2d at 1359 (applying Rule 702 to the opinion of "a forensic accountant"); *Fenters v. Yosemite Chevron*, 761 F. Supp. 2d 957, 963 (E.D. Cal. 2010) (finding CPA to be qualified as an expert witness); *see also, e.g.*, *In re Estate of Spiak*, 175 N.Y.S.3d 582, 588-89, 208 A.D.3d 1482 (N.Y. App. Div. 2022) (rejecting CPA's damages calculation because the CPA was not qualified as an expert).

despite party's attempt to recharacterize him as a fact witness); *Lee*, 303 F.R.D. at 672 (striking affidavit of accountant as unidentified expert witness); *Sweet Additions Ingredient Processors, LLC v. Meelunie Am., Inc.*, No. 21-81141-CIV -SINGHAL/MATTHEWMAN, 2023 WL 3600628, *2–3 (S.D. Fla. Mar. 20, 2023) (rejecting argument that undisclosed accountant would give lay testimony and excluding that accountant's report and testimony).

Certainly, accountants working for a business may sometimes give opinion testimony limited to their own knowledge of that business. So may any corporate officer. *See* 701 Note ("most courts have permitted the owner or officer of a business to testify to the value or projected profits of the business"). Of course, opinions based on personal knowledge still risk being colored by expertise. *See James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1215 (10th Cir. 2011) (finding opinion based in part on professional experience to be expert testimony); *Howard v. Gray*, 291 F.R.D. 6, 9 (D.D.C. 2013) (excluding undisclosed opinion of a treating physician, which was an expert opinion even if based on personal knowledge); *Hoot Winc*, 2010 WL 3894966, at *2 (witness is a *de facto* forensic accounting expert because she "will unavoidably render opinions, observations, conclusions or statements based on her specialized education, training and experience"). But even when permissible, such "potential testimony, of course, *assumes* that [witnesses] have adequate personal knowledge of what went on . . . ." *Gov't Emps. Ins. Co*, 644 F. Supp. 3d at 1315. Mr. Anglin "is not, by contrast, an employee . . . whose opinion is admitted 'because of the particularized knowledge that the witness has by virtue of his or her position in the business'" *Lee*, 303 F.R.D. at 672 (quoting 701 Note). He has no such knowledge, because he never worked for any of the companies at issue.

Mr. Anglin is not a lay witness. The government's effort to admit his expert testimony—as to transactions and companies of which he, personally, knows nothing—without qualifying him

15

or making the required disclosures, is a plain evasion of the Rules, and must not be permitted. *See Gianetti*, 633 F. App'x at 23 ("[the accountant] lacked the 'first-hand knowledge or observation' critical to lay opinion testimony under Fed.R.Evid. 701"); *Sweet Additions*, at *2–3 (excluding evidence from forensic accountant who was not employed by plaintiff but derived opinion from examining their records); *cf. Joshua David Mellberg LLC v. Will*, 386 F. Supp. 3d 1098, 1105 (D. Ariz. 2019) ("it is evident that [the witness'] testimony is not based on his personal knowledge of [plaintiff], but rather upon his own specialized knowledge developed over his many years in the industry"); *Palmer v. Rice*, 67 Fed. R. Evid. Serv. 391, 2005 WL 1278262, at *4 (D.D.C. May 27, 2005) (rejecting argument that proposed lay witness had personal knowledge of the basis for his opinion).

Especially problematic is Mr. Anglin's proposed testimony on "indicators he reviews to identify the use of 'front companies' to conceal the illicit nature of the financial transactions." By the government's own admission, this is based not on Mr. Anglin's personal knowledge, but on his "training and experience"—characteristics of expert rather than lay opinion testimony. *See* Fed. R. Evid. 702 (expert witness may be "qualified . . . by knowledge, skill, *experience*, *training*, or education" (emphasis added)); *see also, e.g.*, *Hoot Winc*, 2010 WL 3894966, at *2 (proposed witness is an expert when she "will almost certainly make direct or indirect reference to generally accepted accounting principles, which she would only know about and be conversant in because of her specialized training, education and experience"). This testimony is necessarily based on "previous experiences with other [alleged front companies]," not "'particularized' knowledge" of the companies at issue, and thus would be admissible only as expert testimony. *Wilson*, 605 F.3d at 1026.

For the same reasons as given for Ms. Williams, Williams II.C, *supra*, the appropriate relief is preclusion of Mr. Anglin's testimony and any other evidence of his opinions. Indeed, preclusion is even more appropriate here, given the government's attempt to shirk the rules governing expert witnesses. If the Court declines to preclude that evidence, it should grant alternative relief, such as ordering the government to comply with Federal Rule of Evidence 702 and Federal Rule of Criminal Procedure 16. Only then can the Court begin to consider the issues necessary to determine whether the evidence is admissible under Rule 702, including, if necessary, taking evidence on the matter.

## CONCLUSION

For all of the foregoing reasons, the Court should preclude any opinions or testimony of Emily Williams or Anglin Dawson. If it declines to do so, the Court should order alternative relief, and should prohibit Ms. Williams from directly or indirectly stating any legal conclusion.

Respectfully submitted,

By:/s/ Eugene Gorokhov
Eugene Gorokhov VSB # 73582
BURNHAM & GOROKHOV, PLLC
1634 I Street NW, Suite 575
Washington, DC 20006
(202) 386-6920 (phone)
(202) 765-2173 (fax)
eugene@burnhamgorokhov.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I served a copy of the foregoing motion via ECF which automatically sends a copy to all counsel of record.

> Respectfully submitted,
>
> By:/s/ Eugene Gorokhov
> Eugene Gorokhov, Esq.