UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JIN GUANGHUA,<br>    Defendant. | Criminal Action No. 23-91-2 (CKK) |

**MEMORANDUM OPINION & ORDER**
(June 12, 2025)

Defendant Guanghua Jin faces a twelve-count indictment charging him with participation in a bank-fraud, money-laundering, and sanctions-evasion conspiracy. This Memorandum Opinion and Order addresses five pending, miscellaneous motions.

**A. Jin's [43] Motion to Strike Surplusage**

Federal Rule of Criminal Procedure 7(d) provides that, "[u]pon the defendant's motion, the court may strike surplusage from the indictment or information." Jin moves under Rule 7(d) to strike from the Indictment: "(1) references to Noth Korea's military, weapons programs, and U.S. national security, (2) references to any laws or policies (such as UN sanctions) that have no bearing on the charges in this case, and (3) references to other miscellaneous matters." Def.'s Mot. to Strike, ECF No. 43, at 2. The Government is opposed. *See* Gov't's Opp'n, ECF No. 66.

The Court may grant a Rule 7(d) motion "only if it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial." *United States v. Rezaq*, 134 F.3d 1121, 1134 (D.C. Cir. 1998). "In other words, there are two distinct prerequisites for striking superfluous language in an indictment: (1) irrelevance and (2) prejudice to the defendant." *United States v. Quinn*, 401 F. Supp. 2d 80, 97 (D.D.C. 2005) (JDB).

1

At this stage, Jin's motion falters at the second hurdle. Any prejudice to Jin from language in the Indictment will arise if, and only if, the Court sends the Indictment back with the jury for deliberations.[1] *See* Def.'s Mot. to Strike at 3–4 (describing "a real risk that jurors, if shown the indictment, would give improper weight" to some allegations (citation omitted)). But "whether to permit the jury to have the indictment during deliberations is [a] decision committed to the court's discretion." *Dallago v. United States*, 427 F.2d 546, 553 (D.C. Cir. 1969). And as a matter of course, this Court does not provide the jury a copy of the indictment.[2] So on the present record, no prejudice to Jin from the language of the Indictment will arise. The Court accordingly **DENIES WITHOUT PREJUDICE** Jin's [43] Motion to Strike Surplusage.

### B. Jin's [61] [84] Motions for Disclosure of Translated Documents

Next, Jin moves for the Court to order the Government to disclose final, court-certified translations of all foreign-language documents the Government intends to use at trial by July 14, 2025. *See* Def.'s Mot. for Disclosure, ECF No. 84. Jin asserts that such an order is warranted because he needs time to determine whether to obtain a competing translation and because the translated documents are central to this litigation. *Id.* at 2–3.

The Court established a deadline for the Government to turn over its final (*i.e.*, translated) exhibits months ago. *See* Pretrial Scheduling Order, ECF No. 39. That deadline is August 15, 2025. *Id.* at 2. The Government has informed the Court that it "anticipates that all translations will be finalized in advance of the court-imposed deadline." Gov't's Resp., ECF No. 87, at 3.

---

[1] Throughout his briefing, Jin also discusses the potential for prejudice resulting from Government argument at trial related to the allegations he seeks to strike. *E.g.*, Reply, ECF No. 72, at 1 (directing the Court to consider "the relevance of certain lines of inquiry," the "admissibility of certain evidence," and the Government's "intent to inject the trial with inflammatory matters"). Those matters are properly addressed through a motion *in limine*.

[2] The D.C. Circuit has intimated more than once that trial courts should be wary of allowing juries to review the indictment during deliberations. *See United States v. Roy*, 473 F.3d 1232, 1237 n.2 (D.C. Cir. 2007) ("We note, however, that this practice often carries significant risks and few corresponding benefits."); *see also United States v. Ginyard*, 511 F.3d 203, 210 (D.C. Cir. 2008).

Should more clarity be necessary, the Court reiterates here that the Government *shall* comply with that deadline. When the Government does so, it will have fulfilled its obligation to Jin.

To the extent Jin's motion requests that the Court amend the Pretrial Scheduling Order to require the Government to disclose its final exhibits at an earlier date, the Court sees no reason to grant that relief. The Government has informed Jin of which exhibits it intends to translate and introduce at trial. *See* Gov't's Resp. at 2. And the Government has further represented that it will provide those translations to Jin "on a rolling basis and in advance" of the August 15 deadline. *Id.* at 4. If Jin would prefer to see translations of documents already in his counsel's possession at an earlier date, he may seek translations of his own.

Exercising its "great discretion in setting deadlines such as these," *United States v. Daum*, 847 F. Supp. 2d 18, 21 (D.D.C. 2012) (GK), the Court concludes that the August 15 deadline it previously set adequately balances the parties' interests in preparing for trial. On the present record, the Government is poised to meet its obligations to comply with that deadline. The Court accordingly **DENIES** Jin's [84] Motion for Timely Disclosure of Translated Documents and the related [61] Motion for Disclosure.

