# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 23-cr-91-02 (CKK)** |
| | : | |
| **v.** | : | |
| | : | |
| **JIN GUANGHUA,** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT OPPOSITION TO DEFENDANT'S
## MOTION *IN LIMINE* RELATED TO EXPERT WITNESSES

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby respectfully submits its Response to the Defendant Jin Guanghua's Motion *in Limine* related to Expert Witness (ECF No. 80).  In his motion, defendant argues that (1) the government's expert notice for Emily Williams from the Office of Foreign Assets Control does not satisfy the requirements of Rule 16; and (2) that the government did not notice, but should have been required to notice, FBI Forensic Accountant Dawson Anglin as an expert under Rule 16. Defense seeks as a remedy to exclude both witnesses, or in the alternative, to prevent Ms. Williams from testifying to opinions. Because the government has satisfied its obligations under Rule 16 and because Mr. Anglin is testifying as a fact witness, the motion should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

### 1. Charges and General Overview of the Investigation

On February 20, 2025, this Court issued a scheduling order (ECF No. 39) directing the government to file its notice of experts pursuant to Fed R. Evid. 702 by March 14, 2025. The scheduling order further directed the parties to file any expert reports[2] as well as identification of lay witness testimony pursuant to Fed. R. Evid. 701 by April 28, 2025. On March 14, 2025, the government filed its expert notice (ECF No. 41).[3] On April 28, 2025, the government notified the defendant by letter that it planned to call three lay witnesses pursuant to Fed. R. Evid. 701. *See* (ECF No. 80-2). The letter identified two of the three lay witnesses by name as well as the subject matter on which each lay witness would testify. The government is in the process of finalizing which bank employees it plans to call at trial and will provide notice to the defense once the process is complete.

### 2. OFAC Employee Emily Williams

On March 14, 2025, the government provided a six-page expert notice to the defense related to the testimony of Emily Williams, an employee of the Department of the Treasury, Office

---

[1] A summary of the facts surrounding the investigation is set forth in the Government's Memorandum in Opposition of Defendant's Motion Suppress Fruits of Email Search (ECF No. 64), which is incorporated by reference herein.

[2] There was no expert report drafted by the government's rule 702 witness.

[3] As noted in the Government's Response to Defendant's Motion to Treat as Conceded (ECF No. 88), the government inadvertently omitted the Curriculum Vitae (CV) of its noticed expert witness when it originally and timely provided its expert notice to the defendant. Upon realizing the oversight, the government immediately disclosed the witness's CV by letter dated June 9, 2025. Although the inadvertent failure to include Ms. Williams's CV was the government's error, the government notes that at no time did the defendant notify the government—despite the clear reference to the inclusion of such a document in the government's expert notice—of the omission, which the government would have immediately rectified. A redacted copy of this witness's CV is attached to the instant motion as Exhibit B.

of Foreign Assets Control (OFAC). (Attached hereto as Exhibit A). Ms. Williams has been an Enforcement Officer at OFAC since 2021. Exhibit A at 1. In that role, her duties include, *inter alia,* conducting investigations of possible violations of economic sanctions programs administered by OFAC and drafting recommendations applying "OFAC regulations and Economic Sanctions Enforcement Guidelines…justifying enforcement responses." *Id.* Her duties also include coordinating sanctions violation investigations with other government agencies, including United States Attorney's offices and the National Security Division of the U.S. Department of Justice. *Id.* Ms. Williams conducts trainings on sanctions regulations and compliance to public and private sector participants in the United States and internationally, and has also spoken at multiple conferences related to U.S. export controls. *id.*

Regarding the government's expert notice for Ms. Williams, the notice described four topic areas for her testimony: (1) how a sanctions program works, including the underlying authority to initiate a sanctions program under the International Economic Emergency Powers Act (IEEPA) and Executive Orders (EO) issued pursuant to that statute, OFAC's role in implementation and enforcement of sanctions, and the types of prohibitions, exemptions, and authorizations such sanctions programs may carry; (2) an explanation of the North Korean sanctions programs, including the North Korean Sanctions Regulations (NKSR), the applicable prohibitions, restrictions, and requirements regarding transactions subject to the NKSR, and that the NKSR prohibits U.S. persons (including U.S. financial institutions) from dealing in the blocked property interests of the Government of North Korea, including North Korea's Foreign Trade Bank (FTB); (3) an explanation of the Weapons of Mass Destructions Proliferators Sanctions Regulations (WMDPSR), including prohibitions against the making of any contribution or provision of funds, goods, or services (including financial services) by, to, or for the benefit of any person designated

pursuant to EO 13382, including FTB and Korean Kwangson Banking Corporation (KKBC); and (4) a description of the licensing application process employed by OFAC, as well as the licensing history of the defendant, co-defendant's and multiple entities listed in the notice. *See generally,* Ex. A.

