UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JIN GUANGHUA,<br><br>Defendant. | Criminal Action No. 23-91-2 (CKK) |

**MEMORANDUM OPINION & ORDER**
(June 27, 2025)

Defendant Guanghua Jin faces a twelve-count indictment charging him with participation in a bank-fraud, money-laundering, and sanctions-evasion conspiracy. Jin moves to dismiss that indictment in its entirety on the grounds that the Government has violated his Sixth Amendment right to a speedy trial. For the reasons that follow, the Court shall **DENY** Jin's motion.

## I. BACKGROUND

On March 21, 2023, a grand jury returned the indictment against Jin. *See* Indictment, ECF No. 13. The same day, Jin—a Chinese citizen and Australian resident—was arrested in Melbourne on an extradition arrest warrant issued by an Australian Magistrate. Mot. Ex. A, ECF No. 44-1, at 3. Another Australian Magistrate then remanded him to custody. *Id.*

Extradition proceedings in Australian court, discussed in greater detail below, then ensued. Those proceedings were lengthy. Jin was not arraigned in this District until September 30, 2024. Min. Entry (Sept. 30, 2024). And he is scheduled to stand trial on September 8, 2025. Amended Pretrial Scheduling Order, ECF No. 39. Jin has been detained since March 21, 2023.

Jin filed the instant motion to dismiss. Mot., ECF No. 44. The Government opposed. Opp'n, ECF No. 67. And Jin replied. Reply, ECF No. 74. Jin's motion is now ripe for review.

1

## II. LEGAL STANDARD

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. "Excessive delay in prosecuting a defendant after he is indicted or arrested violates this Sixth Amendment right." *United States v. Tchibassa*, 452 F.3d 918, 922 (D.C. Cir. 2006).

To determine whether a delay in bringing a defendant to trial exceeds the Sixth Amendment's bounds, the Court must apply the multifactor balancing test articulated in *Barker v. Wingo*, 407 U.S. 514 (1972). Under *Barker*, the Court considers and balances (1) the length of the delay, (2) the reason for the delay, (3) whether the defendant has asserted his right to a speedy trial, and (4) the prejudice suffered by the defendant from the delay. *Id.* at 530. Under the *Barker* test, "none of the four factors" is "either a necessary or sufficient condition" to finding a deprivation of the speedy-trial right. *Id.* at 533. Instead, "they are related factors and must be considered together" as part of a "difficult and sensitive balancing process." *Id.* Nonetheless, "[t]he flag that all litigants seek to capture is the second factor, the reason for delay." *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986); *see also United States v. Fernandes*, 618 F. Supp. 2d 62, 67 (D.D.C. 2009) (JDB) ("[T]he second factor . . . often dictates the outcome of cases.").

Before turning to the *Barker* factors, a brief note on what the parties do not argue. Jin does not press a claim under the Speedy Trial Act. Nor does he argue that the filing of the criminal complaint against him in August 2022 started the speedy-trial clock. For its part, the Government does not dispute that Jin's Sixth Amendment right attached upon his indictment, even though he was a foreign national living outside the United States at that time. *See Tchibassa*, 452 F.3d at 921 n.1 (assuming *arguendo* that "the Sixth Amendment speedy trial right attaches to a foreign national—charged with a crime committed outside United States territory—while he remains outside our borders"). The Court follows the parties' lead on these fronts.

### III. ANALYSIS

Applying the *Barker* factors, the Court concludes that Jin's Sixth Amendment right to a speedy trial has not been violated. The Court does not gainsay the length of delay, or the prejudice to Jin resulting from his extended pretrial detention. But the bulk of the delay in this case is not attributable to the Government. And none of it is attributable to bad faith.

**A. The Length of Delay**

The first *Barker* factor, the length of delay, entails "a double enquiry." *Doggett v. United States*, 505 U.S. 647, 651 (1992). First, "[s]imply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Id.* at 651–52 (quoting *Barker*, 407 U.S. at 530–31). A delay of more than one year is sufficient. *See id.* at 652 n.1; *United States v. Lopesierra-Gutierrez*, 708 F.3d 193, 203 (D.C. Cir. 2013). Second, once the defendant makes this threshold showing, "the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination." *Id.* at 652. This analysis is contextual: "[T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Barker*, 407 U.S. at 531.

