UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | }<br>}<br>} |
| v. | } Criminal No. 23-CR-91-CKK<br>} |
| GUANGHUA JIN, | }<br>} |
| Defendant. | }<br>}<br>} |

### DEFENDANT'S REPLY TO
### GOVERNMENT OPPOSITION TO
### DEFENDANT'S MOTION *IN LIMINE* RELATED TO EXPERT WITNESSES

On June 12, 2025, Mr. Jin moved to preclude or limit the testimony of two of the government's witnesses on the grounds that they were improperly disclosed expert witnesses. ECF 80. On June 23, 2025, the government opposed his motion. ECF 97. Mr. Jin hereby replies.

### ARGUMENT

The government barely even pretends that its original notice of Emily Williams satisfied Rule 16. Rather, it argues that its overall disclosures in the case were sufficiently informative. But that is not the standard and, even if it were, the government still would not have met it. The government's remaining arguments are simply not relevant to the issues before the Court.

As for Dawson Anglin, while the government may be correct that he could offer limited testimony as a fact witness, the government has not shown that such testimony is what it intends to offer. Neither has it restricted itself to that testimony. To the contrary, the government has unequivocally committed to introducing testimony that is the very definition of expert opinion.

Given the government's protracted attempts to evade its disclosure obligations, the Court should extend it no further patience. The Court should order that the experts be precluded or, at

1

least, should hold a hearing at which the government must finally nail its colors to the mast. Thus, the Court may order the testimony confined within specific limits that are clearly permissible

I. **The Government Has Not Adequately Notified Mr. Jin of Ms. Williams's Testimony. Moreover, Much of This Undisclosed Testimony Is Inadmissible as a Legal Conclusion. The Court Should Exclude Her Testimony or Hold a Hearing.**

   A. **The government cannot establish at this stage that Ms. Williams's testimony is necessarily admissible.**

Going far beyond the issues before the Court, the government argues that Ms. Williams's testimony is admissible. Of course, the purpose of the expert disclosures is to enable the defense to litigate that. Perhaps hoping to sidestep the issue, the government seems to argue that Ms. Williams's testimony must be admissible, because courts frequently admit such testimony. In making that argument, it relies on caselaw that is inapposite to these facts. *See* Section I.C, *infra*. More importantly, however, that argument is premature. As we argued throughout our motion, proper disclosure is necessary to determine whether Ms. Williams's testimony is proper. *See* ECF 80 at 2, 6, 10. For the government to withhold information necessary to assess her suitability as an expert witness, then argue that it may withhold that information because she must be suitable, is for it to "circumvent even the basic reliability standards under *Daubert*." *Id.* at 2.

   B. **An expert notice under Rule 16 must give notice of Ms. Williams's opinions and the basis for those opinions. Even after these additional disclosures, Mr. Jin is still forced to guess at what Ms. Williams will testify.**

The government briefly argues that its Notice of Expert Witness was inherently adequate. It was not, for the reasons we gave in our motion. ECF 80 at 4–9. The government then says, in effect, that the expert notice was adequate because the defense could have figured out what it should have said. But "you can figure it out" is not the standard.

An expert notice "must contain" a complete statement of all opinions, the bases and reasons for them, and the witness's qualifications. *See* Fed. R. Crim. P. 16(a)(1)(G)(iii). Those statements

2

must describe and explain the expert's specific opinion, not merely "general subject matters to be covered." *United States v. White*, 492 F.3d 380, 407 (6th Cir. 2007) (quoting *United States v. Duvall*, 272 F.3d 825, 828 (7th Cir. 2001)); *see also United States v. Holmes*, 670 F.3d 586, 599 (4th Cir. 2012) (affirming exclusion of testimony when proponent provided no bases or reasons for opinion "that individuals sometimes make false confessions"); *United States v. Hawthorne*, 759 F. App'x 765, 770 (11th Cir. 2018) ("The notice fails to describe any opinion that [the witness] held"). And "contain" does not mean "enable the deduction of." While it is not required to repeat prior reports and results of testing, even that information must "be referred to" in the notice. Fed. R. Crim. P. 16(a)(1)(G)(iv). The prior disclosures here were not reports or testing, were not referred to in the notice, and would not enable a reasonable lawyer to infer the anticipated testimony.

