UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | } |
| v. | } Criminal No. 23-CR-91-CKK |
| GUANGHUA JIN, | } |
| Defendant. | } |

**DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION
TO DEFENDANT'S MOTION IN LIMINE
TO EXCLUDE EVIDENCE OF INTERNET SEARCHES**

Defendant Guanghua Jin, through counsel, respectfully submits this Reply Brief to the government's Opposition to Defendant's Motion *in Limine* to Exclude Evidence of Defendant's Internet Searches. ECF 113.

## INTRODUCTION

In this case charging Mr. Jin with alleged violations of U.S. sanctions laws through his use of wire transfers to purchase tobacco from Argentina and selling it to North Korea, the government seeks to introduce evidence that Mr. Jin performed internet searches and accessed websites that relate to, *inter alia*, general news about North Korea, articles that describe the brutality of its dictator, and general articles about sanctions on North Korea—though no article, we note, describes sanctions relating to either tobacco or the use of wire transfers.

Much of the evidence is simply irrelevant. The probative value of the relevant evidence, which relates to Mr. Jin's knowledge of the general existence of sanctions on North Korea, an issue not in dispute, is substantially outweighed by the danger of unfair prejudice and waste of

1

time. Moreover, the government has not provided relevant notice that it would seek to admit this evidence under Rule 404(b), and it should not be permitted to rely on that Rule now. All of the evidence should be excluded.

## ARGUMENT

I. **INTERNET SEARCHES FOR NEWS ABOUT NORTH KOREA IS NEITHER "INTRINSIC" NOR RELEVANT TO THE ALLEGED VIOLATIONS OF SANCTIONS LAWS OR BANK FRAUD**

The government argues that Mr. Jin's internet searches is admissible as "intrinsic" evidence of the charged offenses. ECF 113 at 3-4. The argument is wrong for at least two reasons: (1) it conflates the concept of relevance with "intrinsic" evidence, and (2) it treats all of the proposed evidence of internet searches as an undifferentiated mass, without examining the specific searches or websites visited.

### A. The evidence is not "intrinsic" to the charged offenses.

First, whether evidence is relevant has no bearing on whether the evidence is "intrinsic" or "extrinsic." As the D.C. Circuit has explained in *United States v. Bowie*, "intrinsic" evidence refers to evidence of the same crime as the charged offenses, while evidence of uncharged crimes is called "extrinsic." 232 F.3d 923, 928 (D.C. Cir. 2000). "[T]he only consequences of labeling evidence 'intrinsic' are to relieve the prosecution of Rule 404(b)'s notice requirement and the court of its obligation to give an appropriate limiting instruction upon defense counsel's request." *Id.* As a result, the D.C. Circuit treats the "intrinsic" evidence exception to Rule 404(b) narrowly. Evidence is not "intrinsic" merely because it "completes the story" or "explain[s] the circumstances." *Id.* at 929 ("there is no general 'complete the story' or 'explain the circumstances' exception to Rule 404(b) in this Circuit.)

2

In *Bowie*, for example, the Court of Appeals found that evidence that the defendant had possessed counterfeit bills a month earlier with the <u>same serial numbers</u> was still not "intrinsic" to the charged offense of possessing counterfeit bills, because the counterfeit bills he possessed a month ago could not have been the same bills he was charged with possessing. *Bowie*, 232 F.3d at 929. Similarly, in *United States v. Khanu*, this Court found that evidence of alleged cash payments to contractors and alleged failures to pay D.C. sales and employment tax, are not intrinsic to the charged offenses of conspiracy to defraud the United States or attempted tax evasion, even though such evidence was relevant because it followed the same pattern as the alleged fraud conspiracy or attempted tax evasion. *See Khanu*, 664 F.Supp. 2d at 84-85 (Kollar-Kotelly, J.).

Under the standards applied by *Bowie* and *Khanu*, the evidence of the internet searches in this case could not in any sense of the word be deemed "intrinsic" to the charged offenses of bank fraud conspiracy, IEEPA violations, or money laundering. Mr. Jin is not charged with any crime arising out of his internet searches. Thus, the government's argument that evidence of internet searches is "intrinsic" because it is relevant to establishing that Mr. Jin conducted business with North Korea and had knowledge of U.S. sanctions misses the mark. ECF 113 at 4.

