UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 23-cr-91-02 (CKK) |
| | : | |
| v. | : | |
| | : | |
| JIN GUANGHUA, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S RESPONSE TO COURT'S JULY 31, 2025**
**ORDER REQUESTING ADDITIONAL BRIEFING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully responds to the Court's July 31, 2025 Order requesting additional briefing on four issues. In response to the Court's inquiries, the government submits that: (i) Congress has power to set venue rules both for crimes not committed within a single state and also for crimes not committed within the boundaries of any state; (ii) the Court should apply *United States v. Rodriguez-Moreno*, 526 U.S. 275 (1999) to determine where the offenses at issue were "committed"; (iii) pursuant to *Rodriguez-Moreno*, the essential conduct elements in this case began abroad and continued within the United States; and (iv) venue lies in the District of Columbia.

**FACTUAL BACKGROUND**

Defendant Jin Guanghua and his coconspirators are charged with Conspiracy to Commit Bank Fraud, Conspiracy to Violate the International Emergency Economic Powers Act (IEEPA) and substantive IEEPA charges, Conspiracy to Launder Monetary Instruments, and substantive money laundering charges. As alleged in the Indictment, the Defendant and his coconspirators, although located abroad, agreed to commit crimes in the United States. Indictment ¶¶ 6-7.

1

Specifically, they entered into an agreement to export tobacco from Argentina to North Korea, to pay for the same in U.S. dollars, and to use front companies and other means of obfuscation to cause U.S. banks to process U.S. dollar transactions related to the tobacco transactions. Indictment ¶¶ 51, 54, 57-59, 61.

Although the defendant's conduct—and that of his co-conspirators—began abroad, it reached into the United States when the conspirators transmitted or caused the transmission of false information to U.S. financial institutions. As a result of the false information the defendant and/or his co-conspirators provided, U.S. financial institutions were defrauded, which caused them to process financial transactions they otherwise would not have processed.[1]

## ARGUMENT

**I.     CONGRESS HAS POWER TO SET VENUE RULES**

Congress' power under the Jury Trial Clause, U.S. Const. Art. III, § 2, cl. 3, includes power to set venue rules both for crimes that are not committed within a single state or within the boundaries of any state. Crimes committed in more than one state are covered by 18 U.S.C. § 3237, as are crimes committed in multiple districts within the same state. Crimes begun abroad and continued in the United States, as well as those committed outside of the United States are covered by 18 U.S.C. § 3238. *See* 18 U.S.C. § 3238 (setting venue provision for trials "of all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district" and stating that, where there is no last-known residence of the defendant, the "indictment or information may be filed in the District of Columbia."). Both statutes are constitutional. *See United States v. Campos*, 137 F.4th 840, 849 (D.C. Cir. 2025) ("[A]ppellant's constitutional

---

[1] As just one example, at trial the government anticipates that it will admit evidence that a U.S. branch of Company 1's bank repeatedly received and processed funds from North Korean front companies in transactions related to Company 1's sales of tobacco to North Korea.

challenge to venue based on an asserted lack of any connection between her conspiracy offense and the District of Columbia fails. Because that offense was committed outside of the United States, Congress could provide for venue in the District of Columbia, and Section 3238 does.") (citing U.S. Const. Art. III § 2, cl. 3).

## II. THE COURT SHOULD CONSIDER ESSENTIAL CONDUCT ELEMENTS

The Court should determine where a crime was "committed" for purposes of the Jury Trial Clause by identifying where the essential conduct elements occurred. Specifically, the Court should "identify the conduct constituting the offense" and "then discern the location of the commission of the criminal acts" by the Defendant and his co-conspirators. *Rodriguez-Moreno*, 526 U.S. at 279.

## III. THE ESSENTIAL CONDUCT ELEMENTS OF THE OFFENSES BEGAN ABROAD AND CONTINUED IN THE UNITED STATES, INCLUDING IN THE DISTRICT OF COLUMBIA

The essential conduct elements of the charged offenses began abroad and continued in the United States, including in the District of Columbia.

*Bank Fraud*: The essential conduct element of the bank fraud conspiracy (Count One) is that an agreement existed to commit bank fraud, and the Defendant entered into an agreement. Here, the Indictment alleges that the agreement was to commit fraud against financial institutions located in the United States (*i.e.*, domestic victims), and that the Defendant was outside the United States when he entered into the agreement. The evidence will show that the Defendant and his co-conspirators were primarily located in Australia, China, and the United Arab Emirates.

