### IN THE UNITED STATES DISTRICT COURT FOR THE
### DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,      )
                  )
          v.         )           No. 23CR91-CKK
                  )
GUANGHUA JIN.           )

### MOTION TO COMPEL PRODUCTION OF UNREDACTED JENCKS, _BRADY_ AND RULE 16 MATERIAL

Guanghua Jin, through counsel, respectfully moves this Court to compel the government's compliance with its obligations under the Jencks Act, 18 U.S.C. § 3500, Fed. R. Crim. P. 16, and _Brady v. Maryland_, 373 U.S. 83 (1963) and its progeny. Mr. Jin identifies, with specificity, the specific items that the government appears to have redacted in violation of the foregoing authorities. Mr. Jin moves for the disclosure of these materials in unredacted form, or in the alternative, for in camera review. Finally, to the extent the materials are not ordered produced in unredacted form, Mr. Jin moves the Court to make the unredacted versions of these materials a sealed part of the record, in the event of appellate review.

### I.    APPLICABLE LAW.

#### A.    The Jencks Act.

The Jencks Act requires the government "to produce any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(b).

#### 1.    "Statement" of the witness.

A "statement" under the Jencks Act includes any "written statement made by said witness and signed or otherwise adopted or approved by him." _Id._ § 3500(e)(1). "Cases decided under the

Jencks Act…have drawn a distinction between 'statements' and notes.'" *Norinsberg Corp. v. U.S. Dep't of Agriculture*, 47 F.3d 1224, 1229 (D.D.C. 1995). "A statement, unlike notes…seeks to transmit information from the declarant to the reader." *Id.* Thus, where the purpose of a writing is to transmit information, it would qualify as a "statement" under the Jencks Act. *Id* ("the entire purpose of Jervis's 'Memo to File' was to 'transmit information' to any Department official who would later read it. We therefore find that Jervis's memorandum could qualify as a 'statement' within the meaning of 3500(e)").

The witness does not have to be the author or source of a statement in order for that statement to qualify as a statement of the witness. Notes of a witness's statement prepared by another person, for example, may be subsequently adopted by the witness. *See Goldberg v. United States*, 425 U.S. 94, 98 (1976) ("We hold that a writing prepared by a Government lawyer relating to the subject matter of the testimony of a Government witness that has been 'signed or otherwise adopted or approved' by the Government witness is producible under the Jencks Act, and is not rendered nonproducible because a Government lawyer interviews the witness and writes the 'statement.'").

Similarly, a statement need not be signed by the witness in order to trigger disclosure under Jencks. *See, e.g., Campbell v. United States*, 373 U.S. 487, 492 n.6 (1963) ("It is settled, of course, that a written statement, to be producible under § 3500(e)(1), need not be signed by the witness. . . .") (collecting cases); *United States v. Gonzalez-Melendez*, 570 F.3d 1, 4 (1st Cir. 2009) ("Of course, there may be other scenarios in which an unsigned document is nevertheless adopted and is therefore disclosable under the Jencks Act.").

If a statement falls under the definition of the Jencks Act, the government can make no claim of "work product" to avoid producing that statement. *Goldberg*, 425 U.S. at 101–02 (1976)

("We see nothing in the Jencks Act or its legislative history that excepts from production otherwise producible statements on the ground that they constitute 'work product' of Government lawyers."); *See also Castleberry v. Crisp*, 414 F. Supp. 945, 953 (N.D. Okla. 1976) ("[T]he 'work product' discovery rule cannot, of course, be applied in a manner which derogates a defendant's constitutional rights as propounded in Brady."); *United States v. NYNEX Corp.*, 781 F. Supp. 19, 25 (D.D.C. 1991) ("Cases on this question, albeit without much discussion, suggest that internal materials possibly constituting work product may not automatically be exempt from Brady requirements.") (citing cases); *United States v. Goldman*, 439 F. Supp. 337, 350 (S.D.N.Y. 1977) ("Of course, if [work product] material be of a Brady nature, then it must be produced.").

### 2. "Relates to" the subject matter as to which the witness has testified.

A statement "relates to" a witness's testimony if it "relate[s] generally to the events and activities testified to." *United States v. Derrick*, 507 F.2d 868, 871 (4th Cir. 1974) (quoting *United States v. O'Brien*, 444 F.2d 1082, 1086 (7th Cir. 1971)); *see also United States v. Kelly*, 35 F.3d 929, 938 n.11 (4th Cir. 1994) (witness' letter describing feigned illness at work related to introductory question about her employment); *See also United States v. Brumel-Alvarez*, 991 F.2d 1452 (9th Cir. 1992) ("in determining whether the statements in question 'related to' the direct testimony of the witness, it must relate generally to the events and activities testified to.'"). "If the statement relates to the general context of the testimony of the witness, it is not the prerogative of the Government nor even the court to pass upon the relevancy or utility of the statement." *Id.* (citing *Jencks v. United States*, 353 U.S. 657 (1957)).

