UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | } |
| | } |
| | } Criminal No. 23-CR-91-CKK |
| v. | } |
| | } |
| GUANGHUA JIN, | } |
| | } |
| Defendant. | } |
| | } |
| _____ | } |

# DEFENDANT'S TRIAL BRIEF ON
# ADMISSIBILITY OF CO-CONSPIRATOR STATEMENTS

Mr. Jin, through counsel, respectfully submits this trial brief to address the admissibility of certain evidence the government intends to introduce as "co-conspirator statements."

## BACKGROUND

The defense anticipates that the government may introduce various e-mails, along with <u>attachments</u> to those e-mails, beginning with its first witness.

Previously, in responding to the government's Motion *In Limine* Regarding Procedure for Admission of Co-Conspirator Statements, ECF No. 101, Mr. Jin pointed out that many of the proposed exhibits the government intends to introduce pursuant to Rule 801(d)(2)(E) are not in fact co-conspirator statements because attachments to emails include multiple layers of hearsay, and their admissibility is governed by Rule 805 of the Federal Rules of Evidence. *See generally* ECF No. 116 at 2-3 (discussing of applicability of Rule 805 in the context of co-conspirator statements).

In its reply, the government declined to address the question of admissibility during the motions *in limine* stage, arguing that the question of admissibility should only be decided "at the

1

time admission is sought during trial." ECF 119 at 2. The government agreed, however, that Rule 805 requires an independent basis of admissibility for each layer of hearsay. *See* ECF 119 at 2, n. 2. The government also identified a number of potential theories under which the attachments could be admitted, to include: (1) statements of an agent under Rule 801(d)(2)(D) and (2) adoptive admissions under 801(d)(2)(B). *Id.* at 2, n.1. The Court then granted the government's motion, effectively leaving the question of admissibility to be addressed during trial. ECF 152 at 6.

Consistent with the Court's Order, Mr. Jin will raise contemporaneous objections to the admission of co-conspirator statements during trial, where the alleged co-conspirator statement consists of an attachment to an e-mail or otherwise includes multiple layers of hearsay. However, given that the government may argue for admission under a diverse set of hearsay exceptions at trial, the defense submits this trial brief in advance to address the relevant standards governing admission and what the government should be required to prove before these documents are admitted.

## THE EXHIBITS AT ISSUE

The e-mails and attachments at issue are found within the 100 series of the government exhibits. Below, we attempt to summarize the government exhibits so that the Court has a general understanding of the documents involved.

**Government Exhibits 100, 101, and 101T**

Government Exhibit 100 purports to be a hard drive containing the entirety of the Google search warrant return for the account jinguanghua2014@gmail.com.

Government Exhibit 101, a 370-page document, consists of a selection of the e-mails and attachments from Exhibit 100. Meanwhile, government Exhibit 101T, a 119-page document, consists of translations of a subset of the emails and attachments in Exhibit 101.

According to the government, the e-mails and attachments in Exhibits 101 and 101T were sent to the jinguanghua2014 account by various Winney employees in China ("Winney employee emails"). The time-period of the e-mails appears to span from December 2018 to October 2019. The e-mails are generally short and nondescript. For example, an e-mail might simply say: "To: General Manager Jin, I sent the Statement of Account for Goods by Air 12/26/2018 – New Home NG8, please take note and find enclosed." Govt Ex. 101T at 11. Some of the attachments referenced in that email are then included as subsequent pages in the government's exhibit. *See* Govt Ex. 101T at 13-19.

The attachments to the Winney employee emails cover a wide range of business documents. They include invoices, *see, e.g.*, Exhibit 101T at 2, sales contracts, *see, e.g.*, *id.* at 5, a "work summary" that describes the individual's accomplishments, *see id.* at 27, sales quotations for prices of goods, *see id.* at 50, receipt confirmations, *see id.* at 76, notices of nonpayment, *see id.* at 80, a notice about an alcohol event in connection with the Tokyo Olympics, *id.* at 84, and blank applications for bank accounts at two North Korean banks, *see id.* at 99-101.

**Government Exhibits 110, 111, 111T**

Government Exhibit 110 purports to be a hard drive containing the search warrant returns for two Google accounts associated with Mr. Han. Exhibit 111 is a 297-page document containing a selection of emails sent from, or received by, the accounts in Exhibit 110. Exhibit 111T, in turn, is an 11-page document containing translations of certain emails in Exhibit 111.

