**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | } | |
| | } | |
| | } | **Criminal No. 23-CR-91-CKK** |
| **v.** | } | |
| | } | |
| **GUANGHUA JIN,** | } | |
| | } | |
| **Defendant.** | } | |
| | } | |
| _____ | } | |

**DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE TO TRIAL BRIEF ON**
**ADMISSIBILITY OF CO-CONSPIRATOR STATEMENTS**

Mr. Jin respectfully submits the following points and authorities in response to certain authorities that the government informally provided via e-mail to Chambers on September 15, 2025 at 2:30 PM, and the government's formal Response to Defendant's Trial Brief filed later the same day. ECF No. 203.

**I.    THE GOVERNMENT REQUESTED THAT THESE ISSUES BE DECIDED DURING TRIAL.  IT CANNOT COMPLAIN ABOUT TIMING.**

The government takes issue with the timing of the Defendant's motion, but the problem was of its own creation. Apart from the Rule 403 objection, which is based upon the reasoning of the Court's recent ruling addressing the probative value of evidence occurring after the alleged conspiracy has ended, *see* ECF 192, <u>every objection</u> that the defense has raised in relation to government exhibits 101, 111, and 121 was previously raised by the defense during motions *in limine*. *See* ECF 116. The government specifically avoided resolution of those issues at the time, arguing that under its proposed procedure, "the opposing party will raise objections to the specific evidence, at the time admission is sought during trial." ECF 119.   The Court later granted the

government's motion, by which the defense understood the Court to have agreed to the government's proposal, and that the defense is expected to raise contemporaneous objections to exhibits which involve the issues identified in July.

Given the previous position taken by the government, it cannot be heard now to complain that the defense filed a trial brief "on the eve of trial." ECF 203 at 1. Under the government's proposed procedure, even the trial brief would have been premature, for the objections were expected to be raised only "at the time admission is sought during trial." ECF 119.

## II.    THE GOVERNMENT CANNOT COMPLAIN ABOUT THE LACK OF SPECIFICITY.

The government also takes issue with what it perceives as a lack of "targeted objections." But this too was a direct consequence of its own choosing. The government in this case compiled numerous e-mails and attachments spanning years into a few voluminous PDFs. Many of the e-mails appear cumulative in relation to the purpose for which they are proffered. For example, some 200 pages of the 370 page Exhibit 101 is dedicated to repetitive invoices, spreadsheets, and contracts to show that Winney sold goods to companies in North Korea. *See* ECF 203-1 (listing documents offered to prove "the scope of the relationship between Winney entities and Naegohyang.")

But if the goal is simply to prove that Winney had a business relationship with North Korea, the point could be proven by a few, carefully selected documents. If the goal is to show business over time, the government could have organized a single exhibit containing only those invoices, spreadsheets, and contracts relevant to sales to North Korea. And if the goal was to show total

volume of goods sold, the government presumably could have offered a summary chart in lieu of the documents.[1]  *See* Fed. R. Evid. 1006(a).

The government chose to present these exhibits as a mass of documents with divergent purposes and theories of admissibility.  The defense objections are reasonably specific given the form of these exhibits.

### III.    OPERATION OF RULE 403 TO DOCUMENTS POST-DATING MAY 2019

The government makes no real attempt to justify the admission of documents post-dating May 2019 under Rule 403.  It simply states: "[i]t matters not that the statements were made after the conspiracy, because they are being admitted as agent statements and thus have no date limitation."  ECF 203 at 3.  The argument is a non-sequitor.

Under the Federal Rules of Evidence, only relevant evidence is admissible.  Fed. R. Evid. 402.  If a statement is not relevant, then it is not admissible.  And if a statement's probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, etc., the evidence is likewise subject to exclusion under Rule 403, regardless of whether it qualifies as non-hearsay under Rule 801(d)(2)(D).  So, to borrow the government's own phrase, "it matters not that the statements were made" by a purported agent.  What matters for purposes of the Rule 403 analysis is whether the probative value of statements post-dating May 2019 is outweighed by one or more of the dangers listed in Rule 403.

---

[1]    Which is not to say that offering a summary chart would resolve the admissibility question, because Rule 1006 requires that the underlying documents be *admissible*, even if not formally admitted into evidence.  *See* Fed R. Evid. 1006(a)("The court may admit as evidence a summary…offered to prove the content of voluminous *admissible* writings…")(emphasis added).  Nevertheless, that would have substantially reduced the perceived problem with the lack of specific objections.

Mr. Jin's argument for excluding the post May 2019 documents is that evidence of any activity occurring after this time has significantly diminished probative value.  This is consistent with the Court's prior ruling, which found that statements made "multiple months after the period of the charged conspiracies" has greatly diminished probative value "and casts doubt on the reliability of [the declarant's] statements therein." ECF 192 at 10.  Moreover, admission of the post-May 2019 statements at issue is significantly prejudicial because the government has not filed a Rule 404(b) notice.  The government's response does not even attempt to address this point.

