UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | } | |
| | } | |
| | } | **Criminal No. 23-CR-91-CKK** |
| v. | } | |
| | } | |
| GUANGHUA JIN, | } | |
| | } | |
| Defendant. | } | |
| | } | |
| | } | |

## DEFENDANT'S MOTION TO ADMIT DEFENSE EVIDENCE

Mr. Jin respectfully moves the Court to rule that the defense exhibits identified in the

Table below is admissible at trial, and further provides notice to the government of his intention

to introduce these exhibits during cross-examination of the remaining government witnesses, or

during the defense's case.

### DEFENSE DOCUMENTS

| Exhibit No. | Description | Relevance | Admissibility |
|---|---|---|---|
| | | | |
| D-206 | Email series between Han and CTJ employees re: $220,000 payment from 3/26/2019 to 3/28/2019 | Explaining or providing context for conduct charged in the indictment. *See* Indict. ¶ 75. Effect on the hearer. | Non-hearsay |
| D-207 | Email from Han to P. Lyons on 3/28/2019 re: Shipment Help | Explaining or providing context for conduct charged in the indictment. *See* Indict. ¶ 75. Shows Han was asking about receipt of payment. | Non-hearsay |

| D-210 | Email from Han to P. Lyons on 4/17/2019 re: Runjob | Explaining or providing context for conduct charged in the indictment. *See* Indict. ¶ 75. Shows Han was asking about receipt of payment | Non-hearsay |
|---|---|---|---|
| D-204 | Email from Han to P. Lyons and CTJ employee dated 4/28/2019 re: Shipment | Explaining or providing context for conduct charged in the indictment. *See* Indict. ¶ 75. Shows Han asking about receipt of payment and stating his concerns (state of mind) regarding the lack of shipments. | Non-hearsay |
| D-205 | Email from Han to P. Lyons dated 5/6/209 re: Runjob | Explaining or providing context for conduct charged in the indictment. *See* Indict. ¶ 75. Shows Han asking about receipt of payment and stating his concerns regarding the lack of shipments. Shows Han's state of mind as to the applicability of US law, and shows Han's state of mind as to the reasons for following up regarding the frozen payment and lack of shipments. | Non-hearsay |
| D50 | Attachment to email dated 5/13/2019 (Letter from Winney Tobacco to CTJ re: Delay of Delivery) | Explaining or providing context for conduct charged in the indictment. *See* Indict. ¶ 75. Shows Winney's state of mind regarding the seriousness of the problem relating to CTJ's failure to ship tobacco. | Non-hearsay |
| D-239 | E-mail from Han to P. Lyons dated 7/19/2018 | Relevant to negotiation of the EAA. | Non-hearsay; state of mind exception |
| D-256 | E-mail from Han to P. Lyon on 7/23/2018 | Relevant to negotiation of the EAA. Shows open discussion of NK business among the parties, intent to formalize this in a contract, good faith. | Non-hearsay; state of mind exception |
| D-249 | E-mail from P. Lyons to Han on 8/3/2018 | Relevant to negotiation of the EAA. Shows open discussion of | Non-hearsay; state of mind exception |

| | | NK business among the parties, intent to formalize this in a contract, good faith.  Effect on the hearer. | |
| --- | --- | --- | --- |
| D-250 | E-mail from Han to P. Lyons on 8/7/2018 | Relevant to negotiation of the EAA. Shows open discussion of NK business among the parties, intent to formalize this in a contract, good faith.  Effect on the hearer. | Non-hearsay; state of mind exception |
| D-248 | E-mail from P. Lyons to Han on 8/9/2018 | Relevant to negotiation of the EAA.  Shows involvement of CTJ executives. Shows open discussion of NK business among the parties, intent to formalize this in a contract, good faith.  Effect on the hearer. | Non-hearsay; state of mind exception |
| D-242 | Email from P. Lyons to Han on 8/22/2018 | Relevant to negotiation of the EAA.  Shows involvement of CTJ executives. Shows open discussion of NK business among the parties, intent to formalize this in a contract, good faith.  Effect on the hearer. | Non-hearsay; state of mind exception |
| D-241 | Email from Han to P. Lyons on 8/27/2018 | Relevant to negotiation of the EAA. Shows open discussion of NK business among the parties, intent to formalize this in a contract, good faith.   Effect on the hearer. | Non-hearsay; state of mind exception |
| D-255S | E-mail from Han to P. Lyons on 8/30/2018 | Relevant to negotiation of the EAA. Shows open discussion of NK business among the parties, intent to formalize this in a contract, good faith.   Effect on the hearer. | Non-hearsay; state of mind exception |
| D-240S | Email from Han to P. Lyons on 9/3/2018. | Relevant to negotiation of the EAA.  Shows terms of proposed contract. | Non-hearsay; state of mind exception |

