UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

JIN GUANGHUA,

    Defendant.

Criminal Action No. 23-91-2 (CKK)

**MEMORANDUM OPINION**
(September 26, 2025)

On July 1, 2025, the Government filed a Motion *in Limine* regarding the procedure for admitting co-conspirator statements at trial. Gov't's Mot., ECF No. 101. Specifically, the Government requested that the Court allow the introduction of co-conspirator statements at trial "subject to connection." *Id*. at 1. Jin objected to this procedure. Def.'s Opp'n, ECF No. 116. On August 22, 2025, the Court, in line with Circuit precedent and District practice, granted the Government's motion to admit co-conspirator statements subject to connection. Mem. Op. & Order, ECF No. 152 at 5–6.

The Government rested its case on September 24, 2025. During its case, the Government introduced a variety of statements that required a hearsay exception or exclusion for admission. The Government now proffers that some of the statements it introduced at trial are admissible under Federal Rule of Evidence 801(d)(2)(E) as statements of co-conspirators. Accordingly, the Court must determine whether the Government met its burden of 'connecting' the conspiracy at trial. "If the connection is not proven, the court must either strike the testimony and instruct the jury to disregard it, or, if that is not enough protection, must grant a mistrial." *United States v. White*, 116 F.3d 903, 915 (D.C. Cir. 1997).

1

To determine whether the Government has met its burden of connection, the Court "must determine whether the [Government] has introduced sufficient independent evidence of the existence of the conspiracy and of [Jin's] participation therein that the hearsay statements of his co-conspirators may be admitted against the defendant as equivalent to his own admissions." *United States v. Jackson*, 627 F.2d 1198, 1219 (D.C. Cir. 1980).  As it relates to this case, the Court must determine whether the Government has proven the existence of, and Jin's participation in, a conspiracy to violate U.S. sanctions, commit bank fraud, and commit money laundering.  The existence of the conspiracy and Jin's participation "must be proved by substantial independent evidence."  *Jackson*, 627 F.2d at 1219.

The Court concludes that the Government has introduced "substantial independent evidence" sufficient to support the existence of a conspiracy and Jin's participation therein. *Jackson*, 627 F.2d at 1219.  Five categories of evidence led the Court to this conclusion, each of which will be summarized below.

*First*, the Government admitted emails and attachments recovered from two email accounts linked to Jin's co-defendant Han Linlin.  This evidence supports a finding that that Han was a manager of the Winney businesses and served in a subordinate role to Jin and Jin's co-defendant Qin Guoming.  This evidence also suggests that Han facilitated business on behalf of Winney, including with North Korean entities and Cooperativa de Tabacaleros de Jujuy ("CTJ").  The *second*, and related, category consists of independent evidence regarding Jin's co-defendant Qin Guoming.  Independent evidence shows that Jin and Qin were the two equal shareholders of the Winney businesses.  Furthermore, this evidence involved instances of Han, mentioned above, sending the personal documents of both Jin and Qin.

The *third* category of independent evidence that supports the existence of a conspiracy is made up of evidence recovered from an email account connected to Jin and statements made by Jin. This evidence shows that Jin was the "General Manager" of the Winney businesses. This evidence also included emails from Winney employees reporting significant details about the weekly operations of the business to Jin. For instance, there were reports about specific transactions with the North Korean company Naegohyang Tobacco Joint Venture Company, as well as progress reports that mentioned difficulties in trading with North Korea and international sanctions. Jin also received emails relating to transactions with North Korean banks. Finally, this independent evidence revealed that Jin conducted numerous internet searches and accessed numerous internet articles related to U.S. sanctions against North Korea.

*Fourth*, independent evidence recovered from email accounts and iCloud accounts linked to co-defendant Sim Hyon-Sop support finding a connection between Sim Hyon-Sop, the Foreign Trade Bank, and the Winney businesses—of which Jin was the general manager. This evidence shows that Sim was a North Korean national working for the Foreign Trade Bank during the course of the conspiracy. It also included instances of Sim using coded language to have payments made to Winney for goods Winney sold to the Naegohyang Tobacco Joint Venture Company. Furthermore, this evidence suggested that Sim was aware of and involved in the $220,000 payment to CTJ in March 2019. Finally, this evidence shows that Sim maintained a ledger that contained multiple payments to two different Winney entities in U.S. Dollars.

The *fifth* and final source of independent evidence comes from the undercover operation. During the undercover operation, Han stated that Winney had previously made payments to CTJ using other company names. This evidence also shows that, when the undercover agents suggested to Han that Winney pay a bribe, Han said he would have to discuss it with his "boss;" about a

3

month later, Han sent undercover agents the "personal email" of his "boss," which was the aforementioned email connected to Jin. Finally, this evidence shows that Jin flew to Argentina and met with CTJ representatives and undercover agents to resolve payment issues.

As summarized above, the evidence from these five categories, taken together, provides "substantial independent evidence" sufficient to find the existence of a conspiracy. *Jackson*, 627 F.2d at 1219. Furthermore, this evidence is sufficient to establish Jin's participation in that conspiracy. Accordingly, the record would support a finding that certain hearsay statements admitted at trial under separate hearsay exceptions or exclusions could also be admitted as statements of co-conspirators under Federal Rule of Evidence 801(d)(2)(E).

**Dated: September 26, 2025**

_____
COLLEEN KOLLAR-KOTELLY
United States District Judge