IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 23CR91-CKK |
| | ) | |
| GUANGHUA JIN. | ) | |

**DEFENDANT'S SECOND MOTION TO DISMISS WITH PREJUDICE
FOR VIOLATION OF HIS SIXTH AMENDMENT SPEEDY TRIAL RIGHT**

Guanghua Jin, through counsel, and pursuant to the Sixth Amendment to the United States Constitution, hereby again moves to dismiss the indictment for violation of his right to a speedy trial.

## BACKGROUND

Since Mr. Jin was indicted almost three years ago, on March 21, 2023, his life has been turned upside down. Mr. Jin was arrested in Australia, where he was a lawful resident, the same day he was indicted. On May 11, 2023, the government formally requested Mr. Jin's extradition. After a period of delay relating to the extradition proceedings, on information and belief, Mr. Jin agreed to surrender to the custody of the United States on or about August 4, 2023. However, Mr. Jin was not actually arrested by the United States Marshals Service, and transferred to the United States to face the pending indictment, until over a year later, on or about September 30, 2024. ECF 25–Executed Arrest Warrant.

Soon after his initial appearance before this Court, Mr. Jin began asserting his right to a speedy trial. *See* Minute Entry of December 6, 2024 Hearing (where Mr. Jin asserted his right to a speedy trial and objected to further ends-of-justice continuances) & ECF 34 (Response in Opposition to Gov't Motion to Toll). The government sought to delay Mr. Jin's trial until September 2025, nearly a year after he had been brought from Australia to the United States.

1

ECF 33 (Gov't Motion to Toll Speedy Trial). Even though the government had indicted Mr. Jin in March of 2023, and was involved in efforts to bring him to the United States, it evidently made no plans to prepare the case for a prompt trial once he arrived in the United States. Instead, it sought to delay the trial for nearly a year so it could prepare. ECF 33.

When the Court denied his request for a speedy trial and set this matter for a speedy trial in December of 2025, Mr. Jin filed a motion to dismiss the indictment. ECF 44 (Motion to Dismiss for Violation of Sixth Amendment Speedy Trial Right); ECF 67 (Gov't Opposition); ECF 74 (Reply). The Court denied that motion. ECF 98 (Memorandum Opinion and Order).

Mr. Jin's case proceeded to trial in September 2025. The jury could not reach a verdict on any of the charged counts, and a mistrial was declared on October 8, 2025. The parties subsequently engaged in negotiations to resolve the case, but on December 12, 2025, informed the Court that they could not reach a resolution in this matter. On December 19, 2025, a new set of prosecutors entered their appearances for the government, and two of the government's prior counsel subsequently withdrew their appearances. ECF 259, 260, 262, 263. Government counsel have now again sought to delay the trial over Mr. Jin's objection, taking the position that the Court should not set trial to commence until March 2026 because new government counsel need additional time to prepare and secure witnesses.

For all of the reasons discussed below, in addition to those that Mr. Jin has already set forth in his first motion to dismiss for violations of his Sixth Amendment speedy trial right, the Court must dismiss the indictment with prejudice.

**ARGUMENT**

The Sixth Amendment guarantees that "the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. "[T]he Sixth Amendment's guarantee of a speedy trial 'is an

2

important safeguard to … minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself.'" *United States v. Loud Hawk*, 474 U.S. 302, 312 (1985) (quoting *United States* v. *Ewell*, 383 U.S. 116, 120 (1966)).

Once a Sixth Amendment violation is established, dismissal of the charge is "the only possible remedy." *Strunk v. United States*, 412 U.S. 434, 439–40 (1973) (quoting *Barker v. Wingo*, 407 U.S. 514, 539 (1972)). To determine whether a defendant's speedy trial right has been violated, courts consider four factors: the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. *United States v. Woolfolk*, 399 F.3d 590, 597 (4th Cir. 2005) (citing *Doggett. v. United States*, 505 U.S. 647, 655 (1992) (applying the "*Barker* factors"). These factors weigh in favor of dismissal.

### I.   THE LENGTH OF DELAY.

If Mr. Jin's trial occurs in March of 2026, as the government wants, then the length of delay between his indictment and trial will be fully three years. Regardless, whether Mr. Jin's trial occurs at the end of this month, or in March, the length of delay is substantial. *United States v. Bikundi*, 926 F.3d 761, 779 (D.C. Cir. 2019) ("Generally, a delay of one year is presumptively prejudicial.") (citing *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992)).

