**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Case No.: 23-CR-91-02 (CKK)** |
| | **:** | |
| **JIN GUANGHUA, et al.,** | **:** | |
| | **:** | |
| **Defendants.** | **:** | |

**United States's Opposition to
Defendant's Motion to Compel Production of _Brady_ and _Giglio Information_**

The United States respectfully files this opposition to the defendant's motion to compel the production of _Brady_ and _Giglio_ information relating to false testimony to the grand jury regarding the undercover investigation.  ECF No. 317.  Because Dawson Anglin's testimony before the grand jury is not discoverable under _Jencks_ or _Giglio_, and because the evidence presented was sufficient to find probable cause, the government requests the Court deny the defendant's motion.  To facilitate the Court's resolution of this motion, the government will provide the relevant transcript portion for _in camera_ review.

At the pre-trial conference on March 17, 2026, the Court asked for briefing on a potential _Giglio_ issue raised in the defendant's motion involving Mr. Anglin, the FBI forensic accountant assigned to this case.  The defendant suspects portions of Mr. Anglin's grand jury transcript reveal that he gave false testimony to the grand jury.  _See_ Def. Mot. ECF No 317 at 2 ("Mr. Anglin may have repeated the same false allegation in the indictment in his testimony to the grand jury.").  The defendant is correct—Mr. Anglin did testify about the flawed translation that ended up in the indictment, which said: "Jin further noted that, in such a scenario, Company 1 was '_the ones_

*committing fraud, I'm simply buying merchandise.'"* (emphasis added). *See* ECF No. 13, Indict. at 24. This was a mistranslation. The government did not rely on the mistranslation at trial.

The inaccuracy occurred during a mistranslation during the undercover meeting in Argentina with Mr. Jin on July 11, 2019. At the in-person meeting, both the defendant and Agent Tarango brought translators to the meeting. However, the translator that Agent Tarango brought was not a court-certified interpreter nor spoke Spanish, but another undercover agent with Chinese language proficiency. During this meeting, Mr. Jin spoke in Chinese. His Chinese statements were interpreted into Spanish using his Chinese-Spanish interpreter. As illustrated below, the interpreter inaccurately conveyed one of Mr. Jin's statements in Spanish. HSI subsequently translated the Spanish translations from the meeting into English, provided the statements to the government as part of a summary of the undercover operation, and then the government included the statement at issue in the indictment. The specific sequence of Mr. Jin's statements at the July 11, 2019, meeting, and accompanying translations, were as follows:



我们没有洗钱，我们在买货，有没有搞错？什么叫洗钱？

↓

Ustedes son lo que están cometiendo fraude yo estoy comprando una mercadería

↓

You guys are the ones committing fraud, I'm simply buying merchandise

The mistake was easy to make because there were multiple layers of translations.  Across a several hour meeting, it is hardly surprising there was a mistake in translation somewhere.  The government acknowledged the mistake.  Later, translators were asked to translate the recording of the meeting which revealed that Mr. Jin's statement, according to the direct English translation, does not accuse CTJ of "fraud."  The accurate Chinese-English translation of Mr. Jin's statement was:

> We are not money laundering. We're buying goods. Are you sure? What is money laundering?

As noted *supra,* the government also confirms the defendant's suspicion that Mr. Anglin testified to this mistranslated statement during the grand jury testimony.  However, the government disputes the defendant's contention that this somehow constitutes *Brady* or *Giglio* information.

At the time Mr. Anglin read the statement to the grand jury, he had no knowledge of the statement's inaccuracy, nor had any other reason to believe it was false.  In fact, the first time Mr. Anglin became aware of this specific discrepancy was on a call with the government following the March 17, 2026, trial conference.  Mr. Anglin does not speak Chinese or Spanish and reasonably relied on the English translation provided to him by HSI and did not have any other reason to believe it was inaccurate at the time of his grand jury testimony.

The previous trial team reviewed Mr. Anglin's grand jury testimony preceding the first trial and assessed that reading a mistranslation into the record, without knowledge of its inaccuracy, was not discoverable because it was not derogatory or otherwise impeaching of Mr. Anglin's credibility.  This assessment is especially reasonable in light of Mr. Anglin's role in this case vis-à-vis the undercover investigation.  Mr. Anglin did not participate in the undercover operation,

otherwise lacked personal knowledge about it, and would not be testifying to it at trial.  See ECF No. 194 ("Anglin will not testify about the topics discussed in the redacted portions of his discussion of the undercover investigation, which are topics about which he lacks personal knowledge.")  Therefore, the government did not turn over the transcript because it was not discoverable as *Giglio* or *Jencks*.

Moreover, the evidence before the grand jury was sufficient to find probable cause despite the inclusion of the mistranslated statement where Mr. Jin accused CTJ of fraud.  *See* ECF 146 at 4, Memo. Opinion and Order ("Given the weight of the evidence as a whole, even if the Government made the representations and omissions that Jin attributes to it, records reflecting those representations or omissions would not be sufficient to create 'grave doubt' that prosecutorial misconduct 'substantially influence[d] the grand jury's decision to indict in this case." (Internal citation omitted).

Therefore, based on the facts and circumstances of this mistranslation, the government maintains its position that it is not impeaching or exculpatory.[1]  Nonetheless, the government has reviewed the four-page portion of Mr. Anglin's grand jury transcript where he testified to the undercover operation and conveyed the specific statement at issue.  Out of an abundance of caution, the government will provide it to the Court *ex parte* for an assessment on whether it constitutes proper impeachment evidence.  If the Court believes so, then the defendant should have that portion of the transcript covering the undercover operation, and the government is prepared to turn it over.

---

[1] Although the defendant broadly claims everything is exculpatory, his motion does not explain how Mr. Anglin's prior grand jury testimony exculpates him or otherwise is probative of any element of the charged offenses.

**CONCLUSION**

WHEREFORE, for the foregoing reasons, the United States respectfully requests that this Court reject the defendant's efforts to compel *Brady* or *Giglio* information relating to Mr. Anglin's grand jury testimony.

Respectfully submitted,

JOHN A. EISENBERG
ASSISTANT ATTORNEY GENERAL
FOR NATIONAL SECURITY

By:    /s/ Eli Ross
Eli Ross (IL 6321411)
Christopher Magnani (MD 1512160075)
Trial Attorneys
Counterintelligence and Export Control Section
National Security Division
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, D.C. 20530
Telephone: 202-616-5447
Eli.Ross2@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ Eli Ross
Eli Ross
Trial Attorney

Date: March 16, 2026