**C. Jin's [83] Motion for Leave to Unmask Company 1**

Next, Jin moves "for leave to unmask" the entity pseudonymously referred to in the Indictment as Company 1. Def.'s Mot. for Leave, ECF No. 83, at 1. That motion was unnecessary because, as Jin observes, it is the Government's burden to justify Company 1's pseudonymity, *see In re Sealed Case*, 971 F.3d 324, 326 (D.C. Cir. 2020), and the Government had previously informed Jin that it would file a motion *in limine* to that effect, *see* Def.'s Mot. for Leave at 2. In any event, the Government has now represented that Company 1 is "withdrawing its request for its employees to testify under a pseudonym." Gov't's Resp., ECF No. 90, at 2.

The Court understands the Government's representation to mean that the Government does not intend to refer to either Company 1 or its employees pseudonymously at trial or in any pretrial proceedings moving forward. *See* Min. Order (June 12, 2025). The Government confirmed that the Court's understanding is accurate. *See* Gov't's Supp., ECF No. 95. In other words, Jin has received the relief he requested. Accordingly, the Court **DENIES AS MOOT** Jin's [83] Motion for Leave to Unmask Company 1.

### D. Jin's [88] Motion to Treat as Conceded his [80] Motion *in Limine*

Finally, Jin moves for the Court to treat his [80] Motion *in Limine* to Preclude Expert Witnesses as conceded under Local Rule of Criminal Procedure 47(b). *See* Def.'s Mot., ECF No. 88. The Government has opposed Jin's motion. *See* Gov't's Resp., ECF No. 89.

Local Rule 47(b) provides that any memorandum in opposition to a motion must be filed within 14 days of service of the motion or at such other time as the Court may direct. "If such memorandum is not filed within the prescribed time, the Court may treat the motion as conceded." LCrR 47(b). Whether to do so is a matter of discretion. *United States v. Vaglica*, No. 23-cr-429, 2024 WL 41614691, at *2 (D.D.C. Sept. 12, 2024) (CKK).

Jin filed his Motion *in Limine* to Preclude Expert Witnesses on May 12, 2025. *See* Def.'s Mot. *in Limine*, ECF No. 80. More than 14 days have passed since then, and the Government has not filed a memorandum in opposition. The question, then, is whether the Court directed the Government to file its opposition at some other time.

This Court entered an order governing the schedule for motions practice in this matter. Pretrial Scheduling Order, ECF No. 39. Under that order, the Government's responses to evidentiary motions, "such as motions to suppress evidence, or *Daubert*" were due by June 2, 2025. *Id.* at 2. The Government's responses to motions *in limine* are due July 15, 2025. *Id.*

4

The Government represents that, because Jin's motion "was styled as a motion *in limine* and not as a motion to suppress," it viewed the motion as falling under the Court's schedule for motions *in limine* and "intended to file its opposition on July 15." Gov't's Resp., ECF No. 89. That was an error. As Jin notes, the Court "intended for the parties to complete expert disclosures by April 28, and complete briefing based upon those disclosures by June 9." Def.'s Mot. at 4. And although Jin titled his motion as a motion *in limine*, the substance of that motion relates to *Daubert* issues that should have been briefed on the schedule for *Daubert* motions.

But the Court does not agree with Jin that the Government's mistake has "subverted [the *Daubert*] process entirely" or that precluding the Government from introducing the testimony discussed in Jin's motion "is the only adequate remedy" at this time. *See* Def.'s Mot. at 4. Trial is three months away. There is ample time to resolve Jin's motion on the merits before then. And the Court is loath to exclude wholesale the testimony of two witnesses on the basis of an admitted and evidently good-faith mistake in interpretation of a scheduling order.

Accordingly, the Court **DENIES** Jin's [88] Motion to Treat his Motion *in Limine* as Conceded. But to minimize any further prejudice to Jin, the Court further **ORDERS** that the Government shall respond to Jin's [80] Motion *in Limine* on or before June 23, 2025. Jin may file a reply in support of his motion on or before June 30, 2025.

For now, the Court expresses no view on the merits of Jin's Motion *in Limine*.

### IV. CONCLUSION & ORDER

Before concluding, one parting note. The Court is mindful that this is a criminal case, that Jin's liberty is at stake, and that the Government and public have weighty interests in the subject matter at hand. But more deliberate and extensive coordination among counsel could have resolved multiple of the disputes discussed above. The parties' briefs on these matters make clear that counsel for both sides have communicated almost exclusively via email and formal letters. A

5

few face-to-face meetings and candid discussions might have saved the parties and the Court the time and expense of addressing these issues through motions practice. The parties are reminded that meeting and conferring has value in criminal cases, just as in civil cases.

For all the reasons stated, it is hereby:

**ORDERED** that Jin's [43] Motion to Strike Surplusage is **DENIED WITHOUT PREJUDICE**;

**ORDERED** that Jin's [61] Motion for Disclosure and [84] Motion for Timely Disclosure of Translated Documents are **DENIED**;

**ORDERED** that Jin's [83] Motion for Leave to Unmask Company 1 is **DENIED AS MOOT**; and further

**ORDERED** that Jin's [88] Motion to Treat his Motion *in Limine* as Conceded is **DENIED.** The Government shall respond to Jin's [80] Motion *in Limine* on or before **JUNE 23, 2025**, and Jin shall reply on or before **JUNE 30, 2025**.

**SO ORDERED.**

**Dated:** June 12, 2025.

COLLEEN KOLLAR-KOTELLY
United States District Judge