Correspondingly, at trial in this matter, the government anticipates that Ms. Williams's testimony will include the following:

(1) her personal background and role at OFAC;

(2) a brief discussion of the typical features of a sanctions program and how sanctions are implemented;

(3) the Executive Orders that led to the initiation of sanctions against North Korea, specifically its involvement in the development of WMD;

(4) the evolution of sanctions against North Korea dating back to EO 12938 issued on November 14, 1994, in which the President declared the proliferation of WMD a threat to national security, and continuing through March 15, 2016, when the President issued EO 13722, which imposed country-wide sanctions on North Korea. Ms. Williams's testimony in this regard will also address the NKSR and WMDPSR, when they were implemented, and what and when certain activities are prohibited pursuant to the NKSR and WMDPSR;

(5) the designations of North Korea's Foreign Trade Bank (FTB), KKBC, and other relevant companies (i.e., DHID)[4]—among others—under U.S. sanctions, and the impacts of those designations;

---

[4] The government anticipates that Ms. Williams will testify about all the sanctions referred to in the Indictment.

(6) the prohibitions, restrictions, requirements and authorizations regarding transactions subject to U.S. sanctions against North Korea, including the prohibitions discussed in the NKSR; and

(7) the licensing application process employed by OFAC and the licensing history for the defendants, including entities associated with the defendants, none of whom obtained licenses from OFAC relevant to the charges.

As described above, Ms. Williams's testimony will consist primarily of background concerning how a sanctions program works generally, the meaning of certain terms, when and why certain entities were designated as Specially Designated Nationals (SDN) and how, based on her training and experience, OFAC provides notification of SDN designations and determines whether a license is required and/or has been obtained. Any opinions Ms. Williams provides will flow from that background and from Ms. Williams's specialized experience and professional role at OFAC. Specifically, in keeping with the categories described above and in the government's expert notice, the government anticipates that Ms. Williams will opine that: (i) IEEPA, the NKSR, and the WMDPSR apply  to conduct involving North Korea; (ii) the North Korean sanctions regime applies to the entities at issue in this case; (iii) that under the pertinent laws and regulations, a license is required and was required at the times relevant to the charges for U.S. persons, to include U.S. financial institutions, to do business with and for the benefit of North Korea, and (iv) that a license was in fact required for the specific conduct at issue in the case, *i.e.*, the use of U.S. financial intuitions to process payments to and from sanctioned entities. As discussed *supra*, these opinions are based on Ms. Williams's education, training and experience as an Sanctions Enforcement Officer for OFAC, who investigates potential sanctions violations and interprets and applies the aforementioned OFAC sanctions regimes. As discussed in greater detail below, the government's

summary of Ms. Williams's opinions and the bases for those opinions satisfies the requirements of Rule 16.

### 3. FBI Forensic Accountant Dawson Anglin

On April 28, 2025, the government provided notice of witnesses it anticipated fell within the Court's order to provide lay witness opinion testimony under Federal Rule of Evidence 701. (Attached hereto as Exhibit C). The government included in its notice that FBI Forensic Accountant Dawson Anglin would testify regarding his analysis of financial records related to the transactions at issue in the case. He would also testify to his training and experience as a forensic investigator, to include indicators that he reviews to identify companies operating as front companies (i.e., companies used to process payments that are not involved in the transaction). The letter did not provide any further notice of opinion testimony to which Mr. Anglin would testify. (The government notes that it included Mr. Anglin in the notice, despite that it did not specifically anticipate that Mr. Anglin would offer opinion evidence.)

At trial in this matter, the government anticipates that Mr. Anglin's testimony will include, but not be limited to, the following:

(1) his personal background and role at the FBI;

(2) the financial institution industry, specifically international wire transfers and how financial institutions process the same. Mr. Anglin will also testify about his own method of reviewing financial institution records, and the factors he looks for and considers in analyzing records, to include the use of "front companies", a defined industry term.[5]

---

[5] Mr. Anglin is anticipated to testify that he understands a front company to be a third-party entity, that is otherwise unrelated to the financial transactions at issue, which routinely makes payments on behalf of another entity.

(3) Mr. Anglin will testify about the entities/companies (i.e., "the Winney entities") created by defendant Jin and his co-conspirators, and the records he reviewed in identifying those entities.