The length of delay in this case is sufficient to trigger a speedy-trial analysis. The Government argues to the contrary, calculating that the period of delay is only 318 days, just below the established one-year threshold. Opp'n at 5. But the Government arrives at that figure by excluding periods of delay it contends are "solely attributable to either the defendant's exercise of his rights or the foreign extradition proceedings." *Id.* That exclusion is improper. The reason for delay is a separate consideration under the *Barker* test. For present purposes, the relevant period is the length of time between Jin's arrest and his trial. *See United States v. Jones*, 52 F.2d 834, 849 (D.C. Cir. 1975) ("We believe the appropriate starting point for computing the length of delay

3

is the date of appellant's arrest . . . ."). Jin was arrested on March 21, 2023 and is scheduled to stand trial on September 8, 2025. So the relevant period of delay is 902 days, just shy of 2 ½ years. That length of delay is presumptively prejudicial and sufficient to trigger a *Barker* analysis.

Next, the Court must consider the length of this delay in context. A 2 ½-year delay between arrest and trial is substantial. But the Court must also bear in mind that Jin is charged with participation in a complex, decade-long, international conspiracy. *See* Indictment, ECF No. 13. For that reason, "it is not surprising that this prosecution takes longer than 'an ordinary street crime.'" *United States v. Homaune*, 898 F. Supp. 2d 153, 169 (D.D.C. 2012) (JEB) (quoting *Barker*, 407 U.S. at 531). And in any event, "[a]s a practical matter, once the threshold of more than one year is exceeded, the length of the delay does not strongly sway the ultimate outcome of the speedy trial issue." *Fernandes*, 618 F. Supp. 2d at 68 (collecting cases). Here, the Court concludes that the first factor weighs slightly in Jin's favor.

### B. The Reason for Delay

The second *Barker* factor directs the Court to assess who is to blame for the delay in bringing Jin to trial. "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government." *Barker*, 407 U.S. at 531. A "more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than the defendant." *Id.* And "a valid reason, such as a missing witness, should serve to justify appropriate delay." *Id.*

Here, Jin does not contend that the Government has deliberately caused the delay. Instead, his contention is that the Government has not "proceeded with diligence" since his arrest in Australia. Mot. at 3. "In cases such as this one—where a defendant is located abroad for much of

4

the delay—the hallmark of government diligence is extradition." *Fernandes*, 618 F. Supp. 2d at 69. Where the Government pursues extradition pursuant to a valid extradition treaty, courts "routinely hold that the Government has satisfied its diligence obligation." *Id.*; *see also Tchibassa*, 452 F.3d at 925. Accordingly, the Court assesses the reasons for delay in this case relative to Jin's extradition proceedings. Four relevant periods emerge.

*First*, the Court considers the period between Jin's arrest and his consent to extradition. Jin was arrested on March 21, 2023. According to the sworn declaration of Jeffrey M. Olsen, Associate Director of the Department of Justice's Office of International Affairs, Jin formally consented to extradition on August 4, 2023—136 days later. *See* Declaration of Jeffrey M. Olsen, ECF No. 94 ("Olsen Decl.") ¶ 22(c). Of this 136-day period, only 51 days of delay are attributable to the Government—the time between Jin's arrest and the Government's formal presentation of its extradition request on May 11, 2023. *Id.* ¶ 21. And even this period of delay shows that the Government diligently complied with its obligations under the Treaty on Extradition Between the United States of American and Australia (the "Extradition Treaty"), which required the Government to submit its request within 60 days of Jin's arrest. *Id.* ¶ 7. Of the remaining 85 days of delay, 48 days were attributable to the Australian court. *See id.* ¶¶ 21, 22(a)–(c) (describing the time between scheduled hearings). And 37 days of delay were attributable to Jin, whose counsel requested an adjournment to allow Jin time to consider his position on extradition. *Id.* ¶ 22(b).