The government argues that the "the indictment and the extensive discovery disclosures" identify "the specific entities and transactions about which the expert may testify." ECF 97 at 13. Indeed, they identify no shortage of topics about which Ms. Williams *may* testify, but we can only guess at which ones the government intends to offer. The indictment itself cites all of IEEPA, a series of lengthy Executive Orders, designations identified solely by date, and an entire part of the Code of Federal Regulations. *See* Indictment ¶¶ 17–26. No subsections or even sections are provided. The reference to transactions that evade or avoid sanctions suggests the relevance of 31 C.F.R. § 510.212, although the government does not state as much, but that section refers to other "prohibitions set forth in this part." Subpart B (titled Prohibitions) alone has 14 sections, the first of which is 16 pages long. *See* 31 C.F.R. § 510.201. The government has not identified which such prohibitions are pertinent to Ms. Williams's testimony, why, or what opinions she will offer about them. The only detail given about discovery is a quotation of one sentence, addressing one of our many concerns, in tens of thousands of pages. *See* ECF 97 at 13 n.6. Again, this document was not

3

so much as referred to in the expert notice. Even if it had been sufficiently disclosed, it says only that the license was denied "because no records could be found that corresponded with the funds described in the license applications." ECF 97-4 at 1. That sentence raises more questions than answers. What searches for the records were undertaken? Why were the results found not to correspond with the funds described?

Finally, as to the absence of Ms. Williams's CV, the government faults us for not looking at her LinkedIn profile.[1] But a LinkedIn profile is not a CV. Ms. Williams's profile states her duration of employment, a single-sentence job description, and a high-level description of academic qualifications that the government no longer contends are relevant. Moreover, we do not have access to the government's information about its own witnesses. It is not feasible to prepare for trial by searching the internet for a name and hoping that we have found the right person, whose self-presentation is both complete and accurate. That is particularly true in cases related to national security, where much information is kept confidential.

The government's repeated efforts to avoid the disclosure requirement suggest that exclusion of Ms. Williams's testimony is appropriate. If the Court declines to do so, however, it should hold a hearing at which Mr. Jin may explore the bases for the expert testimony that will be offered against him.

### C. When Mr. Jin is specifically accused of violating the sanctions against North Korea, any legal conclusions as to those sanctions are not permissible.

Mr. Jin argued that Ms. Williams should not be permitted to offer any legal conclusions. ECF 80 at 10–12. The government essentially responds that Ms. Williams's testimony is

---

[1] The government also faults us for not requesting a copy of the CV. Given the government's apparent attempts to evade the notice requirements, we could not have known that this omission was "inadvertent." Furthermore, had the government provided any description of her educational or employment history in its notice, this "oversight" would have been harmless.

4

appropriate here because similar testimony has been given in other cases. But this Court is not Dr. Pangloss. It should not assume that all decisions to admit expert testimony were correct, it should not assume that the testimony would have withstood challenges that were never made, and it should not assume that events in other trials should be repeated in this one.

The government relies on three decisions in which courts supposedly permitted testimony by OFAC employees. *See United States v. Atilla,* No., 15-cr-867 (RMB) (S.D.N.Y.); *United States v. Zhenyu Wang,* No. 2:20-cr-00254-AB-2 and 4 (E.D. Pa.); *United States v. Jalal Hajavi,* No. 1:19-cr-443-TWT-JEM-1 (N.D. Ga.). But the government provides no description of these cases and no date or document number with which to locate the relevant decision. When we contacted the government, it informed us that it "relied on the fact that the experts had actually testified in these trials, so we did not cite to specific rulings by these courts on this issue." In short, the government puts forth no actual precedent for this so-called argument. We do not know whether admission of that testimony was even litigated or, if it was, on what grounds.[2] We do not know if the court limited that testimony before admitting it. Whatever decisions were made, we do not know the reasoning behind them. We know only that some testimony from different witnesses, in different trials, was admitted under different circumstances.

We know enough of the government's remaining cases to know, at least, whether they are on point. They are not. Two did not even address OFAC or sanctions. *See United States v. Offill*, 666 F.3d 168, 171 (4th Cir. 2011) (alleging that the defendant "participated in a 'pump and dump' securities scheme"); *Adams v. New Eng. Scaffolding, Inc.*, C.A. No. 13-12629-FDS, 2015 WL 9412518, at *5 (D. Mass. Dec. 22, 2015) (discussing the tax code, in the context of a personal

---

[2] Undersigned counsel made inquiries of defense counsel in the cited cases. Counsel in *Atilla* informed us that the issue was not litigated for strategic reasons. We were unable to obtain information from counsel in the other two cases.