The government's argument that evidence of the internet searches is intrinsic because it "facilitated the commission of the charged offenses" by allowing Mr. Jin to maintain business with North Korea and "inform[ed] [the defendants] about how best to evade sanctions," is also belied by its own exhibit. ECF 113 at 5. The first five circled entries of internet searches in the government's exhibit, for example, relate to news about Kim Jong Un's daily activities such as a visit to a hot springs construction site, or meetings between Kim Jong Un and Xi Jinping. ECF 113, Exhibit 1 at 1 to 3.

3

These are <u>not</u> instances where Mr. Jin researched how to evade sanctions or what information banks use to clear wire transfers. There is no rational sense in which this evidence—assuming *arguendo* that it was Mr. Jin who performed these searches and that he actually read the articles—could have facilitated the alleged commission of bank fraud or sanctions evasions.

**B. Most of the proposed evidence of internet searches is not even relevant. Some are highly inflammatory.**

As the proponent of the disputed evidence, the government bears the burden of establishing that its evidence is relevant and admissible. Yet it makes no effort to separate the internet searches and news articles at issue into distinct categories or argue for their relevance separately.

Mr. Jin acknowledged in his motion that some of the internet searches—specifically searches about U.S. sanctions on North Korea—could be relevant in establishing that Mr. Jin had knowledge of the existence of sanctions. *See*, e.g., ECF 113, Exhibit 1 at 11 (article about the U.S. considering suspending sanctions against North Korea). But much of the government's evidence does not relate to sanctions, and instead relate to general news about North Korea. Moreover, the government has completely ignored or failed to respond to Mr. Jin's argument that some of these internet searches involve articles that are highly inflammatory and prejudicial. Instead, it appears to have doubled down on including these inflammatory articles. For example, in its latest exhibit, one of the proposed entries is titled: "Kim Jong Un's latest cruel execution: General carved into eight pieces and fed to piranhas (Video)." ECF 113, Exhibit 1 at 17. There are multiple other entries relating to Kim Jong Un executing his own countrymen. ECF 113, Exhibit 1 at 21, 22.

There is simply no sense in which evidence that Mr. Jin read articles about the brutality of a dictator could be relevant to establishing anything at issue in this case. Such evidence appears instead calculated to simply to inflame the jury by amplifying their negative biases toward North Korea.

4

Similarly, evidence that Mr. Jin performed searches or read articles relating to general news about North Korea, such as Kim Jong Un's visit to the hot springs site, mentioned above, or performed searches for the name Kim Jong Un or other North Korean officials, *see e.g.* ECF 113, Exhibit 1 at 51, is simply not relevant to any of the charges in this case. Mr. Jin is not alleged to have conspired with Kim Jong Un or another North Korean official.

Indeed, it is notable that elsewhere, in opposing Mr. Jin's attempts to admit the UN resolutions on North Korea, and statistics of China's exports of tobacco to North Korea, the government has argued that the defendant's evidence is purportedly not relevant because "the manner in which the Defendant violated *U.S.* sanctions was by causing U.S. financial institutions to process transactions *related to* tobacco, *not* through shipping tobacco from the U.S., China, Australia, Argentina, or elsewhere." ECF 114 at 8 (italics in original). Yet here, the government seeks to admit evidence of the internet searches on the theory that Mr. Jin's "internet searches about events in North Korea, including for example about its leadership, relations with other countries, its economic interests such as its tobacco industry, as well as applicable sanctions…are highly relevant to establishing that the defendant was conducting business with entities in North Korea and that he had knowledge of U.S. sanctions." ECF 113 at 4. Relevance is not an evidentiary standard that works only to the prosecution's benefit. The government would have this Court hold that the jury should hear that Mr. Jin performed internet searches and read internet articles relating to news about North Korea and North Korea's tobacco industry, yet be precluded from hearing that neither U.N. sanctions nor the relevant laws prohibited the export of tobacco to North Korea. This is one of many double standards the government seeks to have the Court apply in its favor as it pursues this meritless and misguided case against Mr. Jin.

5

Finally, while the government is correct that "the prosecution is entitled to prove its case by evidence of its own choice," ECF 113 at 5 (quoting *United States v. Douglas*, 482 F.3d 591 (D.C. Cir. 2007)), the Supreme Court in *Old Chief* has expressly held that in conducting the balancing test under Rule 403, the district court should consider the availability of alternative proof that is less prejudicial. *Old Chief v. United States*, 519 U.S. 172, 186 (1997). In this case, as noted in the defendant's motion, there is ample alternative proof, and the internet search evidence is not justified under Rule 403.