The essential conduct element of the underlying crime, bank fraud, is that the conspirators "executed or attempted to execute a scheme or artifice to defraud a financial institution" *or* that the conspirators "executed or attempted to execute a scheme or artifice to obtain moneys, funds . . .

3

or other property owned by, or under the custody or control of, a financial institution." The government is also required to prove that the banks at issue were U.S. financial institutions as defined in 18 U.S.C. § 20.[2] Although the Defendant and his co-conspirators began executing their scheme to (i) defraud; and/or (ii) obtain money or funds outside the United States, that fraud was "executed" when the conspirators transmitted their fraudulent information into the United States to the banks processing their transactions, who were subsequently defrauded by the conspirators' conduct.[3] The execution of the scheme, therefore, began abroad and continued into the United States.

*IEEPA*: The essential conduct element of conspiracy to violate IEEPA (Count Two) is that an agreement existed to violate IEEPA and that Defendant entered into the agreement. For the substantive IEEPA counts (Counts Three through Six), the essential conduct elements are: (i) acts prohibited by Executive Orders 13382 and 13722 and their implementing regulations, specifically, the export or attempted export from the United States, or the causing of U.S. persons to export, or attempt to export services, including financial services, to North Korea, and the provision of services from the United States and by U.S. persons to and for the benefit of sanctioned entities;

---

[2] That the financial institution meets the definition of 18 U.S.C. § 20 is a circumstance element, rather than an essential conduct element, and is therefore not relevant to the Court's venue analysis. *See United States v. Auernheimer*, 748 F.3d 525, 533 (3rd Cir. 2014) (explaining that a "circumstance element" is one that "existed at the time that the defendant performed" her crime and that "[o]nly essential conduct elements can provide the basis for venue").

[3] Specifically, the evidence will show that the conspirators operated front companies outside of the United States to pay for tobacco products that were destined for North Korea and that they did so to conceal from the banks, including U.S. financial institutions, that the transactions were for the benefit of end-users in North Korea. The Defendant and his co-conspirators also falsified records of the transactions to remove references to North Korean customers to further obscure the true destination of tobacco. This conduct began abroad and was transmitted into the United States. The transfer payments in U.S. dollars to pay for the tobacco transactions at issue originated outside of the United States, and then were transmitted to domestic financial institutions.

and (ii) the failure to obtain a license from the Department of the Treasury's Office of Foreign Assets Control to engage in such acts.

Taking conspiracy first, as with the conspiracy to commit bank fraud, the agreement to violate IEEPA was entered into outside of the United States and then continued in the United States. As to the substantive counts, the causing of U.S. persons to export financial services to North Korea and to provide financial services to sanctioned entities was also initiated abroad. For example, it was the *transmission of false information by* the Defendant and his co-conspirators that *caused* U.S. financial institutions to process U.S. dollar transactions, ultimately providing services within the United States that benefitted North Korea and certain sanctioned entities. The requests for banking services and the actions underlying those requests—*e.g.*, falsifying records—were initiated by the Defendant and his co-conspirators outside the United States. However, those acts were also committed domestically, when the Defendant and his co-conspirators caused the false information to be transmitted to the United States. Moreover, the co-conspirators continued their conduct in the United States when they failed to obtain a license from the Department of the Treasury, which is located in Washington, D.C. Thus, the relevant omission that constitutes another essential conduct element occurred in the District of Columbia. *United States v. Hassanshahi*, 185 F. Supp. 3d, 58 (D.D.C. 2016); *United States v. Oseguera Gonzalez*, 20-Cr.-40 (BAH), 2020 WL 6342948, at *3 (D.D.C. Oct. 29, 2020).

*Money Laundering*: Finally, the money laundering conspiracy (Count Seven) requires that the Defendant joined and participated in an agreement to launder money. For the same reasons discussed above, the Defendant entered into the agreement abroad and continued that conduct within the United States.

The essential conduct element of the substantive money laundering counts (Counts Eight through Twelve) is that the Defendant transported, transmitted, or transferred (or attempted to do the same) a monetary instrument or funds. *See United States v. Cabrales*, 524 U.S. 1, 7-9 (1998) (explaining that the "anterior criminal conduct" constituting the specified unlawful activity is not a proper basis for venue). Here, as with the conduct underlying the bank fraud count, the Defendant initiated the processing of the pertinent funds while abroad and then transmitted the false information into the United States (specifically to U.S. financial institutions) in order to launder the funds.