A statement also "relates to" a witness's testimony when it is *indirectly* related. For example, statements that impeach a witness's credibility would fall under this category. Thus, "a statement by a witness that she fears her memory as to the events at issue was poor certainly 'relates

to the subject matter as to which the witness has testified and should have been given to defendant.""
*Rosenberg v. United States*, 360 U.S. 367, 370 (1959).  Likewise, statements that show bias and interest of a witness also "relate" to the witness's testimony.  *See United States v. Borrelli*, 336 F.2d 376, 392-93 (2d Cir. 1964) ("We can see no reason why a statement that would support impeachment for bias and interest does not 'relate' to the witness' testimony as much as a statement permitting impeachment for faulty memory.") (citing *Rosenberg*).

Where a witness testifies to an opinion or a conclusion, prior statements of the witness that disclose the witness's "deductive process" and test "the very sufficiency of [the witness'] investigation" would also "relate to" the witness's testimony.  *See United States v. Cleveland*, 507 F.2d 731, 736 (7th Cir. 1974) ("The materials thus relate to the agent's direct testimony not only in their specific content, but also in what they disclose about the deductive process which led to the agent's conclusions…cross examination might well be structured to challenge not only the factual determinations made by the agent, but the very sufficiency of his investigation.").

Thus, in *Cleveland*, the Seventh Circuit held that it was prejudicial error to withhold "reports [which] disclose the manner in which the contents of those documents were employed by the agent to arrive at his conclusions regarding defendant's assets, liabilities and expenditures during each of the taxable years."  *Id.* at 735.  *See also United States v. Lewis*, 35 F.3d 148, 151 (4th Cir. 1994) (portions of OIG report reflecting failure of investigating agent to interview witnesses who could have corroborated defendant's statements should have been disclosed under Jencks Act).

Indeed, the "relates to" language of the Jencks Act would encompass not only statements bearing on the credibility of the testifying witness, but also statements relevant to the credibility of <u>non-testifying witnesses that supplied information to the testifying witness</u>.  Thus, the *Cleveland*

Court further found that "the memorandum of interview prepared by [the witness] also contains information relevant to the credibility of defendant's former wife, and would no doubt have been of assistance to defense counsel in challenging the validity of the information relied upon by the agent in reaching his conclusions as to defendant's net worth." *Cleveland*, 507 F.2d at 735.

A statement may "relate to" the subject matter of the witness's testimony even when the statement was made for an unrelated purpose, or in connection with a different proceeding. Thus, a letter sent by a witness to a billionaire soliciting the sale of certain firearms he bought from the defendant is "related to" the witness' testimony "that the firearms were not worth the price that he paid for them." *United States v. Zomber*, 299 F. App'x 130, 134-35 (3d Cir. 2008). *See also United States v. O'Connor*, 273 F.2d 358, 360 (2d Cir. 1959) (reports prepared by agents for a civil tax proceeding is discoverable under Jencks in criminal case against defendant); *Derrick*, 507 F.2d 868, 870-1 (statement by a witness concerning transactions under a different, uncharged conspiracy was nonetheless required to be disclosed under Jencks Act where the transactions arose out of a "continuous course of conduct involving [the defendants and the witness].")

And while the D.C. Circuit has held that the "relates to" language of the Jencks Act means related to "the subject matter as to which the witness has testified" and "not the subject matter of the proceeding generally," *Norinsberg Corp. v. U.S. Dept. of Agriculture*, 47 F.3d 1224, 1229 (D.C. Cir. 1995), it has not taken such a narrow view of the Jencks Act as to permit the removal or redaction of large portions of a witness's grand jury testimony simply by choosing to not ask the witness to testify about certain facts at trial. Indeed, such a restrictive reading of the Jencks Act would be contrary to Supreme Court precedent. *See Rosenberg*, 360 U.S. at 370 (statement about faulty memory is related to the witness's testimony at trial).