As in the case of the documents in Exhibit 101, the documents in Exhibit 111 include both emails and attachments to emails. In contrast to Exhibit 101, the emails in Exhibit 111 encompass both emails sent from, and received by, the two accounts associated with Mr. Han. *See e.g.*, Ex. 111 at 47 (email from a Dubai bank representative to Henry Han). The attachments in Exhibit 111

3

also encompass a broad range of documents. They include business registration documents, *see* Ex. 111 at 3, pictures of what appears to be Chinese passports for Mr. Han, Mr. Jin, and Mr. Qin, *see id.* at 67, 78, 124, shipping documents, *see* Ex. 111 at 117, and various, miscellaneous documents, *see id.* at 45 (medical fitness application), 52 (guide to setting up online bank account), 67 (customer profile form), 134 (flight tickets).

### Government Exhibits 120, 121, 121T

Exhibit 120 purports to be a hard drive containing the search warrant returns of two Google accounts and one Apple iCloud account associated with Mr. Sim. Exhibit 121 is a 78-page document containing a selection of emails that purport to be sent by or received from the accounts associated with Mr. Sim, although it is not clear whether the emails are confined to those in Exhibit 120. Exhibit 121T, in turn, is a document containing translations of certain e-mails from Exhibit 121.

As with the exhibits described previously, the documents in Exhibit 121 include both emails and attachments. The nature of the attachments are somewhat more opaque, as they consist primarily of foreign language documents that the government has left untranslated. *See* Ex. 121 at 15 (document that appears to be in Russian); *id.* at 31 (document in what appears to be Arabic).

### ARGUMENT

### I. THE GOVERNMENT SHOULD BE REQUIRED TO INTRODUCE EMAILS AND ATTACHMENTS INDIVIDUALLY.

The form in which the government has prepared exhibits 101, 111, and 121 suggests that the government may seek to admit the e-mails and attachments described above *en masse*. Such a procedure would make it highly difficult for the Court to decide the relevance and admissibility of individual documents, and for the defense to raise appropriate objections at trial. It is clear that the basis for admissibility will vary from e-mail to e-mail, and from attachment to attachment. The

exhibits should be organized in some coherent fashion, such as by, for example, categorizing the e-mails and attachments based on the theory of admissibility, or by creating individual exhibits out of each e-mail and its corresponding attachment(s).

## II. APPLICABLE LAW GOVERNING ADMISSION OF E-MAILS AND ATTACHMENTS MAY RENDER SOME OF THE GOVERNMENT'S PROPOSED EXHIBITS INADMISSIBLE.

Because the government has not articulated a theory of admissibility as to the documents in Exhibits 101, 111, and 121 (and the corresponding translations in 101T, 111T, and 121T), and because the relevance of these documents will presumably be demonstrated at trial, we simply set forth below the relevant legal standards that may be potentially implicated in the court's decision to admit or not admit the foregoing documents.

### A. Rule 805.

The government may not evade the prohibition on hearsay by offering inadmissible hearsay within an otherwise admissible document, or *vice versa*. "For each level of hearsay to be admitted, it must be covered by either an exemption or exception to the hearsay rule." *Klotzbach-Piper v. Nat'l R.R. Passenger Corp.*, 636 F. Supp. 3d 73, 92 (D.D.C. 2022) (citing Fed. R. Evid. 805; *United States v. Slatten*, 865 F.3d 767, 804 n. 7 (D.C. Cir. 2017)), *reconsideration denied*, 678 F. Supp. 3d 62 (D.D.C. 2023); *see also Capitol Servs. Mgmt. Inc. v. Vesta Corp.*, Civ. No. 17-1756 (EGS), 2023 WL 5507281, at *5 n.3 (D.D.C. Aug. 25, 2023) (citing *Wilson v. DNC Servs. Corp.*, 417 F. Supp. 3d 86, 97 (D.D.C. 2019), *aff'd*, 831 F. App'x 513 (D.C. Cir. 2020)) (declining to consider admissibility of secondary hearsay because primary hearsay was inadmissible), *aff'd*, No. 23-7118, 2025 WL 521241 (D.C Cir. Feb. 18, 2025).

Emails and their attachments are admissible only if both separately would be admissible. *See United States v. Bailey*, Crim. No. 19-156 (CKK), 2022 WL 4379059, at *5

(D.D.C. Sept. 22, 2022) (admitting email and attachments because email is admitted for non-hearsay purpose and attachments are excepted from prohibition on hearsay); *New York v. Microsoft Corp.*, Civ. No. 98–1233 (CKK), 2002 WL 649951, at *3 (D.D.C. Apr. 12, 2002) (rejecting emails and attachments as hearsay within hearsay).