To be sure, Mr. Jin recognizes that certain allegations in the indictment refer to conduct occurring after the end of the alleged conspiracy.  He has not claimed any unfair surprise as to evidence relating to such conduct.  Where post-May 2019 statements appear to relate to Winney entities changing its name, for example, Mr. Jin has not raised a Rule 403 objection, because there is an allegation in the indictment about it.  He does object, however, to the government's attempt to admit any post-May 2019 statements that do not relate to a specific allegation in the indictment.

## IV.    ADMISSIBILITY OF EXHIBIT 101 AS CO-CONSPIRATOR STATEMENTS OR STATEMENTS OF AN AGENT

Rule 801(d)(2)(D) appears to be the primary basis under which the government seeks to admit documents from Exhibit 101, which consist of a selection of emails from the jinguanghua2014@gmail.com account.  *See* ECF 203-1.

In analyzing the applicability of Rule 801(d)(2)(D) to the emails at issue, Courts have drawn a distinction between when a statement is offered against the corporate entity, and when the statement is offered against a principal of that corporate entity.  *See Zaken v. Boerer*, 964 F.2d 1319, 1322 (2d Cir. 1992)("[W]hen a statement made by one corporate employee to another is sought to be introduced against a corporate employee, instead of the corporation, admission under

4

Rule 801(d)(2)(D) depends on the relationship between the declarant and the defendant."). Thus, in *Zaken*, the Second Circuit concluded that a statement by a company's vice president about personnel decisions was admissible against the CEO only after finding that: (1) the declarant was "directly responsible to [the CEO defendant];" (2) the declarant had "ostensible authority over and took part in personnel decisions;" and (3) "the statement attributed to [the declarant] was made during the course of his employment as vice president of sales." *Id.* at 1323. *See also United States v. Paxson*, 861 F.2d 730, 734 (D.C. Cir. 1988)(finding statement admissible under Rule 801(d)(2)(D) where declarant was vice-president of the company and "reported directly to [the defendant], who, as president of the corporation, made key decisions for it" and "owned the overwhelming majority of stock" in the corporation.)

In this case, the statements are being offered against Mr. Jin in his individual capacity. They are not being offered against Winney as a corporate entity. Thus, the government needs to do more than show that the statements were made by Winney employees. There must be an agency relationship existing between the specific individual that sent a particular email and Mr. Jin, such that the declarant's statements are attributable to Mr. Jin.

In summarizing the "independent evidence" that the government claims would establish the requisite agency relationship, the government proffered the following:

(1) The emails and attachments in Exhibit 101 pre-dating May 2019 would be offered as co-conspirator statements, and would show that these individuals were employees of Winney;

(2) CTJ documents, offered as business records, would show that Mr. Jin was an executive of Winney.

(3) Based on a combination of the foregoing, the government would then offer post May 2019 emails and attachments as statements of an agent.

5

There are multiple, insurmountable problems to this approach.

First, the requirement that there be "independent evidence" applies equally to co-conspirator statements as they do to statements of an agent. *See* Fed. R. Evid. 801(d)(2) ("the statement must be considered but does not by itself establish the declarant's authority under (C); the existence or scope of the relationship (D); or the existence of the conspiracy or participation in it under (E)."). So for the government to say that offering earlier-in-time emails as co-conspirator statements will establish the foundation for admitting later-in-time emails as statements of an agent simply takes the analysis one step back. The Court must then ask, what is the independent evidence that these individuals were members of the conspiracy?

The government has no answer to this problem. It cannot retreat from the problem by pointing to the "subject to connection" procedure, because, as to the individuals sending the emails in Exhibit 101, there is simply no other evidence about them beyond the emails themselves. Thus, there will be no further testimony as to some act by these individuals that would place them as members of the conspiracy. Even assuming, *arguendo*, that these are Winney's employees (as opposed to say, independent contractors), there is simply no legal basis to presume that every employee of a company charged with wrongdoing is a member of a conspiracy.

Second, and perhaps more importantly, there is also a total absence of any information about these individuals. All we know is that they regularly sent business documents to Mr. Jin. For what purpose? We do not know. Were they sending documents created by others, or themselves? Again, we do not know. The government would be hard pressed to tell the Court the names of these individuals, or what their job titles were. Indeed, as alluded to above, the government would be unable to even tell this Court whether these individuals were employees or

independent contractors.  This falls far short of what is required to prove an agency relationship under Rule 801(d)(2)(D).

Third, even assuming that these individuals are somehow deemed Winney employees, the Court still has to find that Mr. Jin exerted sufficient control over their conduct such that they can be deemed Mr. Jin's agents.  All that the government has proffered, and all that the evidence can show, is that Mr. Jin held the title of "President," and was a 50% owner of Winney.  There will be no evidence regarding whether these individuals reported to Mr. Jin, or to someone else.  There will be no instance of Mr. Jin instructing or ordering these individuals to perform any particular task.  In short, there is no evidence of an agent-principal relationship.