| D-252S | E-mail from Han to P. Lyons on 9/3/2018 | Relevant to negotiation of the EAA. Shows open discussion of NK business among the parties, intent to formalize this in a contract, good faith.  Effect on the hearer. | Non-hearsay; state of mind exception |
|---|---|---|---|
| D-243 | Email from P. Lyons to Han on 9/10/2018 | Relevant to negotiation of the EAA. Shows open discussion of NK business among the parties, intent to formalize this in a contract, good faith.  Effect on the hearer. | Non-hearsay; state of mind exception |
| D-251 | E-mail from Han to P. Lyons on 9/17/2018 | Relevant to negotiation of the EAA. Shows open discussion of NK business among the parties, intent to formalize this in a contract, good faith.  Effect on the hearer. | Non-hearsay; state of mind exception |
| D-247 | E-mail from P. Lyons to Anibal Carreras forwarding email from Han to P. Lyons on 9/27/2018 | Relevant to negotiation of the EAA.  Shows involvement of CTJ executives.  Shows open discussion of NK business among the parties, intent to formalize this in a contract, good faith.  Effect on the hearer. | Non-hearsay; state of mind exception |
| D-246 | Email from P. Lyons to Anibal Carreras forwarding email from Han to P. Lyons on 9/29/2018 | Relevant to negotiation of the EAA.  Shows involvement of CTJ executives. Shows open discussion of NK business among the parties, intent to formalize this in a contract, good faith. | Non-hearsay; state of mind exception |
| D-226 | E-mail from P. Lyons to CTJ executive dated 10/1/2018 | Relevant to negotiation of the EAA. Shows involvement of CTJ executives. | Non-hearsay; state of mind exception |
| D-431 | Translation of E-mail at D-226 | Relevant to negotiation of the EAA. Shows involvement of CTJ executives. | Non-hearsay; state of mind exception |
| D-257 | E-mail from P. Lyons to Han on 10/2/2018 | Relevant to negotiation of the EAA. Shows effect on the hearer as to involvement of CTJ | Non-hearsay; state of mind exception |

| | | lawyers.  Shows open discussion of NK business among the parties, intent to formalize this in a contract, good faith.  Shows parties' state of mind as to the current applicability of sanctions to the agreement in the contract. | |
|---|---|---|---|
| D-253S | E-mail from P. Lyons to Han on 10/5/2018 | Relevant to negotiation of the EAA. Shows involvement of CTJ lawyers.  Shows effect on the hearer as to involvement of CTJ lawyers.  Shows open discussion of NK business among the parties, intent to formalize this in a contract, good faith.  Shows parties' state of mind as to the current applicability of sanctions to the agreement in the contract. | Non-hearsay; state of mind exception |
| D-244 | Email from Han to P. Lyons on 10/8/2018 | Relevant to negotiation of the EAA. Shows open discussion of NK business among the parties, intent to formalize this in a contract, good faith.  Shows Han's belief that CTJ's lawyers were involved in reviewing contract regarding business with NK. | Non-hearsay; state of mind exception |
| D-227 | E-mail from Han to P. Lyons dated 10/11/2018 | Relevant to negotiation of the EAA. Shows involvement of CTJ lawyers. | Non-hearsay; state of mind exception |
| D-245 | Email from Han to P. Lyons on 10/18/2018 | Relevant to negotiation of the EAA.  Shows involvement of CTJ executives in negotiation of contract.  Shows open discussion of NK business among the parties, intent to formalize this in a contract, good faith. | Non-hearsay; state of mind exception |
| D-254S | E-mail from Han to P. Lyons on 11/27/2018 | Relevant to negotiation of the EAA. Shows open discussion of NK business among the parties, intent to formalize this in a contract, good faith. | Non-hearsay; state of mind exception |