The Court previously found that the length of delay of 2 ½ years between his indictment and his first trial was already substantial and sufficient to trigger the Sixth Amendment speedy trial analysis. ECF 98 at 4. Mr. Jin agrees. And while the Court found that the period of delay to the prior trial weighed "slightly" in Mr. Jin's favor, Mr. Jin respectfully submits that the period of delay of three years–when taking into account that the government apparently did not need a

lengthy delay prior to the first trial, should weigh heavily in his favor. We address this factor next.

## II.   THE REASON FOR DELAY.

In its June 27, 2025 Order denying Mr. Jin's motion to dismiss for violations of his speedy trial right, the Court made findings regarding the delay attributable to the government and other parties relating to the extradition proceedings in this case. As to the delay attributable to the government, the Court found:

> Of the 339 days attributable to the Government, 98 days of delays resulted from the Government's diligent compliance with its obligations under the Extradition Treaty, and the remaining 241 days of delay were justified at length by a Memorandum Opinion and Order of this Court.

ECF 98 at 7. We do not concede that the Court fully accounted for the time attributable to the government, and maintain the position as set forth in Mr. Jin's initial motion to dismiss. ECF 44. However, for purposes of this argument, we focus our analysis on two periods of delay: (1) the 241 days that the Court previously found were justified, and (2) the delay between Mr. Jin's mistrial and the present time.

### A. Post-Indictment Delay Caused by the Government.

The first part of this period concerns the lead-up to Mr. Jin's first trial, after his invocation of his speedy trial right in December 2024. The government argued that a delay from December 2024 until the September 2025 trial was necessary due to the complexity of the case. Notably, the government made this argument over the objection of Mr. Jin, who sought a speedy trial. Still, the Court ruled in favor of the government. ECF 35 (Court's Order excluding time under 18 U.S.C. § 3161(h)(7)(C) ends-of-justice exception). And in denying Mr. Jin's Sixth Amendment speedy trial claim, the Court referred in its Order to another order where it addressed the complexity of the case under the Speedy Trial Act. ECF 98 at 7 (citing ECF 35 at

4

3-6). It is now clear that the government never needed the extension from December 2024 to September 2025, and this period of time must therefore be weighed heavily against the government and in favor of dismissal under the Sixth Amendment.

As a starting point, this case is unlike the typical case where the government's time for trial preparation begins with the defendant's initial appearance. Here, Mr. Jin was detained pending extradition for **18 months** before he appeared in this Court. During that time, the government undoubtedly could have began preparations for trial with the expectation that Mr. Jin would be brought to the United States. After all, this is not a case where the question of Mr. Jin's extradition to the United States was ever in doubt. Thus, the government could have reasonably anticipated that, as soon as Mr. Jin was brought to the United States, there was a possibility of trial.

Statedly differently, by the time of Mr. Jin's initial appearance, the government already had 18 months to prepare for the first trial. It bears the burden to prove that an additional extension to September 2025 was necessary. *United States v. Fernandes*, 618 F. Supp. 2d 62, 72 (D.D.C. 2009) ("the burden of providing a speedy trial lies with the government, not the defendant. The prosecution therefore must explain the reason for any lengthy pre-trial delay . . . which it has not sufficiently done here. On these facts, then, the Court cannot conclude that the government has carried its burden on the essential cause-of-delay factor. Hence, the second factor—the flag all litigants seek to capture . . . weighs in favor of defendant) (internal citations and quotation marks omitted); *United States v. New Buffalo Amusement Corp.*, 600 F.2d 368, 377 (2d Cir. 1979) ("the burden is upon the government to prove that the delay was justified and that [the defendant's] speedy trial rights were not violated."). Even where delay is based on negligence, it weighs "against the government because 'the ultimate responsibility for such

circumstances must rest with the government rather than with the defendant.'" *United States v. Black*, 918 F.3d 243, 260 (2d Cir. 2019) (quoting *Barker*, 407 U.S. at 531). The government cannot do so.

Instead of taking all necessary steps to prepare this case for a prompt trial upon Mr. Jin's extradition to the United States, the government squandered that period of time. And after he was extradited to the US and the government obtained a lengthy continuance over his objection, the government continued its pattern of neglect. Some examples of the government's neglect, apparent from the record, are the following:

- The government claimed that a delay was necessary because "the government may need to go through the Mutual Legal Assistance Treaty (MLAT) process to secure the presence of these foreign witnesses and/or move under Fed. R. Crim P. 15 to conduct a video deposition." ECF 33 at 2. But there is no evidence the government ever did this. In fact, the only foreign witness to appear on behalf of the government, Fernando Bartoletti, testified that he appeared purely voluntarily.