(4) Mr. Anglin will testify and summarize voluminous financial records related to payments by the Winney Entities for tobacco and other products, to include the use of front companies in furtherance of the same.

### 4. Defendant's Motion

Defendant's Motion *in Limine* related to Expert Witnesses (ECF No. 80) argues that (1) the government's expert notice for Emily Williams from the Office of Foreign Assets Control does not satisfy the requirements of Rule 16; and (2) that the government did not notice, but should have been required to notice, FBI Forensic Accountant Dawson Anglin as an expert under Rule 16. Defendant asserts that Ms. Williams's testimony should be excluded because the government's notice was deficient: (1) in that it failed to identify "what opinions" she would testify to; (2) the "bases or reasons" that support her opinions, and (3) what her qualifications are. *See* ECF No. 80 at 1. Additionally, defendant asserts that Mr. Anglin is masking as an expert witness, and because the government did not give notice of his testimony as such, it should be excluded. The grounds asserted by defendant in support of his motion to preclude the expert and lay witness testimony are meritless, and his motion should be denied.

### LEGAL BACKGROUND

### 1. Expert Testimony

Federal Rule of Evidence 702 permits the admission of expert testimony. Specifically, the witness must be qualified by the proponent of the testimony "as an expert by knowledge, skill,

experience, training, or education" and thereafter "may testify in the *form of an opinion*." Fed. R.

Evid. 702. Opinion testimony is admissible where the court finds it "more likely than not that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

> (b) the testimony is based on sufficient facts or data;

> (c) the testimony is the product of reliable principles and methods; and

> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."

Federal Rule of Evidence 703 further discusses the scope of expert testimony, allowing the expert

to base their opinion "on facts or data in the case that the expert has been made aware of or

personally observed. If experts in the particular field would reasonably rely on those kinds of facts

or data in forming an opinion on the subject, they need not be admissible for the opinion to be

admitted."

Additionally, under Federal Rule of Evidence 704, "[a]n opinion is not objectionable just

because it embraces an ultimate issue." Fed. R. Evid. 704(a); *see also Diaz v. United States*, 602

U.S. 526 (2024) (stating that Rule 704 makes clear that the "ultimate-issue rule" does not apply in

federal courts and only prohibits expert opinions as to whether the "defendant has a 'mental state

or condition' that is 'an element of the crime charged or of a defense.'") (citing Rule 704). Rather,

the question under Rule 704(a) is whether the testimony will be helpful and assist the jury. *See*

*United States v. Sutton*, 642 F. Supp. 3d 57, 71 (D.D.C. 2022). Finally, pursuant to Federal Rule

of Evidence 705, "an expert may state an opinion — and give the reasons for it — without first

testifying to the underlying facts or data."

Federal Rule of Criminal Procedure 16(a) requires the government to provide to the

defendant, in writing, the information required by the rule "for any testimony that the government

intends to use at trial under Federal Rule of Evidence 702, 703, or 705 during its case-in-chief."

The disclosure must contain,

- a complete statement of all opinions that the government will elicit from the witness in its case-in-chief . . .
- the bases and reasons for them;
- the witness's qualifications, including a list of all publications authored in the previous 10 years; and
- a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition.

Fed. R. Crim. P. 16(a)(1)(iii).

Under Rule 702, a district judge "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrill Dow Pharms.*, Inc., 509 U.S. 579, 589 (1993). The reliability inquiry is "a flexible one." *Id.* at 594. Factors such as whether the expert's technique "can be (and has been) tested," *id.* at 593, "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (quotation marks omitted). "[T]he law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Id.*

Disputes about an expert's "methodology . . . go to the weight, not the admissibility, of his testimony." *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995); *see Ambrosini v. Labarraque*, 101 F.3d 129, 140 (D.C. Cir. 1996) (same). Similarly, "[a]s a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Hartley v. Dillard's, Inc.*, 310 F.3d 1054, 1061 (8th Cir. 2002) (quotation marks omitted). "[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."

*Daubert*, 509 U.S. at 596. After Daubert, the "rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee's note to 2000 amendments.

An appellate court "review[s] a district court's decision to admit or exclude expert testimony for an abuse of discretion." *United States v. McGill*, 815 F.3d 846, 903 (D.C. Cir. 2016). That decision "is subject only to limited review: . . . '[under Daubert, an assessment of the reliability of expert testimony] in a particular case is a matter that the law grants the trial judge broad latitude to determine.'" *United States v. Day*, 524 F.3d 1361, 1369 (D.C. Cir. 2008) (quoting *Kumho Tire*, 526 U.S. at 153) (alteration in Day).