*Second*, the Court considers the period between Jin's consent to extradition and the Australian government's issuance of a surrender warrant. Jin consented to extradition on August 4, 2023, and the Australian government approved his extradition on August 14, 2024—376 days later. Olsen Decl. ¶ 22(b), (f). This period thus encompasses the bulk of the delay in Jin's prosecution. Under the Extradition Treaty, once Jin consented to extradition, the case

5

returned to the Australian Attorney General for a final determination on whether Jin should be surrendered to the United States. *See id.* ¶¶ 12, 22. But 61 days of this period of delay are attributable to Jin, whose counsel requested time to make representations to the Australian government regarding Jin's extradition. *Id.* ¶ 22(e). The remaining 315 days appear to be attributable to delays in the Australian legal system beyond the Government's control. Indeed, the record before the Court reflects that the Government sought and received updates from the Australian Attorney General during this period and promptly responded to the Australian Attorney General's requests for additional information. *Id.* ¶ 22(f)–(g). This kind of "periodic contact" with an extraditing government satisfies the Government's diligence obligation during the pendency of extradition proceedings. *United States v. Demirtas*, 204 F. Supp. 3d 158, 175 (D.D.C. 2016) (RDM) (collecting cases).

*Third*, the Court considers the period between the authorization of Jin's extradition and his initial appearance in this Court. Jin first appeared in this District on September 30, 2024—47 days after his extradition was approved. Min. Entry (Sept. 30, 2024). This period of delay is entirely attributable to the Government. The Government took 36 days to submit to the Australian government a plan for Jin's surrender. *See* Olsen Decl. ¶ 23. Under that plan, Jin was then transferred to U.S. custody 8 days later. *Id.* ¶ 24. And Jin then made his initial appearance in this District 3 days after that. *See* Min. Entry (Sept. 30, 2024). Although this period of delay is attributable to the Government, it carries little weight. The record reflects that the Government diligently satisfied its obligation under the Extradition Treaty to execute Jin's surrender within two months of the Australian government's issuance of the surrender warrant. *See* Olsen Decl. ¶ 23.

*Finally*, the Court considers the period between Jin's initial appearance and trial. Jin is scheduled to stand trial on September 8, 2025—343 days after his initial appearance. Of that

period, 102 days of delay are attributable in part to Jin, who consented to the exclusion of time under the Speedy Trial Act on multiple occasions to retain counsel, review discovery, and consider the Government's plea offer. *See* Min. Entry (Sept. 30, 2024); Min. Order (Oct. 8, 2024); Min. Order (Dec. 6, 2024). The remaining 241 days of delay have already been a subject of dispute in this matter. In December 2024, Jin opposed the Government's motion to designate this a complex case and prospectively exclude time under 18 U.S.C. § 3161(h)(7)(B)(ii). *See* Mem. Op. & Order, ECF No. 35, at 1. The Court granted the Government's motion over Jin's objection due to the complexity of the charged conspiracy, the likely need for briefing under the Classified Information Procedures Act, the volume and variety of discovery, the prevalence of foreign languages in that discovery, and the anticipated volume of pretrial defense motions. *See id.* at 3–6. A survey of the docket reveals that the Court's predictions about the complexity of this matter were accurate: The parties have filed more than 15 pretrial motions, encompassing hundreds of pages of briefs and exhibits, and have alerted the Court to multiple discovery disputes regarding the availability of translated discovery materials. Accordingly, the Court concludes that this 241-day period of delay results from "neutral reason[s]" which "should be weighted less heavily but nevertheless" attributed to the Government. *Barker*, 407 U.S. at 531.

In sum, of the 902 days between Jin's arrest and trial date, the Court calculates that 200 days of delay are attributable to Jin, 363 days are attributable to the Australian government, and 339 days are attributable to the Government. Of the 339 days attributable to the Government, 98 days of delays resulted from the Government's diligent compliance with its obligations under the Extradition Treaty, and the remaining 241 days of delay were justified at length by a Memorandum Opinion and Order of this Court. In other words, nearly two thirds of the delay in bringing Jin to trial resulted from circumstances entirely beyond the Government's control, and the balance of the

7

delay was either justified or due to neutral reasons. Further, the record reflects that the Government acted with reasonable diligence in securing Jin's extradition and bringing him to trial.[1] On balance, the second *Barker* factor weighs heavily in the Government's favor.