5

injury suit considering health and safety regulations). In *none* of the cases was the witness allowed to offer a conclusion as to a defendant's guilt. *See Offill*, 666 F.3d at 175-76 (witness "explain[ed] the intricate regulatory landscape and how securities practitioners function within it" and "gave testimony on the general operation of securities law"); *Bancor Grp. Inc. v. Rodriguez*, No. 22-20201-CV-GAYLES/TORRES, 2023 WL 6310233, at *10 (S.D. Fla. June 13, 2023) (witness in civil suit "explain[ed] the substance of an OFAC license in his own words or opin[ed] on the practical effect of an OFAC license," which "inform[ed] the factfinder regarding whether Defendants may have breached their fiduciary duties to the Bank"); *Adams*, 2015 WL 9412518, at *5 (experts in tax cases "[r]outinely" testify to "basics," and experts may testify as to regulations in personal injury civil suits because "a violation is evidence of negligence, although not negligence *per se*").

Furthermore, testimony was permitted in such cases when "the relevant law is not in dispute." *Adams*, 2015 WL 9412518, at *6. By contrast, "[a]n expert cannot simply opine as to his or her view of a disputed point of law." *Id.* Here, Ms. Williams will purportedly testify to "the fact that the exportation of services includes correspondent banking services by U.S. financial institutions." ECF 97 at 16. That "fact" is a legal issue that is not only disputed but has been challenged by Mr. Jin in this very case. *See* ECF 52.

Of note, the government briefly cites *In re Terrorist Attacks on Sept. 11, 2001*, but does not rely on it to argue that legal conclusions would be helpful to the jury. No. 03-MD-01570 (GBD)(SN), 2023 WL 3116763, at *8–12 (S.D.N.Y. Apr. 27, 2023). Rightly so: the multifarious challenges that testimony (mostly) withstood were not based on helpfulness. *See id.* at *8–12 (considering challenges that witness was unqualified, failed to reliably apply methodology, lacked factual foundation for his opinions, discussed irrelevant issues, opined on states of mind, and relied

on hearsay).³ Yet, the case is very relevant to this argument. The witness's testimony, which included OFAC sanctions, was also challenged for impermissibly drawing legal conclusions. *Id.* at *8. The court specifically precluded that witness from doing so. *Id.* at *10; *see also id.* at *3 ("[C]ertain areas remain out of bounds. Experts cannot testify to legal conclusions." (cleaned up)).

II. **The Government Has Not Shown That Mr. Anglin Will Offer Lay Opinion Testimony. It Has, in Fact, Expressly Sought to Introduce Expert Opinion Testimony Through Mr. Anglin. The Court Should Exclude Mr. Anglin's Testimony or, at Least, Hold a Hearing.**

    A. **The government has not demonstrated that Mr. Anglin has sufficient personal knowledge to testify as a fact witness, or that his testimony will be within the narrow scope of testimony that may be permissible as lay opinion.**

The government argues that some analysis by accountants is lay testimony, and it intends to introduce analysis by an accountant, so it intends to introduce lay testimony. But the word *some* shows the flaw in that syllogism. Even if some forms of financial analysis are lay testimony, not all are, and "[i]t is the proponent of lay opinion testimony who must satisfy the rule's three foundation requirements." *United States v. Garcia*, 413 F.3d 201, 211 (2d Cir. 2005) (citing *United States v. Grinage*, 390 F.3d 746, 749 (2d Cir. 2004)).  In remaining vague about the testimony that it intends to offer, the government has consistently failed—or refused—to do so.