## II.  THE INTERNET SEARCHES SHOULD NOT BE ADMITTED UNDER RULE 404(B) BECAUSE THE GOVERNMENT HAS CONTINUALLY IGNORED DEADLINES IN THE COURT'S SCHEDULING ORDER.

The government argues, in the alternative, that evidence of the internet searches is admissible as Rule 404(b) evidence because it proves Mr. Jin's knowledge of U.S. sanctions, a fact not in dispute[1], and "is corroborative of other evidence establishing his business activities with North Korea." ECF 113 at 7. The "corroborative" force of such evidence appears minimal at best, but assuming, *arguendo*, that a person who searches for news about North Korea is more likely to conduct business with North Korea, and so such evidence could be admitted under Rule 404(b) for a permissible purpose, the deadline for noticing Rule 404(b) evidence has long passed.

The government's opposition leaves the issue of the lack of notice to a footnote, explaining that it "viewed the evidence as intrinsic to the charged offenses and thus not subject to the notice

---

[1]  As noted in the defendant's motion, that Mr. Jin was generally aware of the existence of both international and U.S. sanctions on North Korea is not in dispute. What is in dispute, however, is that Mr. Jin was aware of the government's allegation that U.N. sanctions, and U.S. sanctions, prohibited him from using international wire transfers to buy tobacco from Argentina and selling it to North Korea. The government has argued here that Mr. Jin "mischaracterized" the requisite *mens rea*. But the D.C. Circuit has specifically addressed the requisite *mens rea* for willfulness in *United States v. Burden*, 934 F.3d 675 (D.C. Cir. 2019), and in any event, this motion is not the place to resolve issues relating to the applicable *mens rea* standard for the IEEPA related counts.

6

requirement under Rule 404(b)." ECF 113 at 9, n.4. It also argues that Mr. Jin is not prejudiced by the lack of notice because "[t]rial is still two months away and Defendant has been in possession of the search history since October of 2024." *Id.*

We have explained above why this evidence is not intrinsic to any charged offense, and the government's misapprehension of what constitutes "intrinsic evidence" does not excuse its failure to file a Rule 404(b) notice. More importantly, the government has persistently exhibited a disregard for this Court's deadlines under its scheduling order, including, for example, deadlines relating to expert disclosures. It has also persistently employed this same excuse relating to the supposed absence of prejudice to the defense. *See* ECF 97 at 14, n.7 (arguing that "given that there is still nearly three months before the start of trial, the defendant fails to demonstrate any prejudice resulting from his assertions that the notice is deficient.").

But this Court's scheduling order is not merely a suggestion for the parties, to be followed or disregarded as convenient based on the government's unilateral views of whether its repeated violations prejudice Mr. Jin. And it is also not true that Mr. Jin suffers no prejudice from the government's lack of notice. Mr. Jin has persistently asserted his speedy trial rights in this case, and the defense's timeline for trial preparation is built around its expectations of what evidence the government will seek to introduce at trial. The government's failure to follow the Court's deadlines affects that trial preparation, and any delay to the trial from the government's lack of notice would only work to further prejudice Mr. Jin's right to a speedy trial.

To the extent some internet searches implicate Rule 404(b) because they implicate Mr. Jin's character, such as, for example, evidence of searches relating to inflammatory articles, or

7

searches that suggest an interest in uncharged crimes,[2] such evidence should not be admitted pursuant to Rule 404(b).

## CONCLUSION

This Court should exclude the internet searches.

Respectfully submitted,

By: /s/ Eugene Gorokhov
Eugene Gorokhov, Esq.
D.C. Bar No. 979785
Burnham & Gorokhov, PLLC
1634 I Street NW, Suite 575
Washington, D.C. 20006
(202) 386-6920 (phone)
(202) 765-2173 (fax)

---

[2] In the government's original document of internet searches produced to the defense, there were searches relating to bribery and procurement of loans using false information. *See* ECF 109 at 7 (describing some of the government's internet search evidence as involving Rule 404(b) evidence.) The government's new exhibit in its opposition does not contain those searches, so it is unclear whether the government still intends to introduce that evidence.

8

## CERTIFICATE OF SERVICE

A copy of the foregoing motion was filed via ECF, which automatically sends a copy to all counsel of record.

Respectfully submitted,

By: /s/ Eugene Gorokhov
Eugene Gorokhov, Esq.
D.C. Bar No. 979785
Burnham & Gorokhov, PLLC
1634 I Street NW, Suite 575
Washington, D.C. 20006
(202) 386-6920 (phone)
(202) 765-2173 (fax)