## IV. VENUE IS PROPER IN THE DISTRICT OF COLUMBIA

The Court's ruling on jurisdiction—*i.e.*, whether there has been a permissible domestic application of the statutes at issue based on a U.S. nexus—does not necessitate a finding that venue only lies in the location of that U.S. nexus. Venue also lies in the District of Columbia, because the offense began abroad, and Defendant has no last known residence in any state. 18 U.S.C. § 3238. *See also* Opp. Motion to Dismiss Lack of Venue (ECF No. 70).

All of the charges are properly venued in this district under Section 3238. Here, "the charged [crimes] began outside the United States" and the Defendant "was not arrested or first brought into the United States until after" indictment in the District of Columbia. *Campos*, 137 F.4th at 849 (D.C. Cir. 2025) (internal quotation marks omitted). "Section 3238 has been accorded broad meaning and application." *Id.* at 848. And the D.C. Circuit has recently rejected a constitutional challenge to venue based on § 3238 where a conspiracy was formed abroad and overt acts in support of the conspiracy occurred in the United States. *Id.* at 846-48; *see also United States v. Rivera-Niebla*, 37 F. Supp. 3d 374, 380 (D.D.C. 2014) (finding that Section 3238 applies

6

so long as the offense *began* outside the country, even where overt acts occurred in a different U.S. district).

In doing so, the D.C. Circuit repeatedly cited and relied on *United States v. Miller*, 808 F.3d 607 (2d Cir. 2015). There, the Second Circuit explained that § 3238 "encompasses crimes . . . that are in their essence committed abroad," even if there is some relevant domestic offense conduct inside the United States. *Id.* at 619 (internal quotation marks omitted). It further explained that venue under § 3238 can exist even where venue would also be proper elsewhere, such as pursuant to § 3237. The fact that the crimes charged in this case include domestic conduct, and thus do not represent extraterritorial applications of the criminal statutes, does not take them out of the ambit of § 3238, where the crimes began outside the United States, involved significant foreign conduct, and continued domestically. *Campos*, 137 F.4th at 849; *Miller*, 808 F.3d at 619. Nor does an application of § 3238 in such a case violate the Jury Trial Clause, *Campos*, 137 F.4th at 846-48.[4]

Finally, for the substantive IEEPA violations (Counts Three through Six), as discussed above, there are two "essential conduct elements," one of which is the failure to obtain a license from the Office of Foreign Assets Control ("OFAC"). Because OFAC is located in the District of Columbia, venue plainly lies in this District under both 18 U.S.C. § 3237 and 18 U.SC. § 3238. *See, e.g.*, *Hassanshahi*, 185 F. Supp. at 58.

---

[4] For the same reasons, the application of the bank fraud statute in this case was not extraterritorial. The conspirators reached into the United States, from abroad, to commit their fraud. Congress's focus in enacting 18 U.S.C. § 1344 was the impact on the U.S. financial institution, the victim of the fraud. *Abitron Austria GmbH v. Hetronic Int'l, Inc.,* 600 U.S. 412, 418 (2023) ("We have repeatedly and explicitly held that courts must 'identif[y] 'the statute's "focus" ' *and* as[k] whether the *conduct relevant to that focus* occurred in United States territory." (emphasis added)). That conduct occurred domestically when the banks in the United States were defrauded due to the conspirators' conduct of transmitting false information into the United States and causing the same.

**CONCLUSION**

For the foregoing reasons, as well as those stated in the government's previously filed oppositions, the motions to dismiss should be denied.

                                        Respectfully submitted,

                                      JEANINE FERRIS PIRRO
                                      UNITED STATES ATTORNEY

                                      KAREN P. W. SEIFERT
                                      N.Y. Bar No. 4742342
                                      STEVEN B. WASSERMAN
                                      D.C. Bar No. 453251
                                      Assistant United States Attorneys
                                      National Security Section
                                      601 D Street, NW, 5th Floor
                                      Washington, DC 20530
                                      (o) 202-252-7527 (Seifert)
                                      (o) 202-252-7719 (Wasserman)
                                      Karen.seifert@usdoj.gov
                                      Steve.wasserman@usdoj.gov

By:    <u>/s/ Christina A. Clark</u>
           CHRISTINA A. CLARK
           D.C. Bar No. 995326
           Trial Attorney
           U.S. Department of Justice
           National Security Division
           950 Pennsylvania Avenue, NW
           Washington, DC 20530