B. *Brady* and *Giglio*.

The government's *Brady* obligations are mandated by due process, and are independent of its obligation under the Jencks Act.   Thus, for example, while rough notes of an interview may not be producible under the Jencks Act, the government still has a duty to preserve those rough notes pursuant to *Brady*.  *See United States v. Harrison*, 524 F.2d 421, 429 (D.C. Cir. 1975) ("No matter what the Jencks Act was meant to require of prosecutors and investigators, *Brady* and Rule 16 remain as important foundations for a duty to preserve material which is subject to possible later disclosure."). Pursuant to *Brady*, the government must disclose all material that is favorable to the defendant, whether for purposes of guilt or punishment, including those that undermine the strength of the government's case.  "Under *Brady* the government may not suppress evidence favorable to the accused when it is material to either guilt or punishment, and under *Giglio* and *Bagley* such evidence includes impeachment material."  *United States v. Tarantino*, 846 F.2d 1384, 1416 (D.C. Cir. 1988).

The government's *Brady* obligation covers many types of evidence.  *See Cone v. Bell*, 556 U.S. 449, 470-75 (2009) (evidence mitigating punishment); *Kyles v. Whitley*, 514 U.S. 419, 444-45 (1995) (evidence undermining the prosecution's case); *See United States v. Quinn*, 537 F. Supp. 2d 99, 115 (D.D.C. 2008) (evidence that government failed to investigate suspicions about a key witness's credibility could be presented "as willful ignorance, and the jury might question why the lead case agent would not actively seek out the truth on this important point before continuing with a prosecution") (discussing and quoting *Kyles*, 514 U.S. at 419); *Wolfe v. Clarke*, 691 F.3d 410, 423 (4th Cir. 2012) (law enforcement communication with witness); *Mahler v. Kaylo*, 537 F.3d 494, 500-01 (5th Cir. 2008) (evidence supporting affirmative defense); *Trammell v. McKune*, 485 F.3d 546, 551-52 (10th Cir. 2007) (evidence that defense could have used to support his theory of the case); *id.* at 551 (evidence that casts doubt on police officers' investigation); *Silva v. Brown*,

416 F.3d 980, 987-88 (9th Cir. 2005) (evidence that witness was incompetent; evidence of deal with witness); *United States v. Gamez-Orduno*, 235 F.3d 453, 461 (9th Cir. 2000) (evidence supporting defendant's motion to suppress evidence); *Kelly*, 35 F.3d at 936-38 (material that could be used to impeach witness credibility).

Simply put, *Brady* information is anything in the government's possession that a defense attorney could use to cast doubt on the government's case or to build a defense. *See*, *e.g.*, *Wolfe*, 691 F.3d at 423. *See also United States v. Fisher*, 711 F.3d 460, 469 (4th Cir. 2013) (holding that law enforcement agent's false statements in a warrant affidavit that, if disclosed, would have led to suppression of seized evidence rendered guilty plea unknowing and involuntary); *Smith v. Black*, 904 F.2d 950, 965-66 (5th Cir. 1990) (nondisclosure of *Brady* information may have affected fact finder's findings at the suppression hearing).

While a *Brady* "violation" requires that the suppressed evidence be material–i.e., a reasonable probability of affecting the verdict–the disclosure obligation extends to "any potentially exculpatory or otherwise favorable evidence without regard to how the withholding of such evidence might be viewed—with the benefit of hindsight—as affecting the outcome of the trial." *United States v. Safavian*, 233 F.R.D. 12, 16 (D.D.C. 2005)); *accord United States v. Trump*, 753 F. Supp. 3d 17, 25 (D.D.C. 2024) (Chutkan, J.) (quoting *Savafavian*).

The *Brady* disclosure obligation exists regardless of any good or bad faith on the part of the government. *Brady*, 373 U.S. at 87. *Brady* is not limited to actual knowledge by the prosecution. Instead, the prosecution has a responsibility to learn of favorable evidence within its control, in order to disclose it to the defense. *Kyles,* 514 U.S. at  437. *Brady* requires the government to seek out favorable information known only by law enforcement. *Kyles,* 514 U.S. at 437-38; *Youngblood v. West Virginia,* 547 U.S. 867, 869-70 (2006) (per curiam).  Nor is *Brady*

limited to admissible evidence. *Brady,* 373 U.S. at 87. *See also United States v. Raymond*, No. CR 21-380 (CKK), 2023 WL 7611601, at *2 (D.D.C. Nov. 14, 2023) ("Local Rule 5.1 further requires the government to disclose various categories of information, including *Brady* material, 'regardless of whether the information would itself constitution admissible evidence'"). And the government bears the burden of ensuring it has complied with its *Brady* obligations without requests by the defense. *United States v. Agurs*, 427 U.S. 97, 109-10 (1975).