### B. Rule 801(d)(2)(E).

To admit a hearsay statement as the statement of a co-conspirator, Fed. R. Evid. 801(d)(2)(e), the government must show, by the preponderance of the evidence, that "(1) a conspiracy existed, (2) that it involved the declarant and the defendant (among others), (3) that the statement was made during the course of the conspiracy, and (4) that the statement was made in furtherance of the conspiracy." *United States v. Safavian*, 435 F. Supp. 2d 36, 46 (D.D.C. 2006); *see United States v. Hassanshahi*, 195 F. Supp. 3d 35, 51 (D.D.C. 2016) ("To admit a statement under this rule, the Court 'must find by a preponderance of the evidence that the person making the statement was a co-conspirator and that the statement was made during and in furtherance of the conspiracy.'" (quoting *United States v. Gatling*, 96 F.3d 1511, 1520 (D.C. Cir. 1996)).

The hearsay statement itself "<u>may not be the sole basis for such a ruling</u>. Under [D.C. Circuit] precedent, there must be independent evidence of a conspiracy as well." *United States v. Beckham*, 968 F.2d 47, 51 (D.C. Cir. 1992) (emphasis added); *see id.* at 50-51 (finding error in admission of hearsay statement based on the statement itself, the declarant's physical proximity to the defendant, and their apparent acquaintance); *see also, e.g.*, *Hassanshahi*, 195 F. Supp. 3d at 52 ("The proffered statement must be considered but does not by itself establish the existence of the conspiracy or participation in it.") (cleaned up). "The preferred practice is for the trial court to make these determinations before the hearsay evidence is admitted." *United States v. Slade*, 627

6

F.2d 293, 307 (D.C. Cir. 1980); *see Safavian*, 435 F. Supp. 2d at 46 (suggesting that wrongful admission of hearsay statements may result in a mistrial).

As applied to the government exhibits at issue, e-mails from third parties, such as bank representatives, to one of the alleged co-conspirators would not be admissible under Rule 801(d)(2)(E). Similarly, unless the government proves by a preponderance of the evidence that the same Winney employees who sent Mr. Jin the emails in Exhibit 101 were members of the alleged conspiracy, and sent the emails in furtherance of this conspiracy, those emails would likewise be inadmissible under this Rule.

C. Rule 801(d)(2)(B).

A statement may be offered against one who "manifested that it adopted [the statement] or believed [it] to be true." Fed. R. Evid. 801(d)(2)(B). Merely sending documents by email, however, is not sufficient to demonstrate an adoption of their contents. *See Safavian*, 435 F. Supp. 2d at 44 ("Other e-mails forwarded by Mr. Safavian do not clearly demonstrate his adoption of the contents, and therefore are not admitted under Rule 801(d)(2)(B)."); *cf. United States v. Yates*, 524 F.2d 1282, 1285 (D.C. Cir. 1975) (failure to contradict remark did not indicate assent to its truth).

The fact that a party was partially responsible for the creation of a document is not sufficient to transform the document into an adoptive admission. *See United States ex rel. Landis v. Tailwind Sports Corp.*, 292 F. Supp. 3d 211, 220-21 (D.D.C. 2017) (finding party to have adopted some, but not all, statements in reports that it commissioned); *cf. United States v. Warren*, 42 F.3d 647, 656 (D.C. Cir. 1994) (government did not adopt the truth of statements made by law enforcement officers in arrest report). Rather, the party "must have understood and unambiguously assented to [the] statement, [which] may be established through conduct as well as through words." *Beckham*, 968 F.2d at 52 (cleaned up). This standard, too, must be met by the


preponderance of the evidence. *See id*. ("[W]here the facts bearing on admissibility conflict, the court need only find that it is more probable than not that the facts favoring admissibility exist in order to allow the evidence in.").

As applied to the exhibits at issue, the government may attempt to argue that certain documents, such as a bill of lading, or an entity registration record, may be admitted as adoptive admissions. In order to admit the document under this exception, the government must prove that the alleged co-conspirator unambiguously manifested an intent to adopt the truth of the statement.