Fourth, and finally, from the defense's review of Exhibit 101, there appears to be only one exception to the total opacity of these individuals' relationship to Mr. Jin or to Winney.  On one occasion, an individual e-mailed a "work summary" to Mr. Jin.  The summary generally describes the individual's accomplishments over the year, and may establish a basis for finding that whoever authored the work summary was a Winney employee.  But that does not solve the government's conundrum.  As far as the defense can tell, there is no evidence, and no reason to assume, that the person who authored the work summary is the same person who sent the summary to Mr. Jin.  *See* Ex. 101T at 26 (an individual by the name of "Yu'e" using an address woo318@qq.com sends a work summary signed by an individual called "Yu Hai Yan.").  Thus, the fact that a particular e-mail address sent a work summary would not establish that e-mail address as a Winney employee.

Even if one were to make that assumption, it would only go so far as to establish that a specific e-mail address or a specific name is associated with a Winney employee.  But many of the documents in Exhibit 101 come from other e-mail addresses or names.  *See, e.g.,* Ex. 101T at 48 (e-mail from 419618467@qq.com); *id.* at 50 (invoice apparently prepared by a "Cheng Hui Yan").

For some documents, such as spreadsheets, there is <u>no information regarding authorship</u>.[2] *See e.g.*, Ex. 101A p.2. If the government wants to prove that a particular email account is associated with a particular Winney employee, more evidence is needed.

## V.    THE REMAINING BASES OF ADMISSIBILITY AS TO EXHIBIT 101

With respect to a small selection of documents in Exhibit 101, the government has proffered non-hearsay purposes for which the documents are offered. If the Court admits those documents for a purported non-hearsay purpose, then it should instruct the jury accordingly. *See* Fed. R. Evid. 105.

## VI.    ADMISSIBILITY OF EXHIBIT 111

Turning to Exhibit 111, the government's response ignores the fundamental objection that Mr. Jin raised two months ago, and which he raised again in his trial brief: documents that Mr. Han sends to others are not statements of Mr. Han, but the statement of whoever created the document, and thus are inadmissible as co-conspirator statements under Rule 801(d)(2)(E). The government has never once attempted to address this distinction, and it ignores the distinction once again in its response.

For example, the government asserts that pages 2 through 20 of Exhibit 111 is admissible as a co-conspirator statement. ECF 203-2. Turning to the actual Exhibit 111, however, one finds that only page 2 is actually an email (i.e., statement) by Mr. Han. Page 3 of Exhibit 111 is a business registration certificate purportedly issued by the Jebel Ali Free Zone Authority. Pages 4-16 appears to be a set of articles of incorporation for Winney FZCO. Those pages purportedly

---

[2]    From the defense's review, it appears that the spreadsheets referenced in Exhibit 101 were made by the government into separate exhibits in the 101A series, but there is no clear relationship linking a particular spreadsheet to a particular email.

bear Mr. Jin's signature.  The articles of incorporation might have been admissible as an adoptive admission, but the government has not proffered it as such.  It should not be the Court's or the defense's duty to identify potential basis for admissibility of the government's own evidence.  Page 20 then appears to be a trading license issued by the Dubai government.  This license would, again, not be a statement of Mr. Han.

The documents in Exhibit 111 also appear to be highly duplicative or repetitive.  For example, page 21 is a non-descript email from Mr. Han to a foreign bank representative.  Pages 22 through 36 then appears to be the same document that appears in pages 4 through 16.  Even assuming that the article of incorporation is admissible to prove, for example, the ownership of Winney, one copy of that document should suffice.  To the extent multiple copies of the same document is being offered to prove the same point, those should be excluded as cumulative under Rule 403.

If any document in Exhibit 111 is admitted for a non-hearsay purpose, Mr. Jin requests an appropriate jury instruction.

## VII.    ADMISSIBILITY OF EXHIBIT 121

The government appears to have taken the position that the majority of the documents in Exhibit 121 are being offered simply to prove that the account was used by Mr. Sim and that Mr. Sim was in Dubai.  *See* ECF 203-3.  If so, a majority of the documents ought to be excluded as cumulative under Rule 403.  There is no need for the government to admit Netflix emails, a 15 page document in untranslated Arabic, multiple emails with Sim's North Korean driver's license, an email about medical equipment sales, and multiple emails with phone account information to establish that a person named Sim was in Dubai.

As with all other exhibits, to the extent any document in Exhibit 121 is admitted for a nonhearsay purpose, the Court shoulpd instruct the jury accordingly.

## CONCLUSION

The Court should grant Mr. Jin's motion.

Respectfully submitted,

By: /s/ Eugene Gorokhov
Eugene Gorokhov, Esq.
D.C. Bar No. 979785
Burnham & Gorokhov, PLLC
1634 I Street NW, Suite 575
Washington, D.C. 20006
(202) 386-6920 (phone)
(202) 765-2173 (fax)
eugene@burnhamgorokhov.com

## CERTIFICATE OF SERVICE

A copy of the foregoing motion was filed via ECF, which automatically sends a copy to all counsel of record.

Respectfully submitted,

By: /s/ Eugene Gorokhov
Eugene Gorokhov, Esq.
D.C. Bar No. 979785
Burnham & Gorokhov, PLLC
1634 I Street NW, Suite 575
Washington, D.C. 20006
(202) 386-6920 (phone)
(202) 765-2173 (fax)
eugene@burnhamgorokhov.com