| D-258 | E-mail from Han to P. Lyons on 12/6/2018 | Relevant to negotiation of the EAA. Shows open discussion of NK business among the parties, intent to formalize this in a contract, good faith. | Non-hearsay; state of mind exception |
|---|---|---|---|
| D-140 | DOJ fund freeze letter regarding CTJ to Standard Chartered Bank as to CTJ | Shows CTJ's bias and motive to curry favor with the government; shows CTJ's motive to conceal information the government would view as unfavorable. | Rule 801(d)(2)(D); Non-hearsay. |
| D-141 | DOJ fund freeze letter to JP Morgan as to CTJ | Shows CTJ's bias and motive to curry favor with the government; shows CTJ's motive to conceal information the government would view as unfavorable. | Rule 801(d)(2)(D); Non-hearsay. |
| D-142 | DOJ fund freeze letter to Deutsche Bank as to CTJ | Shows CTJ's bias and motive to curry favor with the government; shows CTJ's motive to conceal information the government would view as unfavorable. | Rule 801(d)(2)(D); Non-hearsay. |
| D-143 | DOJ entities of concern letter to Bank of America as to CTJ | Shows CTJ's bias and motive to curry favor with the government; shows CTJ's motive to conceal information the government would view as unfavorable. | Rule 801(d)(2)(D); Non-hearsay. |
| D-144 | DOJ entities of concern letter to Citibank as to CTJ | Shows CTJ's bias and motive to curry favor with the government; shows CTJ's motive to conceal information the government would view as unfavorable. | Rule 801(d)(2)(D); Non-hearsay. |
| D-145 | DOJ entities of concern letter to Deutsche Bank as CTJ | Shows CTJ's bias and motive to curry favor with the government; shows CTJ's motive to conceal information the government would view as unfavorable. | Rule 801(d)(2)(D); Non-hearsay. |
| D-146 | DOJ entities of concern letter to HSBC as to CTJ | Shows CTJ's bias and motive to curry favor with the government; shows CTJ's motive to conceal | Rule 801(d)(2)(D); Non-hearsay. |

| | | information the government would view as unfavorable. | |
|---|---|---|---|
| D-147 | DOJ entities of concern letter to JP Morgan Chase as to CTJ | Shows CTJ's bias and motive to curry favor with the government; shows CTJ's motive to conceal information the government would view as unfavorable. | Rule 801(d)(2)(D); Non-hearsay. |
| D-148 | DOJ entities of concern letter to Standard Chartered Bank as to CTJ | Shows CTJ's bias and motive to curry favor with the government; shows CTJ's motive to conceal information the government would view as unfavorable. | Rule 801(d)(2)(D); Non-hearsay. |
| D-149 | DOJ entities of concern letter to Wells Fargo as to CTJ | Shows CTJ's bias and motive to curry favor with the government; shows CTJ's motive to conceal information the government would view as unfavorable. | Rule 801(d)(2)(D); Non-hearsay. |
| D-150 | DOJ fund freeze letter to Standard Chartered Bank re CTJ | Shows CTJ's bias and motive to curry favor with the government; shows CTJ's motive to conceal information the government would view as unfavorable. | Rule 801(d)(2)(D); Non-hearsay. |
| D-30 | DOJ email to Standard Chartered Bank stating that CTJ is no longer an entity of concern | Shows benefits conferred on CTJ by the government | Rule 801(d)(2)(D); Non-hearsay. |
| D-31 | FBI/DOJ email to bank stating that CTJ is no longer an entity of concern | Shows benefits conferred on CTJ by the government | Rule 801(d)(2)(D); Non-hearsay. |
| D-32 | FBI/DOJ email to bank stating that CTJ is no longer an entity of concern | Shows benefits conferred on CTJ by the government | Rule 801(d)(2)(D); Non-hearsay. |
| D-33 | DOJ email to bank stating that CTJ is no longer an entity of concern | Shows benefits conferred on CTJ by the government | Rule 801(d)(2)(D); Non-hearsay. |