- The government could have secured translations of the undercover investigation while Mr. Jin was awaiting extradition, but chose to wait until just months before trial. ECF 33 at 2; ECF 162 (Defense Motion to Compel Production of Evidence Relating to the Translations, Compel Testimony of Translators, and for an Evidentiary Hearing) (detailing dates of preparation of various versions of transcripts, in the summer of 2025). Even after the transcripts were completed, the government waited to produce these transcripts until shortly before trial, causing significant litigation over their admissibility.

- The government repeatedly produced additional discovery well after discovery deadlines. Some four months after Mr. Jin invoked his right to a speedy trial, and after representing that it had produced complete discovery, the government produced *67 more spreadsheets and pdfs* with financial records from nine different U.S. financial institutions. ECF 76 at 2. ECF 33 at 2. The records were not newly acquired evidence, but have been in the government's possession since the start.

- In February 2025, some six months after Mr. Jin was in the United States, the government represented that it had turned over all of the Rule 16 materials. Two months later, on April 7, 2025, the government produced to the defense ***close to 10,000 new documents***, including among them email communications described in the indictment. ECF 33 at 2.

- The government did not produced communications between CTJ, the undercover agents, and the charged defendants by the March 6, 2025 Rule 16 deadline. ECF 33 at 2. Apparently the government did not even begin searching for these documents until March

6

5, 2025, some seven months after Mr. Jin was already in the US, and 25 months since his indictment.

- The government did not learn that one of the co-defendants applied for an OFAC license in relation to this case until January 30, 2025. When the government learned this fact, it waited two months to disclose the fact to the defense, on March 25, 2025. ECF 33 at 2-3. This disclosure came weeks after the Court's deadline for Rule 16 disclosures, and did not comply with Local Criminal Rule 5.1's requirement that *Brady* information should be disclosed "as soon as reasonably possible after its existence is known." This again demonstrates that the government wasted 18 months prior to Mr. Jin's extradition, and then continued to engage in neglect during the lengthy delay awarded to it by the Court.

The foregoing examples, which are far from all of the evidence of the government's neglect in this case, leave no doubt that the government was not entitled to a continuance of any significant length–let alone one from December 2024 to September 2025–that it obtained over Mr. Jin's objection. The government's failure to efficiently manage this case despite the ample time for preparation means that any additional delay after Mr. Jin's arrival should weigh heavily against the government. *See Black*, 918 F.3d at 261 (concluding that five-month delay arising from government's "failure to efficiently manage its case" resulting in the misplacement of important evidence was "particularly egregious" and weighed against the government).

Now, let us consider the government's pattern of neglect in the context of this Court's finding that an ends-of-justice continuance was necessary under the STA, which it used to support its later finding that the reason for delay weighs in favor of the government. *See* ECF 98 at 7 (citing ECF 35 at 3-6).

First, the Court cited the nature and complexity of the case. Yet, Mr. Jin did not seek a delay for these reasons, the government did. ECF 35 at 3. But as shown above, the government procrastinated, and neglected the case for much of the period of delay. Indeed, the government never would have needed the delay if it had been diligent in its preparation for trial during Mr. Jin's 18-month incarceration in Australia.

7

Second, the Court relied on the fact that the case would involve classified information that required a motion pursuant to CIPA. ECF 35 at 4. The government did in fact file such motion, and a supplement, *ex parte*, and these were swiftly granted. There is no reason why these motions could not have been filed and granted in the 18 months between Mr. Jin's arrest and extradition, or promptly upon his arrival in the US.

Third, the Court relied on the nature and volume of discovery in this case. ECF 35 at 4. As already discussed, the government had ample time between Mr. Jin's arrest and extradition to do all it needed to do to organize and provide all the discovery for his timely review and trial preparation, but the government instead neglected the case and then scrambled to search for documents to belatedly produce to the defense.

Fourth, the court relied on the prevalence of foreign languages in the case, and the additional time needed for translation. ECF 35 at 4. But as demonstrated above, the government had 18 months to complete all of its translations. This makes the case distinguishable from the typical case. And instead of using those 18 months to complete all translations, the government waited until long after Mr. Jin was in the US, and in some cases until the eve of trial, to obtain translations of documents it possessed for years on end.

Finally, the Court overruled Mr. Jin's own assessment about the time needed for trial and instead ruled in favor of the government. ECF 35 at 6. The Court cited the provision of discovery on a "rolling basis"--which is both at odds with the government's prior claim that discovery was complete, and unnecessary given that the government had 18 months to prepare all discovery such that a "rolling" production would not have been needed. *Id*. Yet, as detailed above, it became apparent throughout this case that the government provided a rolling production due to its own neglect during the many months that Mr. Jin's extradition was in progress.