"Expert witnesses are often uniquely qualified in guiding the trier of fact through a complicated morass of obscure terms and concepts. Because of their specialized knowledge, their testimony can be extremely valuable and probative." *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994). Thus, pursuant to *Daubert,* courts have previously permitted expert testimony about U.S. sanctions regimes, including by current and former OFAC employees. For example, in *In re: Terrorist Attacks on September 11, 2001,* the court permitted expert testimony from a former U.S. State Department official regarding OFAC-related sanctions, noting that the "[c]ourts have a degree of 'flexibility' to tailor the Rule 702 inquiry to the needs of the case and the discipline of the expert." No. 03-MD-01570 (GBD) (SN), 2023 WL 3116763, at *2 (S.D.N.Y Apr. 27, 2023) (citation omitted). The court noted that, unlike the "hard sciences," the *Daubert* "factors are poorly suited to terrorism experts, who are often security officials, social scientists, accountants, or historians." *Id.* The court also recognized that "OFAC-related expert testimony has been admitted in other terrorism cases, and the Court will allow it here." *id.* at *10 (citing *Stansell v. Revolutionary Armed Forces of Columbia*, 45 F.4th 1340, 1358 (11th Cir. 2022). In *Bancor Group Inc., et al., v. Gabina Rodriguez, et al.,* the court also admitted the expert testimony of a former

official from OFAC regarding OFAC and international sanctions regimes. No. 22-20201-CV-Gayles/Torres, 2023 WL 6310233, at *9 (S.D. Fla. June 13, 2023). The court further determined that, although some of the witness's opinions qualified as "a legal conclusion, it nonetheless informs the factfinder regarding whether Defendants may have breached their fiduciary duties to the bank." *Id.* (citing *United States v. Offill,* 666 F.3d 168, 175 (4th Cir. 2011) ("Indeed, courts and commentators have consistently concluded that expert testimony that ordinarily might be excluded on the ground that it gives legal conclusions may nonetheless be admitted in cases that involve highly technical legal issues.") (collecting cases).

Moreover, courts in other jurisdictions have permitted the nearly identical expert testimony as is proposed in this case. *See United States v. Atilla,* No., 15-cr-867 (RMB) (S.D.N.Y.) (allowing expert testimony of Sanctions Coordinator for OFAC regarding Iran sanctions regime); *United States v. Zhenyu Wang,* No. 2:20-cr-00254-AB-2 and 4 (E.D. Pa.) (allowing expert testimony of Senior Enforcement Investigations Coordinator for OFAC regarding Iran sanctions regime); *United States v. Jalal Hajavi,* No. 1:19-cr-443-TWT-JEM-1 (N.D. Ga.) (same).

## 2.  Lay Testimony

For lay witnesses, Federal Rule of Evidence 701 provides that a lay witness can give opinion testimony, if that opinion is:

(a) rationally based on the witness's perception;
(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Otherwise, a fact witness is not permitted to provide opinion testimony.

**ARGUMENT**

**1.  The OFAC Expert Notice Complies with Rule 16**

Defendant's assertion that the government's Rule 16 notice is deficient is meritless. Under Rule 16, expert notice must contain, among other things:

- a complete statement of all the opinions that the government will elicit from the witness . . . ;
- the bases and reasons for them; and
- the witness's qualifications . . . .

Fed. R. Crim P. 16(a)(1)(G)(iii). The government's notice of the OFAC witness's testimony more than satisfies these requirements.

First, with respect to a statement of the opinions the government will elicit from the witness, the notice specifies the particular statutes and sanctions regimes about which Ms. Williams will be testifying, including IEEPA, the NKSR and the WMDPSR. Ex. A at 1-3. The notice also states that the testimony will address how a sanctions program works, including how a sanctions program is established under IEEPA, delegations to implement and enforce sanctions to the Secretary of Treasury and/or redelegation to OFAC, prohibitions, exemptions, and authorizations typically involved in sanctions programs, issuance of licenses by OFAC, and the availability of guidance from OFAC on the applicability of sanctions to a particular transaction. *Id.* at 2. The notice also addresses testimony about the North Korean sanctions program, including the "prohibitions, restrictions, and requirements regarding transactions subject to the sanctions laws and regulations," which includes "prohibitions against the exportation or re-exportation of goods, technology, or services (including financial services), directly or indirectly, from the U.S…to North Korea." *id.* at 3. The notice further provides similar disclosures regarding the testimony about the WMDPSR. *id.* Finally, the notice addresses the anticipated testimony related

to the OFAC licensing process, and the licensing history of the defendants and individuals and entities associated with the defendants. *id.* at 3-5.