### C. Assertion of the Right

The third *Barker* factor directs the Court to consider "[w]hether and how a defendant asserts" his right to a speedy trial. 407 U.S. at 531. As is often the case, this consideration "is to a certain extent subsumed by the second factor." *Fernandes*, 618 F. Supp. 2d at 72. The Court has already reviewed the timing and nature of Jin's assertion of his speedy-trial right. On one hand, more than three-quarters of the delay in bringing Jin to trial occurred before Jin asserted his right. On the other hand, Jin promptly asserted that right after retaining his current counsel and much of the preceding delay was attributable to Australian proceedings during which his ability to demand expedition is uncertain. The Court concludes that this factor favors neither party.

### D. Prejudice

Finally, the Court considers the extent of any prejudice to Jin caused by delay. The Supreme Court identified three kinds of prejudice in *Barker*: "oppressive pretrial incarceration," "anxiety and concern of the accused," and "the possibility that the defense will be impaired." 407 U.S. at 532. "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*

In his Motion, Jin asserts only that he is prejudiced by his continued pretrial detention. *See* Mot. at 4. The Court will not minimize the extent of that prejudice given the length of Jin's pretrial

---

[1] In his Reply, Jin directs the Court to examples of the Government's "fail[ure] to diligently prepare for trial." Reply at 6–8. But each example is a complaint about the Government's discovery productions since the Court's issuance of the Pretrial Scheduling Order in this matter in January 2025. None addresses the inquiry presented by Jin's Motion: whether the Government "proceeded with diligence during th[e] period" between Jin's arrest and appearance in this Court. Mot. at 3. Jin's frustrations with the Government's discovery productions are a separate matter.

detention and the resulting separation from his family in Australia. Nevertheless, as the Government notes in its Opposition, Jin's failure to identify in his Motion any "specific prejudice to his defense" resulting from that detention or from the delay in his trial weighs against finding a speedy-trial violation given the Court's finding that the Government pursued Jin's extradition with reasonable diligence. *See Doggett*, 505 U.S. at 656. Jin attempts to resolve this issue in his Reply, arguing that Jin's "recollection pertaining to specific transactions has faded" during the period of his pretrial detention and speculating that certain relevant records or witnesses that might have been available had he been tried sooner may now be unavailable. Reply at 11–13. Because Jin raised these concerns only in his Reply, the Government has not had an opportunity to respond to them. But even considering Jin's argument unrebutted, the generalized nature of the prejudice Jin identifies mutes the persuasive force of his contentions. The Court accordingly concludes that this factor favors Jin only slightly.

### E. Balancing the Factors

Considering the four *Barker* factors as a whole, the Court does not find that Jin has suffered a violation of his Sixth Amendment right to a speedy trial. Although the length of delay between Jin's arrest and trial is substantial, it is not entirely out of the ordinary when considered in the context of an international conspiracy prosecution of a defendant residing abroad. Further, the Court cannot discern with specificity any direct prejudice to Jin's defense resulting from post-arrest delay as opposed to the unavoidable fading of memories attending a prosecution of a decade-long alleged conspiracy. Most critically, the record before the Court shows that the Government pursued Jin's extradition with reasonable diligence and that a significant portion of the delay in this matter is not attributable to the Government. On balance, the Court finds that the Government

did not unreasonably delay Jin's prosecution and that he is not entitled to dismissal of the Indictment based on a violation of his Sixth Amendment right to a speedy trial.

### IV. CONCLUSION & ORDER

Accordingly, it is, this 27th day of June, hereby:

**ORDERED** that Defendant Guanghua Jin's [44] Motion to Dismiss for Violation of Sixth Amendment Speedy Trial Rights is **DENIED**.

**SO ORDERED.**

_____
COLLEEN KOLLAR-KOTELLY
United States District Judge