The general rule is stated in *East Point Systems, Inc. v. Maxim*, which the government even quotes in its opposition: "in cases where accountants were allowed to testify as fact witnesses, the accountants were personally familiar with the relevant business's records, or the accounting of the transactions at issue." No. 3:13-cv-00215 (VAB), 2015 WL 8023569, at *2 (D. Conn. Dec. 4, 2015). Personal knowledge requires more than viewing documentation as an expert. *See* ECF 80 at 15–16 (citing cases in which accountants without personal knowledge were not permitted to

---

³    *In re Terrorist Attacks* may be distinguishable in significant respects if these challenges are raised as to Ms. Williams's anticipated testimony. Without knowing the contents of that testimony, any discussion of such challenges would be premature and speculative.

testify). It typically comes through working for the company in question. *See E. Point Sys.*, 2015 WL 8023569, at *2 (citing cases in which company staff were permitted to testify as lay witnesses and others were not); *see also id.* at *3 ("It appears . . . that [the witness] was not employed by the Plaintiffs and was not personally involved with the compilation or maintenance of the Plaintiffs' financial records during the relevant time periods, and therefore could not testify as a fact witness"); *United States v. Turner*, No. CR05-355C, 2007 WL 1367597, at *2 (W.D. Wash. May 8, 2007) (allowing accountants to testify about the defendant's statements to them when they were employed to audit the company's accounts[4] and the effect of those statements on the accountants' own decisions)

Despite its pretenses otherwise,[5] the government cites only one case that is even arguably to the contrary: *United States v. Weaver*. 281 F.3d 228 (D.C. Cir. 2002). In *Weaver*, the court did permit an auditor to offer fact testimony on the basis of knowledge gained as "an active participant in the investigation." *Id.* at 231. This testimony, however, was limited to calculating cash receipts

---

[4] The opinion in *Turner* is not as clear as it could be about the facts. The motion filings leave no doubt that the accountant witnesses in question were employed as outside auditors by the company itself. *See* Defendant's Motion to Compel Federal Rule of Criminal Procedure 16 Discovery Regarding Expert Witnesses at 4, *United States v. Turner*, No. 2:05-cr-00355-JCC (W.D. Wash. Feb. 15, 2007), ECF No. 55. Their proposed testimony would consist of: "the questions they asked Turner, the answers he gave, and the answers he did not give, in response to their questions"; and "why their questions, and Turner's answers and omissions, were important to the audit work they were performing." United States' Response in Opposition to Defendant's Motion to Compel Discovery Regarding Expert Witnesses, *United States v. Turner*, No. 2:05-cr-00355-JCC (W.D. Wash. Feb. 23, 2007), ECF No. 60.

[5] The government's citation of *United States v. Dukes* is downright misleading. In *Dukes*, "the Government advised Dukes that it planned to call . . . an SEC accountant, as a fact witness to present summary charts of bank records." 242 F. Appx 37, 49 (4th Cir. 2007). The defendant then raised other challenges to the admission of the summary. *See id.* at 49–50. The Fourth Circuit never ruled on whether that accountant's testimony was permissible. And *United States v. Patel* is irrelevant, dealing with testimony about the defendants' past statements. No. 3:21-CR-220 (VAB), 2023 WL 2643815, at *41 (D. Conn. Mar. 27, 2023). No analysis was permitted. *Id.*

and comparing that to the close-out-logs, i.e., "routine computations and culling through of documents." *Id*. (quoting *United States v. Lemire*, 720 F.2d 1327, 1350 (D.C. Cir. 1983)). Even that was affirmed only on review for plain error. *Id.* Here, by contrast, the government has provided no information about Mr. Anglin's role in the investigation.

Neither has it provided any details of the "analysis" in question, which may well extend beyond "routine computations and culling through of documents." Courts permit lay witnesses to offer "simple arithmetic" and "straightforward calculations," but nothing more complicated. *Joshua David Mellberg LLC v. Will*, 386 F. Supp. 3d 1098, 1107 (D. Ariz. 2019); *see James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1214 (10th Cir. 2011) (precluding lay testimony that "requires more than applying basic mathematics"); *Sweet Additions Ingredient Processors, LLC v. Meelunie Am., Inc.*, No. 21-81141-CIV-SINGHAL/MATTHEWMAN, 2023 WL 3600628, *2 (S.D. Fla. Mar. 20, 2023) (forensic accountant is an expert when he is not "merely going to provide lay testimony based upon simple math calculations").

Certainly, courts do not let witnesses use such calculations to smuggle in their expertise. *See James River*, 658 F.3d at 1214-15 (excluding calculations that required technical judgment and application of professional experience); *White*, 492 F.3d at 403-04 (finding error in admission of lay testimony that required application of knowledge beyond that of an average person); *Hoot Winc, LLC v. RSM McGladrey Fin. Process Outsourcing, LLC*, No. 08cv1559 BTM (WMc), 2010 WL 3894966, at *2 (S.D. Cal. Sept. 29, 2010) (excluding testimony of forensic accountant offered as fact witness but who would "inescapably *function* as an expert"); *cf. Garcia*, 413 F.3d at 216-17 (excluding opinion that was based, in whole or in part, on specialized training and experience). Yet, the government specifically intends to have Mr. Anglin apply his expertise to identify "certain

transactions of interest." ECF 97 at 18. Even his purported "summar[y]" is "to include the use of front companies . . ." *Id.* at 7. That is not "routine culling," it is expert analysis.