The Supreme Court has held that *Brady* unequivocally includes impeachment and witness bias information, applying equally to any information that would cast doubt on the prosecution's case. *See Giglio v. United States,* 405 U.S. 150, 154 (1972); *United States v. Bagley,* 473 U.S. 667, 676 (1985); *Kyles,* 514 U.S. at 442 n. 134 & 445-451. *See also Milke v. Ryan*, 711 F.3d 998, 1006 (9th Cir. 2013) (referring to the "broad sweep" of *Giglio* with respect means it encompasses the personnel file of an officer testifying against the defendant). In contrast to Rule 16, investigative reports and internal memoranda are not immune from production under *Brady* and *Giglio*. *See United States v. Sipe*, 388 F.3d 471, 480 (5th Cir. 2004) (prosecution memorandum showing that a government witness disliked the defendant was exculpatory and subject to disclosure under *Brady*); *United States v. Pelullo*, 105 F.3d 117, 120 (3rd Cir. 1997) (government violated *Brady* when it failed to produce agent notes that contradicted a government witness' trial testimony).

## C. **Rule 16.**

Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure imposes broad discovery obligations upon the government. Fed. R. Crim. P. 16(a)(1)(E) requires the government to produce documents and objects that are in its possession, custody or control if the document or object is: (1) material to the preparation of the defense, (2) intended for use in the government's case-in-chief, or (3) obtained from or belongs to the defendant. With a few enumerated exceptions, this

Rule requires the government to make available, upon request, any "books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items" within the government's custody or control, so long as the object is "material to preparing the defense."

The materiality standard under Rule 16(a)(1)(E) "is not a heavy burden." *United States v Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993). It is satisfied when the requested evidence "bears some abstract logical relationship to the issues in the case" or "will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *Id.* "When analyzing materiality, a court should focus first on the indictment which sets out the issues to which the defendant's theory of the case must respond." *Trump*, 753 F. Supp. 3d at 26-27 (quoting *United States v. George*, 786 F. Supp. 56, 58 (D.D.C. 1992)). To compel Rule 16 discovery, the Defendant "must show at least a tenable relationship between the materials sought and the preparation of the defense" to those allegations. *Id.* (quoting *United States v. Poindexter*, 727 F. Supp. 1470, 1480 (D.D.C. 1989)).

Rule 16(a)(2) provides that "...[n]or does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500." Although this provision would exempt the discovery of witness statements from the operation of Rule 16, Courts have held this provision only applies to witnesses that the government actually intends to call at trial. *See United States v. Carrasquillo-Plaza*, 873 F.2d 10, 12 n.2 (1st Cir. 1989)(in the context of addressing government's failure to disclose statements that the defendant's alibi witnesses had made to government agents, stating that "because the statements were not made by government witnesses, they are not covered by Fed. R. Crim. P. 16(a)(2)."; *see also United States v. Jackson*, 757 F.2d 1486, 1491-92 (4th Cir. 1985)("[T]he policies behind 18 U.S.C. §

3500(a), which limits discovery of statements, are not applicable because there is a lesser risk of intimidation of the witness or efforts to suborn perjury when the hearsay declarant is not a prospective witness.").  Further, Rule 16 continues to govern the discovery of evidence that would not qualify as a witness's "statement" for purposes of the Jencks Act.

Finally, in contrast to the *Brady* rule, discoverability under Rule 16(a)(1)(E) is not conditioned on the evidence being favorable to the defense.  *United States v. Marshall*, 132 F.3d 63, 67 (D.C. Cir. 1998)("[Rule 16] as written does not compel the conclusion that inculpatory evidence is immune from disclosure.")   This is because "inculpatory evidence…is just as likely to assist in 'the preparation of the defendant's defense' as exculpatory evidence' and 'it is just as important to the preparation of a defense to know its potential pitfalls as it is to know its strengths.'" *Id.*

## II.    THE    GOVERNMENT    HAS    IMPERMISSIBLY    WITHHELD    *BRADY* INFORMATION.

Before reviewing the material sought, we respectfully submit that it is important for this Court to do so with the recognition that the government has violated *Brady* for almost a year by withholding Fernando Bartoletti's grand jury testimony, and disclosing the same only on September 1, 2025, as part of its Jencks production.  The substance and falsity of Mr. Bartoletti's testimony is addressed in detail in the contemporaneously-filed Motion to Dismiss, but the government's failure to disclose that testimony until now is relevant to the instant motion because it shows that the government's assurances of compliance with *Brady* should hold little weight.