### D. Rule 801(d)(2)(D).

"[U]nder Rule 801(d)(2)(D) of the Federal Rules of Evidence, a statement made by an opposing party's agent or employee on a matter within the scope of that relationship and while it existed is not hearsay when offered against the opposing party." *Wilson v. Noem*, No. 20-cv-100 (GMH), 2025 WL 1000666, at *4 n.18 (D.D.C. Apr. 3, 2025) (cleaned up). The government must therefore show that the declarant was an employee or other agent, specifically, of the party against whom the statement was offered. *See Wilburn v. Robinson*, 480 F.3d 1140, 1148 (D.C. Cir. 2007) ("Whether [this statement] is admissible as an admission of a party-opponent depends on whether or not the [principal] is a party."). Agency requires that "the principal has the right to control the conduct of the agent with respect to matters entrusted to the agent." *Gilmore v. Palestinian Interim Self-Gov't Auth.*, 843 F.3d 958, 970 (D.C. Cir. 2016) (quoting *Atrium of Princeton, LLC v. Nat'l Labor Rels. Bd.*, 684 F.3d 1310, 1315 (D.C. Cir. 2012)); *see United States v. Aetna, Inc.*, No. 1:16-cv-1494 (JDB), 2016 WL 8738426, at *4 (D.D.C. Nov. 30, 2016) (excluding documents created by a consultant, because the retaining party did not exercise sufficient control over the consultant).

Furthermore, the statement must be within the scope of that relationship, and the agent must have the authority to speak for the principal. *See Talavera v. Shah*, 638 F.3d 303, 310 (D.C.

Cir. 2011) (finding statements inadmissible when there was no evidence that those statements were within the scope of employment or that the employee was given authority to speak on behalf of the employer); *Wilson*, 2025 WL 1000666, at *5 n.20 (a statement is likely to be hearsay "because there is no indication that inquiries about hiring were 'within [the declarant's] general duties and responsibilities'" (quoting 30B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 6776 (2024 ed.)); *Aetna, Inc.*, 2016 WL 8738426, at *3 ("A consultancy relationship does not confer the authority necessary to make a statement admissible under Rule 802(d)(2)(D) because a consultant cannot fairly be said to be 'speaking' on behalf of the entity who has retained the consultant.").

In this case, the government may seek to admit emails in Exhibit 101 (i.e., emails alleged to be sent by Winney employees) as statements of an agent or employee. However, there must be independent evidence apart from the hearsay e-mail itself that proves, by a preponderance, that: (1) the person sending the e-mail is not just a Winney employee as a general matter, but that the person was acting as an agent for Mr. Jin, i.e., that Mr. Jin exercised sufficient control over the employee's conduct such that the employee's statements can be attributed to Mr. Jin; (2) the e-mail was sent within the scope of that agency relationship; and (3) the employee had the authority to make the statement.

### III. EMAILS AND DOCUMENTS POST-DATING MAY 1, 2019 ARE LIKELY INADMISSIBLE

The alleged conspiracies charged in this case ran from 2009 to March 2019. The Court has previously ruled that certain "proffered emails and conversations [which] postdate the conduct for which Jin is charged greatly diminishes the probative value of that evidence." ECF No. 192 at 10. The government also has not filed a Rule 404(b) notice in this case. Furthermore, the government has previously represented that it would not seek to introduce any of Mr. Jin's internet search

9

history postdating May 2019. ECF No. 180 ("The government does not plan to introduce any evidence of the Defendant's search history that post-date May 1, 2019.").

Given the Court's ruling regarding the greatly diminished probative value of post-offense conduct, the absence of a Rule 404(b) notice, and the government's plan to limit the internet search evidence to those occurring before May 1, 2019, the emails and attachments in Exhibits 101, 111, and 121 that postdate May 1, 2019 are likely also inadmissible under Rule 403.

## CONCLUSION

The Court should require the government to organize its exhibits under 101, 101T, 111, 111T, 121, and 121T in a manner that would enable the Court to decide questions of admissibility. Further, the government must establish the basis for admissibility—where the basis is something other than a co-conspirator statement—at the time of the document's admission.

Respectfully submitted,

By: /s/ Eugene Gorokhov
Eugene Gorokhov, Esq.
D.C. Bar No. 979785
Burnham & Gorokhov, PLLC
1634 I Street NW, Suite 575
Washington, D.C. 20006
(202) 386-6920 (phone)
(202) 765-2173 (fax)
eugene@burnhamgorokhov.com

**CERTIFICATE OF SERVICE**

A copy of the foregoing motion was filed via ECF, which automatically sends a copy to all counsel of record.

                                                                Respectfully submitted,

                                                                By: /s/ Eugene Gorokhov
                                                                Eugene Gorokhov, Esq.
                                                                D.C. Bar No. 979785
                                                                Burnham & Gorokhov, PLLC
                                                                1634 I Street NW, Suite 575
                                                                Washington, D.C. 20006
                                                                (202) 386-6920 (phone)
                                                                (202) 765-2173 (fax)
                                                                eugene@burnhamgorokhov.com