| D-127 | DOJ email to Wells Fargo stating that CTJ is no longer an entity of concern | Shows benefits conferred on CTJ by the government | Rule 801(d)(2)(D); Non-hearsay. |
|---|---|---|---|
| D-71 | DOJ safe passage letter to Fernando Bartoletti | Shows benefits conferred on CTJ by the government | Rule 801(d)(2)(D); Non-hearsay. |
| D-193 | DOJ Declination of Prosecution Letter to CTJ | Shows benefits conferred on CTJ by the government | Rule 801(d)(2)(D); Non-hearsay. |
| D-295 | Email from Partricio Lyons to James Han | Shows that CTJ employees communicated with Han by Whatsapp but the government did not obtain these communications | Non-hearsay |
| D-296 | Email from Partricio Lyons to James Han | Shows that CTJ employees communicated with Han by Whatsapp but the government did not obtain these communications | Non-hearsay |
| D-221 | Email from F. Bartoletti to Han on 4/11/2018 | Shows CTJ's business practices to explain payments by Winney. | Non-hearsay. Attachment is a business record |
| D-190 | Email dated 10/7/2018 from Han to Maxx-Logistics | Shows Winney's non-tobacco business and intent to expand to other markets. | Non-hearsay |
| D-319 | Emails between Han and Oriental Group Fze from 5/17/2018 to 5/31/2018 | Shows Winney's non-tobacco business and intent to expand to other markets. | Non-hearsay |

**ARGUMENT**

**I.    THE PROFERRED EVIDENCE IS RELEVANTD**

All of the documents sought to be admitted are documents the government has produced to the defense during discovery.  The documents can be broadly separated into five groups.

## A. E-mails relating to blocked $220,000 payment

The first group of emails relates to paragraph 75 of the Indictment, which describes a May 5, 2019 email from Mr. Han to CTJ employees, and alleges that Mr. Han "discussed how to avoid U.S. financial institution due diligence" with CTJ employees in that e-mail. The May 5, 2019 emails at issue arise out of a blocked $220,000 payment from Winney to CTJ. Because the funds had been blocked, CTJ had paused delivery of tobacco for almost two months. In the May 5, 2019 email, Mr. Han essentially asked CTJ to cooperate with the bank inquiry and share information with Winney, so that the transaction can be quickly unblocked, and CTJ can resume delivery. The emails proffered by the defense provide context for Mr. Han's statements in the May 5, 2019 email.

D-206 provides background context for the May 5, 2019 email. It shows that the first time Winney learned about any issues relating to the $220,000 payment was on March 28, 2019. *See* D-206 at 2 (E-mail from P. Lyons to Han stating "[w]ith respect to the prepayment of the 220,000 dollars, I inform you that we do not receive it yet."). D-207 and D-210 show that over the next several days, Mr. Han continued to ask CTJ for updates about the $220,000. D-232 shows that at some point in April, 2019, Mr. Han learned that the funds had been blocked, and offered CTJ assistance in getting the funds released. D-204 and D-205 show that, as time went on, Mr. Han became concerned about CTJ's failure to deliver tobacco, and repeatedly asked CTJ to resume delivery while the payment issue was being resolved. D-205 also shows that Mr. Han did not believe the payment block to have any relation to U.S. law. D-50 then shows that by May 13, 2019, Winney had become so concerned by CTJ's failure to deliver the tobacco (which Winney had already paid for) that Winney threatened CTJ with legal action. Together, the foregoing e-

mails provide context and background for the jury to evaluate whether Mr. Han was in fact discussing how to "avoid" a bank's due diligence.