Notably, while there were extensive pretrial motions filed in this case, many of the motions were occasioned by the government to promptly and completely comply with its disclosure obligations. Had the government diligently prepared for trial, these motions would not have been necessary.

Because the Court relied on the STA ends-of-justice analysis to justify a large bulk of the delay caused by the government, cases addressing the government's neglect under this provision are particularly instructive here. Those cases recognize that where the government seeks an ends-of-justice exception, but then fails to proceed with diligence, it should not benefit from the delay. *See, e.g.*, *United States v. Graham*, 2022 WL 2873876, at *4 & n.8 (W.D.N.Y. May 2, 2022) (determining "retroactively, that a previously granted interest of justice exclusion of STA time no longer applie[d]" because the exclusion of time was granted to allow the government to produce discovery and the government failed to produce that discovery by the deadline imposed by the court), *report and recommendation adopted*, 2022 WL 2872652 (W.D.N.Y. July 21, 2022); *United States v. Morgan*, 493 F. Supp. 3d 171, 206–07 & n.25 (W.D.N.Y. 2020) (including time previously excluded under an ends-of-justice continuance when it became apparent that the government failed to comply with its discovery obligations during the relevant period of time); *see also United States v. Murray*, 771 F.2d 1324, 1327 (9th Cir. 1985) (noting that if the proffered bases for the government's STA exclusion are not true the government "may suffer the sanction of retroactive revocation by the trial judge of the time extension previously granted."); *Cf. United States v. Dog Taking Gun*, 7 F. Supp. 2d 1118, 1120, 1122 (D. Mont. 1998) (declining to exclude time under the STA where the government failed to produce certain DNA-testing evidence in compliance with the court's pretrial order);. *United States v. Garcia–Cardenas*, No. 16-cr-22, 2016 WL 6092695, at *1 (D. Mont. Oct. 18, 2016) (where the

9

government failed to timely produce lab reports, court found that "the late production was not done in bad faith and instead found that this evidence was negligently produced due to the AUSA's unfamiliarity with fingerprint evidence" but found that that the resulting delay could not be excluded under the STA because "time cannot be excluded under [the STA] due to 'lack of diligent preparation . . . on the part of the attorney for the Government.'") (citing 18 U.S.C. § 3161(h)(7)(C)).

By the same logic, while this Court previously granted the government the delay that it sought, and found that the reasons for it weighed in favor of the government, the Court should not ignore the mountain of evidence that now makes clear this delay was entirely unnecessary. Accordingly, this Court should find that the post-extradition delay weighs heavily in favor of Mr. Jin.

### B. Post-Trial Delay.

The second period of delay that must be considered, and weighs against the government, is the period since a mistrial was declared in this case. While it is true that the parties pursued plea negotiations between October 16 and December 12, 2025, the government was always aware that a retrial was a realistic possibility. After all, Mr. Jin had already rejected a plea offer in the past and chose to go to trial. Thus, the fact that the parties were negotiating a plea does not mean the government can abandon trial preparation.

Yet some two months after the mistrial, while knowing that a retrial may be needed, prior counsel withdrew from the case and two new attorneys entered their appearances. During that time, the government also does not appear to have made any efforts to secure witnesses for a retrial. While the government has the right to choose the attorneys that will represent it, it should

10

not come at the cost of Mr. Jin's right to a speedy trial. The delay that the government now seeks must therefore weigh heavily against the government.

### III. THE ASSERTION OF THE SPEEDY TRIAL RIGHT.

In its June 27, 2025 order, the Court found that

On one hand, more than three-quarters of the delay in bringing Jin to trial occurred before Jin asserted his right. On the other hand, Jin promptly asserted that right after retaining his current counsel and much of the preceding delay was attributable to Australian proceedings during which his ability to demand expedition is uncertain. The Court concludes that this factor favors neither party.

We respectfully submit that, whatever the state of the record at the time of the Court's ruling, it is now clear that Mr. Jin's assertion of his right must weigh heavily against the government. First, as to his time in Australia, it is not clear that Mr. Jin had the ability to assert his speedy trial right. Yet, soon after his appearance in the United States, he asserted his speedy trial right by demanding a trial within the Speedy Trial Act. ECF 34 (Defendant's Opposition to Tolling under the Speedy Trial Act). Mr. Jin then filed a motion to dismiss for violations of his Sixth Amendment speedy trial rights. ECF 44. Mr. Jin has steadfastly maintained his right to a speedy trial, with the exception of two months between mid-October and mid-December, 2025 during plea negotiations. In the lead-up to his September trial, when the government sought delays of the trial, Mr. Jin opposed these delays under his Sixth Amendment speedy trial right.