The expert notice meets the Rule 16 standard and is sufficient to put the defendant on notice of Ms. Williams's testimony and opinions. The defendant's assertion that he is "left to guess at what opinions Ms. Williams" will offer—particularly with respect to "[w]hat 'prohibitions, restrictions, and requirements' are relevant to the instant case, ECF No. 80 at 5—is baseless and belied by the record. As discussed above, the expert notice sets out in detail that Ms. Williams will testify regarding IEEPA, the NKSR, and the WMDPSR, which include in the statutory and regulatory language the prohibitions and regulations relevant to this case. To the extent the defendant remains in the dark about the prohibitions, restrictions, and requirements that are relevant to the case, the indictment includes a detailed statement of the IEEPA, the specific Executive Orders issued pursuant to IEEPA that authorize sanctions against North Korea, the relevant provisions of the NKSR and WMDPSR, and the specific entities that have been sanctioned pursuant to each. ECF No. 13 at ¶s 17-26. Moreover, the indictment and the extensive discovery disclosures of the illicit transactions engaged in by the defendant also provide a detailed roadmap of the specific entities and transactions about which the expert may testify.[6] In short, the information in the expert notice and the indictment (i) meets the Rule 16 standard in that it identifies the specific topics and opinions that Ms. Williams will offer with respect to those topics;

---

[6] With respect to licensing and the defendant's assertion that he does not have adequate information about how Ms. Williams may testify regarding why an OFAC license was not issued to the defendants, ECF No. 80 at 6, discovery produced in this case clearly states that "Winney FZCO applied for two separate licenses in June 2019 for the release of blocked funds; however, no OFAC licenses were issued because no records could be found that corresponded with the funds described in the license applications." To the extent Ms. Williams testifies regarding why an OFAC license was not issued to the defendants, the answer is self-evident from the exhibit. (USA Bates 0037660-0037661) (Attached hereto as Exhibit D).

(ii) is more than sufficient to put the defendant on notice as to the nature of Ms. Williams's testimony and opinions; and (iii) provides the defendant with ample information to determine whether he needs to consult his own expert on the operation of OFAC's sanctions and licensing program. [7]

Second, with respect to the witness's qualifications, the notice states that Ms. Williams's testimony will be based on her "academic and professional training and experience, her review of the applicable laws, policies, and procedures regarding U.S. sanctions, and her review of the particular transactions involving the defendants that are subject to U.S. sanctions, including any relevant agency records." Ex. A at 1. Although, as noted above, the government inadvertently failed to attach Ms. Williams's CV to the expert disclosure it provided to the defendant, Ms. Williams's public LinkedIn profile—which can be found through googling "Emily Williams OFAC"—provides an overview of her education and employment. *See* LinkedIn profile, *available at* https://www.linkedin.com/in/emily-williams-a48a2558/. Regardless of this omission, the government's expert notice states that Ms. Williams is an Enforcement Officer at OFAC, which is a component of the U.S. Department of the Treasury that administers and enforces economic and trade sanctions. Ex. A at 1. Experience as an Enforcement Officer at OFAC more than qualifies Ms. Williams to discuss OFAC investigations, licensing, and enforcement. And as discussed in Ms. Williams's CV, because of her knowledge and experience of OFAC sanctions policies and practices, Ms. Williams conducts trainings to U.S. government and industry personnel, all of which provides a reliable basis for Ms. Williams to apply her knowledge and experience to the facts of

---

[7] To the extent that the Court may determine that the original expert notice failed to sufficiently identify the expert's opinions and the bases for those opinions, that notice has been supplemented by the additional information included *supra* at page 5. As discussed below, given that there is still nearly three months before the start of trial, the defendant fails to demonstrate any prejudice resulting from his assertions that the notice is deficient.

this case. *See United States v. Esformes*, 60 F.4th 621, 637 (11th Cir. 2023) ("*Daubert* allows for admitting experts whose methods are less formal, such as when an expert testifies primarily based on experience.").[8]