Finally, even assuming that some of Mr. Anglin's anticipated testimony is permissible, it doesn't follow that all of his testimony will be. The Court should exclude any testimony that goes beyond what is permitted of a lay witness. *See White*, 492 F.3d at 403-04 (holding some testimony by auditors to be fact testimony and some to be improper expert testimony); *United States v. McCandless*, No. 4:22-cr-00032-DCN-1, 2023 WL 7701456, at *4 (D. Idaho Nov. 15, 2023) ("By electing not to qualify [the forensic accountant] as an expert, the government has chosen to walk a narrow path here . . . . [A]ny opinion [she] offers that was developed through exercises and experiences beyond the capacity of a reasonable lay person will be excluded."); *Carolina Canners, Inc. v. PBV Conway-Myrtle Beach, LLC*, No. 4:10–cv–00598–JMC, 2012 WL 2366399, at *1 (D.S.C. June 21, 2012) ("To the extent that [an accountant and another witness] will provide opinion testimony that falls outside of that which is appropriate for a lay witness, Defendant's First Motion in Limine is granted.").

**B. The government has specifically requested to introduce testimony based on Mr. Anglin's "training and experience." That is indisputably expert testimony and should be excluded.**

At the very least, however, the Court should preclude any testimony about Mr. Anglin's "training and experience as a forensic investigator," including "indicators he reviews to identify the use of 'front companies' to conceal the illicit nature of the financial transactions," or about "the financial institution industry." ECF 80 at 13 (quoting government's identification of witnesses); ECF 97 at 6. The government does not equivocate that it intends to do so. *See* ECF 97 at 6–7. That is, the government invokes Mr. Anglin's industry knowledge, general practices, training, and experience: the quintessential subject matter of expert testimony. *See* Fed. R. Evid. 701(c) (lay opinion testimony must be "not based on scientific, technical, or other specialized knowledge

transactions of interest." ECF 97 at 18. Even his purported "summar[y]" is "to include the use of front companies . . ." *Id.* at 7. That is not "routine culling," it is expert analysis.

Finally, even assuming that some of Mr. Anglin's anticipated testimony is permissible, it doesn't follow that all of his testimony will be. The Court should exclude any testimony that goes beyond what is permitted of a lay witness. *See White*, 492 F.3d at 403-04 (holding some testimony by auditors to be fact testimony and some to be improper expert testimony); *United States v. McCandless*, No. 4:22-cr-00032-DCN-1, 2023 WL 7701456, at *4 (D. Idaho Nov. 15, 2023) ("By electing not to qualify [the forensic accountant] as an expert, the government has chosen to walk a narrow path here . . . . [A]ny opinion [she] offers that was developed through exercises and experiences beyond the capacity of a reasonable lay person will be excluded."); *Carolina Canners, Inc. v. PBV Conway-Myrtle Beach, LLC*, No. 4:10–cv–00598–JMC, 2012 WL 2366399, at *1 (D.S.C. June 21, 2012) ("To the extent that [an accountant and another witness] will provide opinion testimony that falls outside of that which is appropriate for a lay witness, Defendant's First Motion in Limine is granted.").

**B. The government has specifically requested to introduce testimony based on Mr. Anglin's "training and experience." That is indisputably expert testimony and should be excluded.**

At the very least, however, the Court should preclude any testimony about Mr. Anglin's "training and experience as a forensic investigator," including "indicators he reviews to identify the use of 'front companies' to conceal the illicit nature of the financial transactions," or about "the financial institution industry." ECF 80 at 13 (quoting government's identification of witnesses); ECF 97 at 6. The government does not equivocate that it intends to do so. *See* ECF 97 at 6–7. That is, the government invokes Mr. Anglin's industry knowledge, general practices, training, and experience: the quintessential subject matter of expert testimony. *See* Fed. R. Evid. 701(c) (lay opinion testimony must be "not based on scientific, technical, or other specialized knowledge

within the scope of Rule 702"); *id.* Rule 702 (an expert witness "is qualified . . . by knowledge, skill, experience, training, or education").