It is well-established that *Brady* encompasses not just information bearing on factual guilt or innocence, but also information helpful to the defense in formulating pre-trial motions or making evidentiary challenges.  Thus, courts have held, for example, that withholding information relevant to a motion to suppress violates *Brady.  See United States v. Gamez-Orduno*, 235 F.3d

453, 461 (9th Cir. 2000) (finding *Brady* violation where government suppressed a report that would have established that the defendant had standing to challenge a search); *see also Smith v. Black*, 904 F.2d 950, 965-66 (5th Cir. 1990) (assessing impact of *Brady* information on a motion to suppress) (vacated on other grounds). Likewise, *Brady* has been held applicable to information relevant to the admissibility of a confession. *Nuckols v. Gibson*, 233 F.3d 1261, 1266-67 (10th Cir. 2000) (finding *Brady* violation where State failed to disclose information affecting the admissibility of a confession).

1. **The Bartoletti transcript is *Brady* information.**

In this case, the government knew–indeed was explicitly told–that Fernando Bartoletti's grand jury testimony was relevant to a potential motion to dismiss. During pretrial motions, Mr. Jin moved for disclosure of the grand jury transcripts, arguing that the government likely presented false and misleading testimony to the grand jury, and that disclosure of the grand jury transcripts was necessary to file a motion to dismiss. *See* ECF No. 47. In that motion, Mr. Jin specifically identified the potential for false testimony from a CTJ witness, noting that the witness had "made highly implausible claims" during interviews with the government, and pointed out the various obvious lies that the witness had told the government. ECF No. 47 at 5. In response, the government skirted the issue, focusing only on the question of whether it was Winney or CTJ that generated the bills of lading, and entirely avoided answering whether a CTJ witness testified, or what that testimony may have been. *See* ECF No. 68 at 4.

The government's disclosure of the Bartoletti transcript on September 1, 2025 confirms that the defense's suspicion has been correct all along. A witness from CTJ did indeed testify at the grand jury proceeding, and that witness did indeed repeat the same lies he had told the government. Moreover, the government sponsored those lies. Contrary to what the government

may think, the Bartoletti transcript was not just Jencks Act material or *Giglio* information, such that their withholding can be justified by reference to the Court's scheduling order. The Bartoletti transcript was squarely within *Brady* because it was obviously helpful, indeed necessary, to the defense for moving to dismiss on the ground that the grand jury was presented with false and misleading testimony.

Beyond its application to the motion to dismiss, the Bartoletti transcript was also *Brady* because it shows that the government presented testimony at a judicial proceeding where the testimony was obviously false and contradicted by the witness's own company records. The *Brady* character of the Bartoletti transcript does not depend on whether the government knowingly presented false testimony, or was merely misled by its own witness. Either way, it raises serious doubts about the integrity, reliability, and good faith of the government's case. *Kyles,* 514 U.S. at 445; *Quinn*, 537 F. Supp. 2d at 115; *United States v. Howell*, 231 F.3d at 625.

## 2. The government's failure to disclose the Bartoletti transcript violates *Brady*.

It has long been the law of this Circuit that *Brady* and *Giglio* disclosure obligations take precedence over the Jencks Act and Rule 16. *United States v. Tarantino,* 846 F.2d 1384, 1414 n. 11 (D.C. Cir. 1988) ("*Brady/Giglio* obligations always trump both the *Jencks* Act and any limiting language in Rule 16.").

*Brady* must always be disclosed immediately–in this case, in the fall of 2024, when Mr. Jin made his initial appearance. *See United States v. Ford,* No. 15-0025 (PLF), 2016 WL 482871, at *4–5 (D.D.C. Feb. 4, 2016) ("A prosecutor's disclosure obligations under *Brady* begin as soon as the case is brought and continue throughout the pretrial and trial phases of the case, and even post-trial."). If there were any doubt, the Local Rules make this issue pellucid. ECF 29–Order Pursuant to the Due Process Protections Act, at 1 ("Beginning at the defendant's arraignment and continuing

throughout the criminal proceeding, the government shall make good-faith efforts to disclose such information to the defense as soon as reasonably possible after its existence is known, so as to enable the defense to make effective use of the disclosed information in the preparation of its case.") (quoting Local Criminal Rule 5.1).

The government cannot justify its withholding of the Bartoletti transcript on the ground that this information was available to the defense in the FD-302 reports that it had disclosed. Those reports disclosed that a CTJ witness twice lied to the government, first in 2019, and then again in 2022. Those reports do *not* show what the government did in response–which is to present that false testimony to the grand jury that returned the indictment against Mr. Jin.