The second group of emails relate to the negotiation of an Exclusive Agency Agreement ("EAA"). The background to this agreement has been described in some detail in the Defendant's Second Motion to Dismiss, and the Court is undoubtedly familiar with it. *See* ECF No. 181. From July 2018 to December 2018, Winney and CTJ was engaged in protracted negotiations over an Exclusive Agency Agreement which contemplated that Winney would act as CTJ's exclusive distributor in North Korea. The negotiations involved CTJ's lawyers and board of directors, and CTJ generally agreed with the terms proposed, except as to quantity. During negotiations, CTJ also proposed, and Winney agreed, to an amendment that would have relieved CTJ of its obligations if the sale of tobacco to North Korea became prohibited under international sanctions. Thus, the amendment showed that at the time of the negotiations, Winney did not believe that sanctions on North Korea prohibited the sale of tobacco. This is important to the *mens rea* of all charged offenses, because, if Winney believed that the sale of tobacco was legal, then it would have had no reason to think that the use of wire transfers to support these legal transactions would violate U.S. law, defraud banks, or constitute money laundering.

The third category of documents are related to the bias and credibility of CTJ and the anticipated witness, Mr. Fernando Bartoletti. These documents show that CTJ was under significant financial distress when it first approached the government because the government had sent letters to various major banks that, essentially, caused the banks to add CTJ to their internal watchlists, thereby making it impossible for CTJ to use or receive money. *See* D-140 through D-150. Shortly after CTJ began cooperating, the government then sent various letters or emails to banks instructing the banks to remove CTJ from their watchlists, which was a significant benefit

conferred on CTJ.  Later, in 2022, the government issued a formal declination of prosecution letter to CTJ, and also granted Mr. Bartoletti safe passage to testify before the grand jury.  These constitute significant benefits received by CTJ from the government.

The fourth category of documents are offered to show certain practices or habits, which in turn are relevant to other issues.  D-295 and D-296 are documents offered to show the forms of communication that Winney and CTJ used goes to the question of whether the government has obtained a complete picture of the activities by Winney employees. D-221 is offered to show that Winney made prepayments for regular delivery of tobacco, and CTJ kept a ledger of Winney's payments from which it deducted the value of shipments.  This then provides context for the jurors to assess whether "surges" in payment or "large, round numbers" in wire transactions are indicative of criminal activity–as a government witness has claimed.

The fifth and final category of documents are offered to show that Winney was engaged in business unrelated to the procurement of tobacco for Naegohyang.  D-190 shows that Winney was engaged in the business of producing cigarettes under its own brand.  D-319 shows that Winney was trying to sell electronic smoking devices in the UAE.  The fact that Winney was engaged in these separate business activities is relevant.  The government alleges that business documents, wire transfer instructions, and shipping records are false because they concealed the true counterparty to the transaction (i.e., Naegohayng).  Determining whether Naegohyang or Winney is the true counter party to a purchase in turn requires the jury to assess whether Winney was in fact operating as a legitimate business, or merely a conduit through which North Korean companies purchased goods.

## II.     THE PROFFERED EVIDENCE IS NOT BARRED BY THE HEARSAY RULE

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. The proffered evidence is not barred by the hearsay rule.

The D.C. Circuit and this Court has repeatedly permitted the use of out of court statements to show a person's knowledge and belief, sometimes also called "the effect on the listener." *See Fed. Election Comm'n v. Lego-Tech, Inc.*, 967 F.Supp. 523, 526 n.3 (D.D.C. 1997)(statements during a meeting are admissible to prove that the defendant believed the other party acted the way it said it did.); *Ransom v. Ctr. for Nonprofit Advancement*, 514 F.Supp.2d 18, 27 n.7 (D.D.C. 2007) (admitting complaints made to the defendant about the plaintiff to show that defendant had legitimate reason to fire plaintiff); *Miller v. Holzmann*, 563 F.Supp.2d 54, 86 (D.D.C. 2008), *aff'd in part sub nom. U.S. ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 608 F.3d 871 (D.C. Cir. 2010)("Testimony as to what someone told the relator was not hearsay, because it was admitted to show why he had raised concerns."); *Royall v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 507 F.Supp.2d 93, 98 n.10 (D.D.C. 2007) (citing authority), *aff'd*, 548 F.3d 137 (D.C. Cir. 2008); *Moore v. Hartman*, 102 F.Supp.3d 35, 147 (D.D.C. 2015) (citing *United States v. Sesay*, 313 F.3d 591, 598-99 (D.C. Cir. 2002) ("[O]ut-of-court statements may be admissible when offered not for the truth of the matter asserted but to show the effect on the state of mind of the listener."), *appeal dismissed*, 2015 WL 6153963 (D.C. Cir. Sept. 8, 2015).