Further, Mr. Jin's assertion of his speedy trial right has occurred in the face of the government's repeated requests for significant delays, during which the government failed to be diligent in bringing the case to trial. *Black*, 918 F.3d at 263 ("We have previously noted that this inquiry is a fluid one that concerns itself with whether the government and the court were 'put on notice' that a defendant has asserted his right to a speedy trial"). On this record, Mr. Jin's repeated–albeit failed–efforts to receive a speedy trial must weigh heavily in his favor.

### IV.   PREJUDICE.

11

In its prior order, this Court concluded that the prejudice to Mr. Jin from -being incarcerated for 2 ½ years weighs only slightly in his favor because he did not identify any "'specific prejudice to his defense' resulting from that detention or from the delay in his trial" and "the Government pursued Jin's extradition with reasonable diligence." ECF 98 at 9. On the current record, the prejudice to Mr. Jin is far more significant than previously acknowledged by the Court, for at least three reasons. First, Mr. Jin has now been incarcerated in restrictive pretrial conditions, unable to see his family, for a period of nearly three years. He has faced extreme uncertainty regarding his freedom, his future, and his family. Courts have made clear that the impairment of a defense is not the test for prejudice, nor a requirement to prove substantial prejudice. Courts "'assess the prejudice to criminal defendants in the light of the interests . . . the speedy trial right was designed to protect—namely, (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *United States v. Black*, 918 F.3d 243, 264 (2d Cir. 2019) (quoting *Doggett v. United States*, 505 U.S. 647, 655 (1992)). "[A]ffirmative proof of particularized prejudice is not essential to every speedy trial claim." *Doggett,* 505 U.S. at 655. We respectfully submit that Mr. Jin's incarceration and lack of contact with his family for a period of three years simply cannot be written off as "only slight" prejudice.

Second, the Supreme Court has squarely rejected the notion that a court should doubt there is significant prejudice to Mr. Jin's defense because, over six years after the offense conduct at issue, he cannot point to it with specificity:

> affirmative proof of particularized prejudice is not essential to every speedy trial claim. *Barker* explicitly recognized that impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony can rarely be shown. And though time can tilt the case against either side, one cannot generally be sure which of them it has prejudiced more severely. Thus, we

> generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria, it is part of the mix of relevant facts, and its importance increases with the length of delay.

*Doggett v. United States*, 505 U.S. at 655–56 (cleaned up). Indeed, some of the reasons this Court relied on to grant the government a lengthy delay–the complexity of the case, the volume of documents, the period of the conduct, the number of entities involved–are all factors that would tend to degrade the reliability of exculpatory evidence, memories, and other factors critical to an effective defense.

Finally, while the Court relied on the government's "reasonable diligence" with respect to extradition to find that there was only "slight" prejudice to Mr. Jin, it is now apparent that the government's efforts to bring this case to trial were in fact neither reasonable nor diligent. Here, we again invite the Court's attention to the multiple required steps of preparation that the government could and should have taken, at the latest, in the 18 months that Mr. Jin languished in Australia, if he were to have any hope of a speedy trial upon his arrival here. Instead, the government waited until much later–during the nearly year of delay it was granted by this Court and in some instances until the eve of trial–to actually prepare. This pattern now continues with the new trial team.

Under all of these circumstances, the prejudice to Mr. Jin weighs heavily against the government.

## CONCLUSION

Given that Mr. Jin's Sixth Amendment right to a speedy trial has been violated, the charges against him must be dismissed with prejudice. *United States v. Knox*, No. 4:05CR58, 2006 WL 8093043, at *7 (E.D. Va. Apr. 5, 2006) ("a finding that the Defendant's Sixth

Amendment right to a speedy trial has been violated requires that the indictment be dismissed with prejudice.") (citing *Strunk v. United States,* 412 U.S. 434, 440 (1973) and *McNeely v. Blanas,* 336 F.3d 822, 832 (9th Cir.2003)).

                Respectfully submitted,

                By:/s/ Eugene Gorokhov
                Eugene Gorokhov, Esq.
                DC Bar No. 979785
                Ziran Zhang, Esq.
                DC Bar No. 1019799
                BURNHAM & GOROKHOV, PLLC
                1634 I Street NW, Suite 575
                Washington, DC 20006
                (202) 386-6920 (phone)
                (202) 765-2173 (fax)
                eugene@burnhamgorokhov.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I served a copy of the foregoing motion via ECF which automatically sends a copy to all counsel of record.

                                            Respectfully submitted,

                                            By:/s/ Eugene Gorokhov
                                            Eugene Gorokhov, Esq.