Finally, the defendant argues that, to the extent Ms. Williams intends to interpret laws and regulations, any such testimony would be inadmissible legal conclusion. Once again, the defendant misses the mark. As described above, much of Ms. Williams's testimony pertains to background and/or factual opinions about a complex regulatory regime that is not generally known by lay persons and is intended to help the jury understand the issues in this case. *See Offill*, 666 F.3d at 175 (upholding expert testimony explaining intricate regulatory landscape and how practitioners functioned within it to assist the jury). As in tax cases, which routinely allow testimony from an IRS agent to testify about various provisions of the tax code, *see Adams v. New England Scaffolding, Inc.*, 13-12629-FDS, 2015 WL 9412518, at *5 (D. Mass. Dec. 22, 2015) (citing cases), expert testimony on the general operation of sanctions law and regulations does not invade the province of the jury. *See Bancor Group*, 2023 WL 6310233, at *9; *Atilla*, 15-cr-867 (RMB) (S.D.N.Y.); *Zhenyu Wang*, 2:20-cr-0024-AB-2 and 4 (E.D. Pa.); *Jalal-Hajavi*, 1:19-cr-443-TWT-JEM-1 (N.D. Ga.). This is true even if Ms. Williams testifies that certain of the relevant entities were sanctioned pursuant to the NKSR or the WMDPSR to provide context to why the provision of services from the United States would be prohibited. *See* Fed. R. Evid. 704; *see also United States v. Buchanan*, 787 F.2d 477, 483 (10th Cir. 1986) (where "[t]he question before the jury involved the consideration of a particular homemade [weapons] device against an array of statutory definitions," testimony as to the ultimate issue was permissible because the testimony would

---

[8] To the extent the defendant wishes to argue that the Ms. Williams's methodology is flawed, he is free to do so in summation, but such an argument goes to the weight, not the admissibility of her testimony. *See McCullock*, 61 F.3d at 1044.

"assist the trier of fact to understand the evidence or to determine a fact in issue") (citing Fed. R. Evid. 702).

To be clear, the government does not intend to elicit testimony on the defendant's intent in violation of Federal Rule of Evidence 704, nor will Ms. Williams's testimony overstep into the Court's province by instructing the jury on the law. However, by providing background on how the law developed, a timeline of its development, the fact that the exportation of services includes correspondent banking services by U.S. financial institutions—as discussed in the expert notice, *see* Ex. A at 3—Ms. Williams's testimony will undoubtedly "help a jury understand unfamiliar terms and concepts" and is therefore permissible. *United States v. Bilzerian*, 926 F.2d 1285, 1294; *see also Peckham v. Cont'l Cas. Ins. Co.*, 895 F.2d 830, 837 (1st Cir. 1990) (expert testimony on proximate causation in insurance law was properly admitted because experts "could reasonably be expected to shed some light in a shadowy domain"); *Weinstein's Federal Evidence* § 704.04[2][a] (2d ed. 2003) ("[Expert] testimony may be helpful if the case involves a specialized industry.").

In short, the government's expert notice complies with the requirements of Rule 16. *See United States v. Mcgee*, No. 22-CR-019-JFH, 2024 WL 217848, at *9 (E.D. Okla. Jan. 19, 2024) (holding that government's expert notice was sufficient where notice was clear that expert would "testify to all aspects of her knowledge in the area of child sexual abuse and child sexual abuse examinations based upon her education, background, training and experience."). *Compare United States v. Menendez*, No. 23-CR-490 (SHS), 2025 WL 547794, at *5 (S.D.N.Y. Feb. 19, 2025) (holding that defense expert notice was deficient where it simply stated that the witness was "'an expert in Middle Eastern cultures and has lived, worked, and conducted ethnographic research in Beirut,'" but failed to explain how the witness came to her conclusions regarding how gift giving in Armenian and Lebanese cultures applied to the defendant). In addition, Ms. Williams's CV

(Exhibit B) further establishes the bases of her testimony, and provides a detailed description of her experience with, and application of, OFAC sanctions programs. *See* Exhibit B at 1; *cf. Menendez*, 2025 WL 547794, at *5 (finding that "observational" testimony based on professional experience does not suffice where there was no indication how research or professional experience led to the expert's proffered opinions). Accordingly, the government's expert notice fully complies with the notice requirements of Rule 16.

Even if this Court determines that there are deficiencies in the government's expert notice, precluding or limiting the testimony of the witness is not the appropriate remedy at this stage of the proceedings. As this Court has recognized, *see* ECF No. 96 at 5, there are approximately three months until the start of trial. Defendant fails to make any *credible* assertions of prejudice from the perceived deficient notice. The cases relied upon by the defendant in which the expert testimony was excluded all involved either egregiously late and/or egregiously deficient disclosures. No such circumstances exist here. There is also no basis to infer the government has purposefully sought to evade its disclosure obligations under Rule 16. In the event that the Court determines that additional disclosures are necessary to comply with the expert notice requirements, the government should be permitted to supplement its notice to address any such deficiencies. *See* Fed. R. Crim. P. 16(d)(2).