"Crucially, 'lay opinion is proper when it is based upon personal knowledge of events that occurred in the case being tried,' but not when it is based on knowledge from other law enforcement experience generally." *United States v. Dupree*, Crim. No. 22-275 (CKK), 2024 WL 2746800, at *6 (D.D.C. May 29, 2024) (alteration omitted) (quoting *United States v. Williams*, 827 F.3d 1134, 1156 (D.C. Cir. 2016); citing other D.C. Circuit authority). The D.C. Circuit distinguishes between case-specific knowledge and professional training or experience "because knowledge derived from previous professional experience falls squarely within the scope of Rule 702 and thus by definition outside of Rule 701." *Williams*, 827 F.3d at 1156 (quoting *United States v. Smith*, 640 F.3d 358, 365 (D.C. Cir. 2011)).

The government argues that this restriction applies only to drug cases, because "the average juror would *not* have awareness of drug topics, although they certainly have awareness of basic analytics performed by accountants." ECF 97 at 19 n.12. The government provides no legal authority for this restriction, which contradicts the clear language of both the D.C. Circuit and the Federal Rules of Evidence. Neither does its reasoning make sense. An average juror knows as little about the details of accounting as about drug topics. Jurors may know broadly what a "front company" is,[6] but they may also know broadly how drug operations work, for example, that drug traffickers use code. Even so, only an expert witness may opine on the meaning of such code. *See United States v. Hampton*, 718 F.3d 978, 984 (D.C. Cir. 2013) (citing *United States v. Glover,* 681 F.3d 411, 422 (D.C. Cir. 2012); *Smith,* 640 F.3d at 365). Conversely, a juror is probably as familiar

---

[6]     Mr. Jin has not argued that use of the widely-known term "front company" renders Mr. Anglin an expert witness. He has argued, and continues to argue, that what renders Mr. Anglin an expert witness is his specialist testimony on how to identify a supposed front company.

11

with clinical prescription of pain medication as with "basic analytics performed by accountants." Even so, this Court has precluded the use of prior experience in that context. *United States v. Robinson*, Crim. No. No. 16-98 (CKK), 2017 WL 2636517, at *2 (D.D.C. June 15, 2017). The training and experience of a forensic accountant, as well as how to identify a front company, is not within the comprehension of a lay juror.

All testimony about Mr. Anglin's training and experience, the financial institution industry, or the identification of front companies is expert testimony. *Weaver* provides no basis for the government reasonably to infer otherwise. This testimony should be excluded.

### C. The failure to disclose Mr. Anglin's testimony warrants exclusion or, at least, a hearing on the anticipated testimony.

In short, the D.C Circuit once permitted lay opinion testimony by an accountant. Rather than specifying that it intends to offer testimony that is at all similar, the government contends that any testimony by an accountant must be admissible as a lay opinion. This position goes far beyond any "reasonabl[e] reli[ance]" on *Weaver*. ECF 97 at 21. Given the government's persistent refusal to specify Mr. Anglin's testimony, that testimony should be excluded. If the Court does not exclude it, rather than permitting the government to offer further evasions in another disclosure, the Court should hold a hearing. The Court could thus ascertain the extent of Mr. Anglin's personal knowledge, the nature of his "analysis," and the scope of his anticipated testimony. By doing so, the Court could limit Mr. Anglin's testimony to that which is truly lay opinion supported by his particularized knowledge.

## CONCLUSION

For all of the foregoing reasons, the Court should preclude any opinions or testimony of Emily Williams or Dawson Anglin. If it declines to do so, the Court should hold a hearing on the bases for their opinions and the scope of their testimony.

Respectfully submitted,

By: /s/ Eugene Gorokhov
Eugene Gorokhov, Esq.
D.C. Bar No. 79785
Burnham & Gorokhov, PLLC
1634 I Street NW, Suite 575
Washington, DC 20006
(202) 386-6920 (phone)
(202) 765-2173 (fax)
eugene@burnhamgorokhov.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I served a copy of the foregoing motion via ECF which automatically sends a copy to all counsel of record.

Respectfully submitted,

By:/s/ Eugene Gorokhov
Eugene Gorokhov, Esq.