Nor can the government rely on the claim that it had no duty to disclose the false grand jury testimony on the ground that it was not "material." Such an argument would be frivolous, but in any event, materiality determinations are not for the prosecution to make:

> The prosecutor cannot be permitted to look at the case pretrial through the end of the telescope an appellate court would use post-trial. Thus, the government must always produce any potentially exculpatory or otherwise favorable evidence without regard to how the withholding of such evidence might be viewed—with the benefit of hindsight—as affecting the outcome of the trial. The question before trial is not whether the government thinks that disclosure of the information or evidence it is considering withholding might change the outcome of the trial going forward, but whether the evidence is favorable and therefore must be disclosed. Because the definition of "materiality" discussed in Strickler and other appellate cases is a standard articulated in the post-conviction context for appellate review, it is not the appropriate one for prosecutors to apply during the pretrial discovery phase. The only question before (and even during) trial is whether the evidence at issue may be "favorable to the accused"; if so, it must be disclosed without regard to whether the failure to disclose it likely would affect the outcome of the upcoming trial.

*Safavian*, 233 F.R.D. at 16–17; *United States v. Sutton*, No. CR 21-0598-01 (PLF), 2022 WL 2383974, at *9 (D.D.C. July 1, 2022) (recognizing the government's "broad obligation to disclose favorable evidence – without regard to its 'materiality' – 'as soon as reasonably possible after its existence is known.'") (citing LCrR 5.1(a)); *see also United States v. Sudikoff*, 36 F. Supp. 2d

1196 (C.D. Cal. 1999) ("the government is obligated to disclose all evidence relating to guilt or punishment which might reasonably be considered favorable to the defendant's case"); *United States v. Acosta*, 357 F. Supp. 2d 1228, 1233 (D. Nev. 2005) (following and citing *Sudikoff*).

### 3. The government's withholding of the Bartoletti transcript is prejudicial.

Instead of disclosing the Bartoletti transcript when Mr. Jin made his initial appearance, or certainly by the time of pretrial motions, the government withheld that transcript until September 1, 2025, when both government and defense counsel are in the late stages of trial preparation. The government's suppression of this evidence is prejudicial to the defense because, although Mr. Jin has now filed a motion to dismiss, he had to do so by being forced to choose between waiving the issue, delaying the trial, or sacrificing trial preparation time.[1] *See Leka v. Portuondo*, 257 F.3d 89, 100 (2d Cir. 2001 )(finding *Brady* violation where information contradicting eyewitness testimony was disclosed nine days before trial because "the disclosure was too little, too late."); *see also United States v. Burke*, 571 F.3d 1048, 1054 (10th Cir. 2009) (explaining that "the belated disclosure of *Brady* material "tend[s] to throw existing strategies and [trial] preparation into disarray." It becomes "difficult [to] assimilate new information, however favorable, when a trial already has been prepared on the basis of the best opportunities and choices then available.").

We say all this to emphasize that, while the defense has endeavored to comply with the Court's direction to specifically identify the materials sought, that specificity is necessarily limited by what the defense has access to. The government controls what information it produces and what information it does not. The defense cannot see what the government has obscured.

---

[1]     The government is also well aware that Mr. Jin's desire for a speedy trial is a genuine one, given its review of Mr. Jin's jail recordings wherein the issue was discussed, the fact that a member of the Chinese embassy had apparently contacted the government regarding advancing the trial date, and government counsel's reference to Mr. Jin's objection to any delay of the trial in communications with defense counsel.

There is also the practical observation that, given government counsel's complaints about their need for time to prepare for trial, it appears highly unlikely that the government would have taken the time and effort to redact so much of its Jencks production, if the government did not believe in some way that the materials, if produced in unredacted form, would be highly damaging to its case.  Yet the more damaging a piece of evidence or information may be for the prosecution, the more compelling is the requirement to produce that evidence or information under *Brady*.  The defense should therefore not be accused of conducting a "fishing expedition" by pursuing the unredacted versions of these materials, to which Mr. Jin is entitled not only under Jencks, but also *Brady*.  The burden is always on the government to comply with its obligations, and the Court has a duty to protect Mr. Jin's due process rights by enforcing those obligations.

## III.    THE GOVERNMENT'S NARROW READING OF THE JENCKS ACT IS BASELESS.  THE RESULTING REDACTIONS VIOLATE THE JENCKS ACT, AND SKIRT THE GOVERNMENT'S *BRADY* AND *GIGLIO* OBLIGATIONS.