Responses to questions or inquiries are admissible under similar reasoning. Statements by Winney could be admitted to show knowledge. *See, e.g.*, *Stalbosky v. Belew*, 205 F.3d 890, 895 (6th Cir. 2000) ("Boggs's statements are also not hearsay because they were not offered to prove the truth of the matter asserted—that Belew had served time in prison or fought with former girlfriends—but solely to prove that Sonny Crutcher was aware of Belew's history."); *United States v. Jones*, 839 F.2d 1041, 1051-52 (5th Cir. 1988) (affirming admission of statements to prove

12

defendants' awareness of the conspiracy). Introducing a party's own statements to prove ignorance is rarer, but it is permissible. *See United States v. Webster*, 750 F.2d 307, 330-31 (5th Cir. 1984) (statement wasn't hearsay when it was introduced to show that defendant did not know property to be stolen). Furthermore, it is not hearsay to "ask[] questions without asserting the truth of any matters." *United States v. Safavian*, 435 F. Supp. 2d 36, 44 (D.D.C. 2006) (citing authority).

Concerns about the timely delivery of tobacco should be admissible as "statement[s] of the declarant's then-existing state of mind ... or emotional, sensory, or physical condition." Fed. R. Evid. 803(3); *see Queen v. Schultz*, 671 F. App'x. 812, 815-16 (D.C. Cir. 2016) (affirming admission of emails solely to demonstrate state of mind); *United States v. Sutton*, 706 F. Supp. 3d 1, 59 (D.D.C. 2023) (" Because these statements ... were admitted foundationally to explain why each agent took certain actions – and not for their truth – they are not hearsay."). That is true even if the statement consists of an explicit statement of concern. *See United States v. Brown*, 490 F.2d 758, 762-63 (D.C Cir. 1973). A warning that a supervisor intended to eliminate someone's role was admitted to show why that person thought talking to the supervisor would do more harm than good. *Whitbeck v. Vital Signs, Inc.*, 159 F.3d 1369, 1374 (D.C. Cir. 1998). A direction to "tell the truth" was admissible to show that the defendant did not believe he had done anything wrong. *United States v. Hayes*, 369 F.3d 564, 568 (D.C. Cir. 2004).

Finally, statements are also not offered for the truth of the matter asserted when it is offered to simply provide context for later statements that are in evidence. *See United States v. Moore*, Crim. No. 18-198 (JEB), 2021 WL 1966570, at *5 (D.D.C. May 17, 2021) (citing authority); *see also United States v. Gatling*, 96 F.3d 1511, 1524 (D.C. Cir. 1996) ("The district court's second justification for admitting the statements, that they were offered simply to provide background for the rest of the witnesses' testimony, is valid.").

## CONCLUSION

The court should grant this motion and rule that the defense exhibits identified in the table to this motion are admissible.

Respectfully submitted,

By: /s/ Eugene Gorokhov
Eugene Gorokhov, Esq.
D.C. Bar No. 979785
Burnham & Gorokhov, PLLC
1634 I Street NW, Suite 575
Washington, D.C. 20006
(202) 386-6920 (phone)
(202) 765-2173 (fax)
eugene@burnhamgorokhov.com

14

**CERTIFICATE OF SERVICE**

A copy of the foregoing motion was filed via ECF, which automatically sends a copy to

all counsel of record.

Respectfully submitted,

By: /s/ Eugene Gorokhov
Eugene Gorokhov, Esq.
D.C. Bar No. 979785
Burnham & Gorokhov, PLLC
1634 I Street NW, Suite 575
Washington, D.C. 20006
(202) 386-6920 (phone)
(202) 765-2173 (fax)
eugene@burnhamgorokhov.com