## 2. The FBI Accountant Is a Fact Witness Who Will Testify Consistent with the Rules of Evidence

Mr. Anglin is testifying as a fact witness, and not an expert witness, and thus the government was not required to provide notice of his testimony under Rule 702. As previously stated, the government intends to call Mr. Anglin chiefly to describe the voluminous financial records related to the transactions at issue in the case and summarize the same for the benefit of the trier of fact, pursuant to Fed. R. Evid. 1006. The underlying records of financial transactions

contain thousands of lines of data in multiple spreadsheets from various banks that processed international wire transfers on behalf of the Winney entities. Mr. Anglin's sorting and culling of these spreadsheets, and analysis of the same is not "expert" testimony. Contrary to defense's claim, searching through Microsoft Excel spreadsheets and sorting data are not "beyond the understanding of the average juror." ECF No. 80 at 14. Additionally, Mr. Anglin will testify how and why he identified certain transactions of interest, including that he reviewed relevant transactions where payments were made by an unrelated entity, or a "front company," a banking industry term.[9] Indeed, the government anticipates that witnesses from various U.S. financial institutions will also use this term, as it is standard to financial institution investigations.[10] Mr. Anglin's use of an industry term is not itself an "expert" opinion.

Contrary to the defense's claims (at 14), the D.C. Circuit neither considers accountants *per se* experts nor requires them to be "routinely" qualified as such.[11] In *United States v. Weaver*, 281

---

[9] Use of a third-party payor or "front company" is one of many relevant considerations in anti-money laundering investigations, which often appears in the Suspicious Activity Reports of U.S. financial institutions' investigations, which are required by the Bank Secrecy Act. *See, e.g.*, Fed. Dep. Insurance Corp., *Risk Management Manual of Examination Policies § 8.1: Bank Secrecy Act, Anti-Money Laundering, and Office of Foreign Assets Control*, at p. 39, *available at* https://www.fdic.gov/resources/supervision-and-examinations/examination-policies-manual/section8-1.pdf (last visited Jun. 17, 2025) (describing "layering" of transactions through "a front company or phony charitable organization" as a means of money laundering.).

[10] Defense did not object to the government's notice that bank witnesses would testify about "the factors and red flags the banks consider before determining whether to process an international USD transaction." Exhibit C at 1-2.

[11] Defendant's citation to out-of-district cases (at 14) is not persuasive, and it is notable that in many of those cases, the proponent proffered the witness *as an expert*. The government agrees that an accountant does have the educational background to be qualified as an expert. But it does not follow that therefore an accountant cannot testify to facts and analysis, without offering an opinion, just because they also have expertise. *Weaver*, 281 F.3d at 231.

F.3d 228, 231 (D.C. Cir. 2002), the Circuit upheld the admission of a government auditor's lay witness testimony, no need to qualify the witness as an expert.

> [The witness] was a long-time member of the Postal Inspection Service specializing in revenue investigation and was a certified internal auditor. His testimony linked the ledger gaps and unrecorded (but deposited) checks to the alleged cash thefts. He examined the cash register logs for the fourteen days in the indictment and estimated the absolute minimum amount of cash received by the end of the day, based upon the types of transactions conducted at the windows. . . . . He then compared this minimum amount to the close-out logs and determined that on nine of the fourteen days in the indictment there was less cash recorded than the bare minimum.  . . . [The witness] was an active participant in the investigation. His testimony rested on the personal knowledge he gained during the course of his examination. That he performed "routine computations and culling through of documents" to arrive at his conclusions did not require him to be qualified as an expert.

*Weaver*, 281 F.3d at 231 (citing Fed. R. Evid. 602; *United States v. Lemire*, 720 F.2d 1327, 1350 (D.C. Cir. 1983)).[12] *Accord United States v. Dukes*, 242 F. App'x 37, 49 (4th Cir. 2007) (noting that the government was permitted at trial to call "an SEC accountant, as a fact witness to present summary charts of . . . bank records"). "Where . . . a lay witness's testimony is limited to their personal perceptions and does not profess any specialized opinion, such testimony is admissible." *United States v. Patel*, No. 3:21-CR-220 (VAB), 2023 WL 2643815, at *41 (D. Conn. Mar. 27, 2023) (citing *United States v. Rigas*, 490 F.3d 208, 223-24 (2d Cir. 2007)).