The government performed extensive redactions to its Jencks production, which was made on September 1, 2025.  The government's Jencks production includes the following:

1) CTJ employee Fernando Bartoletti's grand jury testimony, including exhibits used for his testimony, with extensive redactions;

2) FBI Forensic Accountant Dawson Anglin's grand jury testimony, including exhibits used for his testimony, with extensive redactions;

3) FBI Forensic Accountant Dawson Anglin's E-mail communications with other agents and government lawyers in this case, with extensive redactions;

4) Agent Benjamin Whitley's search warrant affidavit filed in another case, in which he sought the email records of an account that appears to belong to co-defendant SIM, also with extensive redactions; and

5) OFAC expert Emily Williams' email communications with the government, also with extensive redactions.

These redactions are described in specific detail in the list entitled "ITEMS SOUGHT TO BE UNREDACTED OR PRODUCED," contemporaneously filed with this motion as Exhibit 1. In that list, the defense has also asserted the basis for obtaining the unredacted versions, in accordance with this Court's instructions. Below, we briefly address the government's proffered reason for the redactions.

In considering whether the government has properly redacted its Jencks production, it is useful by noting what reasons the government has NOT advanced for the redactions. First, the redactions appear unrelated to witness security, and the government has not proffered such a reason. Second, the redactions also appear unrelated to classified information, or national security, and the government has not proffered such. Third, the government also has not asserted any privilege. Fourth, the government has not claimed the redacted portions are unrelated or irrelevant.

The one and only ground asserted by the government for these redactions is: "the redacted material is not the subject of [the witness'] testimony." *See* Exhibit 14 at 3- E-mail from AUSA Seifert to E. Gorokhov on September 2, 2025 at 9:04 AM; *See also* Exhibit 14 at 1 - E-mail from AUSA Seifert to E. Gorokhov on September 2, 2025 at 9:55 AM ("I am referring to frivolity…which I take to include requests for prior statements that are not part of the witness's testimony. As I already stated, the material that is redacted does not 'relate to the subject matter of the witness's testimony.'"). The government also later represented that the redacted material does not contain any *Brady* information, but given its failure to disclose Mr. Bartoletti's grand jury transcript for almost a year, that representation inspires little confidence.

Taking the government's asserted justification for what it is, the government appears to be saying that if it avoids certain topics on direct examination of a witness, it may shield statements of that witness on such a topic from discovery under the Jencks Act, *Brady*, and *Giglio*. That is simply contrary to what the law requires.

First, under the Jencks Act, a witness's statement is discoverable if it "relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(b). "Relates to" is not so narrow as to only require production of statements that are the same as, or cover the same ground, as the witness' trial testimony. It includes statements that not only directly relate to what the witness testifies about, but also statements that indirectly relate to the witness's testimony, including, for example: (1) statements that would impeach the witness's trial testimony, *see Rosenberg,* 360 U.S. at 370 (statement by victim of "failing memory" relates to the subject matter of the victim's testimony and should have been provided to the defense); (2) statements that are about a common course of conduct, *see Derrick*, 507 F.2d at 870-1 (Jencks Act required production of statements about transactions that arose out of a "continuous course of conduct."); (3) statements that reveal the witness's reasoning or "deductive process," *see United States v. Cleveland*, 507 F.2d at 736; and (4) statements that show what information the witness relied upon. *Id.*

Second, and independent of the Jencks Act, the government has an obligation to produce any favorable information under *Brady* and *Giglio*. Thus, even if a witness's statement does not "relate to" the witness's planned direct examination, it would still have to be disclosed if it is in any way helpful to the defense. Given the government's failure to disclose the Bartoletti transcript for almost a whole year, *see Supra*, there is a strong likelihood that the government has also redacted significant *Brady* and *Giglio* information from the witness statements it has produced. The specific reasons why this is apparent are stated in detail in Exhibit 1.

Finally, to the extent any of the redacted material includes information that does not qualify as either Jencks Act "statements," or *Brady* and *Giglio* information, such as, for example, statements by non-testifying witnesses, that redacted information would nonetheless be discoverable under Rule 16 if it is material to the preparation of the defense.

## IV.    IF THE COURT DOES NOT ORDER THE PRODUCTION OF ALL MATERIAL SOUGHT UNDER JENCKS, *BRADY,* AND RULE 16, THE COURT SHOULD REVIEW ALL SUCH MATERIAL IN CAMERA TO ENSURE COMPLIANCE.