---

[12] Defense cites (at 14) to only one Circuit case, *United States v. Wilson*, 605 F.3d 985, 1026 (D.C. Cir. 2010), and does so in a misleading manner. In *Wilson*, the Circuit affirmed the exclusion of two witnesses (a former drug dealer not part of the drug conspiracy and an individual from the neighborhood) that defense wanted to interpret taped phone calls made during a drug conspiracy. *Id.* at 1025. The Circuit held that "an individual without personalized knowledge of a specific drug conspiracy may not testify about drug topics that are beyond the understanding of an average juror under Rule 701." *Id.* at 1026. For obvious reasons, the average juror would *not* have awareness of drug topics, although they certainly have awareness of basic analytics performed by accountants.

Ample precedent supports that the Court can admit the testimony of an FBI accountant as lay witness testimony. The District Court in *United States v. Mosby* permitted another FBI forensic accountant to testify in the same way proffered here, without qualifying the witness as an expert.

> [T]he Court is satisfied that [the witness] will serve as a lay witness at trial. The Government states that [the witness] is a forensic accountant employed by the FBI and that she will present several charts that summarize voluminous financial records, pursuant to Fed. R. Evid. 1006. The Government also states that [the witness] will testify about several summary exhibits that she prepared, which summarize voluminous financial records obtained by the Grand Jury for this case, pursuant to Fed. R. Evid. 1006."

626 F. Supp. 3d 847, 863-64 (D. Md. 2022). Other courts permit the same. *Rigas*, 490 F.3d at 223-24 (finding no error where the district court allowed a witness to "testify[ ] only to Adelphia's accounting records and not regarding the appropriateness of [the] accounting treatment" (quotation marks omitted)); *United States v. Turner*, No. CR05-355C, 2007 WL 1367597, at *2 (W.D. Wash. May 8, 2007) ("The Court agrees with the Government here too that witnesses who may be specialists do not have to be designated "experts" in order to testify about their roles in cases that called for their special expertise as the relevant facts developed."); *see also E. Point Sys., Inc. v. Maxim*, No. 3:13-CV-00215, 2015 WL 8023569, at *2 (D. Conn. Dec. 4, 2015) ("[I]n cases where accountants were allowed to testify as fact witnesses, the accountants were personally familiar with the relevant business's records, or the accounting of the transactions at issue . . . .").

Nor does Mr. Anglin's use of the industry term "front company" transform his testimony into expert testimony. As part of the investigation, Mr. Anglin was asked to cull the voluminous financial records for transactions of interest. The use of "front companies" was a factor Mr. Anglin considered in identifying relevant transactions, and which will explain why he analyzed certain records and summarized those records for the jury.

Finally, defense provides no citation for its belief that "Mr. Anglin, will give lay opinion testimony." ECF No. 80 at 12. The government did provide notice under the Court's order related to witnesses testifying under Rule 701, out of an abundance of caution, and nowhere in the government's notice does it include any opinions that the government intends to elicit. *See* Exhibit C at 1. (In any event, Rule 701 would *permit* the government to elicit an opinion from a lay witness, provided the rule is satisfied.). Here, Mr. Anglin's testimony is limited to his own experiences with records of financial institutions and his analysis the records in this case, which is *factual* testimony.

In any event, defense oversteps by requesting the exclusion of *all* Mr. Anglin's testimony. ECF No. 80 at 17. There is no basis for the Court to exclude Mr. Anglin's testimony in its entirety. The government asserts that, under D.C. Circuit precedent, *Weaver*, 281 F.3d 228, Mr. Anglin does not qualify as an expert witness and the government reasonably relied on the same in making its disclosures. Should the Court disagree with the government's application of *Weaver* to the facts of this case, the appropriate remedy would be for the Court to order the government to give notice of Mr. Anglin's testimony under Fed. R. Evid. 16. Defense agrees that the same is an amenable solution here. *Id.*

Thus, the government submits that defendant's instant motion should be denied.

Respectfully submitted,

JEANNINE FERRIS PIRRO
United States Attorney

By:     */s/ Karen P. Seifert*
        Karen Seifert
        N.Y. Bar No. 4742342
        Steven B. Wasserman
        D.C. Bar No.453251
        Assistant United States Attorneys
        National Security Section
        601 D Street, NW, 5th Floor
        Washington, DC 20530
        (o) 202-252-7719 (Wasserman)

(o) 202-252-7527 (Seifert)
steve.wasserman@usdoj.gov
karen.seifert@usdoj.gov

Christina Clark
D.C. Bar No.  995326
Trial Attorney
U.S. Department of Justice
National Security Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
christina.clark3@usdoj.gov
(o) 202-412-4213