The Jencks Act provides a specific procedure to be deployed when a dispute arises over the discoverability of any statement covered by that Act.  18 U.S.C. § 3500© states, in relevant part:

> If the United States claims that any statement ordered to be produced under this section contains matter which does not relate to the subject matter of the testimony of the witness, the court shall order the United States to deliver such statement for the inspection of the court in camera.  Upon such delivery the court shall excise the portions of such statement which do not relate to the subject matter of the testimony of the witness.  With such material excised, the court shall then direct delivery of such statement to the defendant for his use…[T]he entire text of such statement shall be preserved by the United States and, in the event the defendant appeals, shall be made available to the appellate court for the purpose of determining the correctness of the ruling of the trial judge.  Whenever any statement is delivered to a defendant pursuant to this section, the court in its discretion, upon application of said defendant, may recess proceedings in the trial for such time as it may determine to be reasonably required for the examination of such statement by said defendant his preparation for its use in the trial."

"The trial court has a duty under the Jencks Act to engage in an adequate inquiry into the nature of the documents requested before ruling against Jencks Act production."  *United States v. Holton*, 116 F.3d 1536, 1546-47 (D.C. Cir. 1997) (citing *United States v. North American Reporting, Inc.*, 740 F.2d 50, 55 (D.C. Cir. 1984)).  Thus, prior to issuing any ruling, the Jencks Act requires the government to deliver the entire, unredacted version of its Jencks production for the Court's *in camera* review.  Furthermore, because resolving the question of whether the redacted information "relates to" the subject matter of the witness's testimony depends on what

the witness testifies to on direct examination, the Court may have to, in the event of uncertainty, wait until after the witness has testified on direct examination to issue a ruling.  To the extent any information has been improperly redacted or withheld, the defense would also request appropriate recesses to examine and make use of that information.  The government's pretrial production of the material sought will minimize, if not entirely eliminate, litigation of these matters during the trial.

Under *Brady*, the Court also has the power to order *in camera* review of any withheld information.  Unlike statements withheld pursuant to the Jencks Act, where *in camera* review is mandated by statute, "the decision whether to review purported *Brady* materials *in camera* is entrusted to the district court's sound discretion."  *United States v. Bland*, 517 F.3d 930, 935 (7th Cir. 2008).  Under D.C. Circuit precedent, *in camera* review by the district court for *Brady* information is also required where the defense has identified "exculpatory evidence."  *United States v. Brooks*, 966 F.2d 1500, 1505 (D.C. Cir. 1992); *see also United States v. Borda*, 786 F. Supp. 2d 45, 48 (D.D.C. 2011) ("our Court of Appeals noted that in camera review of alleged *Brady* material by the District Court is unnecessary unless the defendant identifies specific 'exculpatory evidence [that the prosecution] withheld.'").

Finally, precedent also supports this Court's power to conduct *in camera* review of evidence to determine discoverability under Rule 16.  *See United States v. Felt*, 491 F. Supp. 179, 184 (D.D.C. 1979)("In camera ex parte presentation of disputed material is recognized as an appropriate means of establishing [discoverability under Rule 16]")(citing *United States v. Peloton*, 578 F.2d 701, 707 (8th Cir. 1978)); *see also United States v. Maury*, 695 F.3d 227, 249 (3rd Cir. 2012)(noting that district court conducted *in camera* review of the defendant's statements that the government had withheld under Rule 16 for witness security reasons).

Because this Court is required to conduct an *in camera* review of the full, unredacted version of the government's Jencks production, we respectfully submit that the Court should also, at the same time, exercise its discretion and review that material to determine whether any of the redacted portions have been improperly withheld pursuant *Brady* and Rule 16.

Finally, Mr. Jin asks the Court to make any undisclosed redacted materials part of the record in this case, under seal, for review on appeal, if necessary.

## CONCLUSION

The Court should order the government to produce the materials identified in Defense Exhibit 1, or alternatively, order the government to produce the materials for the Court's in camera review.

Respectfully submitted,

By: /s/ Eugene Gorokhov
Eugene Gorokhov, Esq.
D.C. Bar No. 979785
Burnham & Gorokhov, PLLC
1634 I Street NW, Suite 575
Washington, D.C. 20006
(202) 386-6920 (phone)
(202) 765-2173 (fax)
eugene@burnhamgorokhov.com

## CERTIFICATE OF SERVICE

A copy of the foregoing motion was filed via ECF, which automatically sends a copy to all counsel of record.

Respectfully submitted,

By: /s/ Eugene Gorokhov
Eugene Gorokhov, Esq.
D.C. Bar No. 979785
Burnham & Gorokhov, PLLC
1634 I Street NW, Suite 575
Washington, D.C. 20006
(202) 386-6920 (phone)
(202) 765-2173 (fax)
eugene@burnhamgorokhov.com