**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA      }
        }
      v.              }      **Criminal No. 23-CR-91-CKK**
        }
GUANGHUA JIN,      }
        }
      Defendant.      }
        }
_____}

**DEFENDANT'S SUPPLEMENT TO MOTION TO DISMISS**
**FOR FLAGRANT MISCONDUCT**

Defendant Guanghua Jin, through counsel, respectfully submits this Supplement to his pending Motion to Dismiss for Flagrant Misconduct. ECF 309. As explained further herein, this Court should conduct an evidentiary hearing prior to a decision on the merits.

**INTRODUCTION**

Mr. Jin's Motion to Dismiss raises allegations of prosecutorial misconduct and due process violations that the Court recognizes as "serious concerns." These "serious concerns" demand redress beyond permitting Mr. Jin some latitude to cross-examine witnesses. As a starting point, this Court needs to hold an evidentiary hearing to develop the record regarding how prosecutors from the first trial could have committed the numerous violations alleged in the Motion to Dismiss.

New evidence of misconduct emerges each passing day. At the March 17, 2026 hearing, the Court stated that it would not dismiss the indictment "on the present record." But the present record is incomplete without further evidentiary development. Other courts, confronted with similar allegations of misconduct, have conducted extensive evidentiary hearings to uncover the truth. This is necessary both to vindicate Mr. Jin's rights, and to preserve the public's confidence in the judicial process.

1

The notion that the sovereign can do no wrong has no place in our system of government, and yet that appears to be the precise position implicit in the government's litigation of this case. It has time and again suppressed exculpatory or impeaching evidence. It has time and again presented false testimony to the magistrate, the grand jury, and the petit jury. The government's response, when caught red-handed, is to disclaim all responsibility. If Mr. Jin concealed North Korea on bills of lading, that means he was defrauding banks and evading sanctions. If the government conceals evidence that its witnesses lied, that's just a reasonable determination that something was not truly derogatory, or what the witness said was not "technically false." The rule of law means more than that.

Our Constitution divides the government into three co-equal branches, with each branch acting as a check on the other two. The Court's responsibility to uphold the Constitution includes corrective action when the executive transgresses the law. Mr. Jin respectfully urges this Court to take a meaningful look at the conduct of the prosecution team in the investigation and the prior trial. Only by doing so can the Court ensure that Mr. Jin will not, once again, be subject to an unfair trial.

## ARGUMENT

### I. THE COURT MUST ADJUDICATE MR. JIN'S MOTION TO DISMISS ON AN ADEQUATE RECORD.

Although the Court has indicated that it intends to deny Mr. Jin's Motion to Dismiss "on the present record," *Id.* at 3, Mr. Jin respectfully submits that the Court has an obligation to adequately develop "the present record" through an evidentiary hearing before deciding Mr. Jin's Motion to Dismiss. Resolution of the Defendant's Motion to Dismiss requires fact-finding on two issues. First, the Court must determine whether there has been a *Brady* or *Napue* violation–i.e., whether favorable evidence was suppressed, or whether false testimony was introduced. Second,

2

if there is a violation, the Court must determine the degree of culpability–i.e, whether the violation was intentional, reckless, or merely negligent.

Where a defense motion alleges a "credible claim" of government misconduct, the Court has an obligation to inquire further. *In re Sealed Case*, 877 F.2d 976, 982 (D.C. Cir. 1989)("[A]fter [ ] indictment, a district court has ample discretion to inquire into any credible claim of prosecutorial misconduct.").   It is an abuse of discretion to deny a motion without an evidentiary hearing when the defendant has sufficiently alleged a constitutional violation, and the violation is not conclusively refuted by the record.  *United States v. Aguiar*, 894 F.3d 351, 361 (D.C. Cir. 2018)(Where "the record is quite sketchy regarding plea discussions" and "the motion and the files and records of the case do not conclusively show [the defendant] was advised [of the consequences of a plea,] the district court erred in denying [the defendant's] ineffective assistance of counsel claim without holding an evidentiary hearing given the inconclusiveness of the record."); *United States v. Neely*, 124 F.4th 937, 951 (D.C. Cir. 2024)("If the defendant's assertions are insufficient to establish a constitutional violation, or the District Court need not resolve any disputes of material fact to decide the suppression motion, denial of a hearing is warranted."); *see also United States v. Howell*, 383 Fed. Appx 782, 783 (10th Cir. 2010)(finding district court abused its discretion in denying habeas petition without an evidentiary hearing where "the allegations…appear sufficient, if true, to satisfy the first prong if *Strickland*…and are not conclusively refuted by the record."); *United States v. Sandalis*, 14 Fed. Appx. 287, 289 (4th Cir. 2001)("when a party makes a threshold showing that improper external influences came to bear on the decision-making process of a juror, an evidentiary hearing on juror bias not only is allowed…but is <u>required</u>.")(emphasis added).

Here, the Court appears to recognize that Mr. Jin's Motion facially alleges sufficient facts to support a finding that the government committed numerous *Brady* and *Napue* violations

throughout this prosecution.  The Court stated at the March 17, 2026 Pretrial Conference that "Mr. Jin's motion to dismiss…raise[s] some serious concerns."  Tr. 3/17/26 at 3.  The Court specifically recognized, for example, potential *Brady* and *Napue* violations in relation to the Carbuncle and Fully Max transactions.  *Id.* at 4.  The Court likewise recognized potential due process violations in relation to the bills of lading.  *Id.* at 17 (assuming, without deciding, that Agent Gallante's search warrant affidavit contained recklessly false statements about changes to the bills of lading.).

The allegations in Mr. Jin's Motion to Dismiss are not conclusively refuted by the record.  To the contrary, they are largely supported by the record.  The government does not even dispute many of the allegations, and its arguments in the Opposition largely attempt to minimize the violations by arguing that the violations concerned immaterial matters or were inadvertent errors.  *See* ECF 316 at 3 (arguing changes to bills of lading were immaterial); ECF 316 at 5 (arguing, in effect, that prosecutor had no reason to believe that "Bartoletti was obviously a perjurer."); ECF 316 at 7 (characterizing Carbuncle and Fully Max transactions as inadvertent errors); ECF 316 at 9 (admitting that it did not produce Anglin email relating to HSI error).

Given the Court's recognition of "serious concerns" in a motion where Mr. Jin has alleged serious prosecutorial misconduct amounting to due process violations over the course of many years, and the government's concessions at least to the underlying facts for many of the allegations, an evidentiary hearing is not just warranted; it is required.  *See Sandalis*, 14 Fed. Appx. at 289 ("when a party makes a threshold showing [on a claim]…an evidentiary hearing…not only is allowed…but is <u>required</u>.")(emphasis added).

## II.     AN EVIDENTIARY HEARING IS REQUIRED TO DEVELOP THE RECORD AS TO BOTH THE EXTENT OF THE DUE PROCESS VIOLATIONS AND THE GOVERNMENT'S REASONS FOR THE VIOLATIONS.

Whether the Court's "serious concerns" warrant dismissal, or lesser remedies will suffice, is a question that can only be answered after further development of the record through an

4

evidentiary hearing. The Court must have evidence as to the character of these violations (i.e., whether the violations were negligent, reckless, or willful), and their extent.

**A. The Court must conduct an evidentiary hearing to determine the reason for the government to present false allegations *vis-a-vis* the Carbuncle and Fully Max transactions.**

The following facts appear undisputed:

- Beginning as early as 2022, FoA Dawson Anglin alleged that certain transactions between CTJ and Carbuncle/Fully Max (two DHID front companies) were linked to Winney.

- The government now admits that these transactions had no relation to Winney.

- The false allegations were presented in official filings, such as the search warrant, the complaint, and the indictment.

- The false allegation was presented to the grand jury via Anglin's testimony.

- The false allegation was presented to the trial jury through Exhibit 352.

- FoA Anglin and AUSA Seifert removed the Carbuncle/Fully Max transactions from other exhibits during trial, and without notice to the defense.

- In February 2026, five months after the first trial, FoA Anglin created at least one new exhibit including the false Carbuncle and Fully Max transactions.

ECF 309, and Reply in support of that Motion, ECF 322.

The presentation of false testimony or false evidence, whether to a grand jury or a petit jury, violates due process. The crucial question for a *Napue* violation is whether the government knew or should have known, at the time the evidence was presented, that the evidence was false. *See* ECF 309. Because the government concedes that the Carbuncle and Fully Max evidence was false, ECF 316, the only relevant question is whether the government knew or should have known that it was false. The Court cannot resolve this issue without conducting an evidentiary hearing.

The Court has recognized the importance of inquiring into the government's knowledge of false evidence in another context. At the March 17, 2026 Pretrial Conference, the Court stated that as to the question of whether Anglin falsely testified about Mr. Jin's statements at the Argentina meeting, the relevant questions include "what knowledge [Anglin] would have had as to whether it's accurate or not, at the point." Tr. 3/17/26 at 6.

Just as Anglin's knowledge of the accuracy of his testimony *vis-à-vis* the Argentina meeting is important to assessing whether he knowingly provided false testimony on that issue, Anglin's (and AUSA Seifert's) knowledge of the falsity of the Caruncle and Fully Max allegations is relevant to assess whether the government knowingly introduce false allegations on this topic.

At an evidentiary hearing, the Court should ask appropriate questions of Anglin and make determinations on important questions such as:

- When did the government first learn that the allegations about Carbuncle and Fully Max were false?

- Who first discovered that it was false? Was this knowledge communicated to other members of the prosecution team?

- What steps were taken to inform the defense of this fact? Or alternatively, why was the defense not informed?

- What steps were taken to inform the new trial team of the abandoned false allegations? And if the new trial team was not informed, then why?

An inquiry into the Carbuncle/Fully Max transactions is especially important, even more so than Anglin's grand jury testimony regarding the Argentina meeting. Whereas Anglin did not testify about the Argentina meeting at trial nor is he expected to testify about it on the retrial, it is apparent that Anglin had planned to testify about the Carbuncle and Fully Max transactions for the

retrial. If Anglin admits, for example, that he added the false transactions back in to avoid the incident being exposed and losing his job, the Court could appropriately exercise its discretion and bar Anglin from testifying in the retrial.

The defense will file a Motion to Compel seeking Anglin's communications relating to the Carbuncle and Fully Max exhibits, as well as prior versions of exhibits that contained these false allegations. The Court should separately require the production of these exhibits because they are also necessary for an evidentiary hearing as described above.

**B. The Court must conduct an evidentiary hearing to determine the reason for other *Brady* violations alleged in the Motion to Dismiss.**

The same analysis applies to the other due process violations alleged in the Motion to Dismiss. For example, the government's failure to disclose the *Peralta* letter is undisputed. *United States v. Robinson*, 68 F.4th 1340 (D.C. Cir. 2023). Mr. Jin was entitled to it under *Brady* because it clearly fell within Rule 608(b). Yet, the prosecutor who expended significant effort to redact references to the letter also made the intentional choice not to produce the letter itself. That prosecutor must explain her actions, and justify (or take responsibility) for her conduct. Only then can the Court begin to formulate a commensurate remedy. Without such information, the Court cannot make adequate findings that are necessary to the exercise of its discretion.

In addition to addressing the reason the first trial team suppressed the Peralta letter (i.e., the good faith or bad faith), an evidentiary hearing is also needed to assess the extent to which other exculpatory evidence on this point has been suppressed. For example, in 2022, Anglin and AUSA Grady offered to introduce CTJ to their contacts at U.S. banks after CTJ solicited the government to lie on its behalf. At that point, the government should have become aware of a high probability that CTJ was being untruthful in other matters. Its failure to investigate further is a "breach of the government's duty to search for *Brady* information." *United States v. Quinn*, 537

F. Supp. 2d 99, 110 (D.D.C. 2008).  This Court must conduct an evidentiary hearing to determine why "[t]he government did not act before trial to pinpoint with accuracy the time and date of [CTJ's] contradictory statements," because "the government cannot shield itself from its *Brady* obligations by willful ignorance or failure to investigate." *Id.*

### C. Other Courts have conducted evidentiary hearings when faced with similar allegations of misconduct.

Other district courts, confronted with allegations of similar—or even far more limited—misconduct have engaged in detailed fact finding after ordering evidentiary hearing and testimony or affidavits from those involved.

In *United States v. Sutton*, No. 21-598-01-PLF, 2022 WL 2383974 (D.D.C. July 1, 2022), the government was accused of failing to disclose its interviews of an eyewitness who provided exculpatory statements to the police. *Id.* at * 3.  By the time the eyewitness was disclosed, the witness had recanted his statements.  *Id.*  The parties in *Sutton* were specifically directed to file supplemental briefing addressing "whether there is any precedent for a court to conduct a *Brady* evidentiary hearing where government investigators and prosecutors are required to testify about their conduct." *Id.* at *4.  After briefing, the district court concluded that an evidentiary hearing is necessary "to determine, through discovery and live testimony, whether the witness was improperly influenced into changing his story or discouraged from testifying and to what extent the government's delayed disclosure may have prejudiced Mr. Sutton's preparation of his defense."  *Id.* at *9.  The court required the government to disclose all internal memoranda, handwritten notes, emails, and other documents relating to the witness's interactions with law enforcement in advance of the hearing. Id. at *9.  It did so because fact finding must precede decision making.

In *United States v. Nejad*, after evidence surfaced that government prosecutors sought to bury an exculpatory letter in discovery, the district court ordered fact finding to determine whether a *Brady* violation had occurred.  487 F. Supp. 3d 206, 222 (S.D.N.Y. 2020).  The court, in a section of the opinion entitled: "Further Fact-Finding is Necessary," reasoned that "several critical questions remain regarding the untimely disclosure of [the exculpatory document] and the Government's subsequent misleading representation to the Court.  The Court is <u>obligated</u> to determine what has occurred." *Id.* (emphasis added).  The district court then reasoned that it was duty bound to discover not only when prosecutors realized the exhibit had not been disclosed, but also to <u>verify the truth of the prosecutors' protestations that they did not see the exculpatory value</u> of the suppressed evidence.  *Id.* at 223 ("The contention that trial blinders prevented the prosecutors from perceiving the exculpatory value of GX 411 is plausible. But there are other facts in the current record that cast some doubt on this representation of ignorance.").

Finding that there is "lack of clarity surrounding the disclosure of [the exculpatory exhibit] and the subsequent misrepresentation to the Court," the *Nejad* court ordered every attorney on the trial team to submit a declaration about when they learned about the letter, when they realized it had not been disclosed, and answer numerous other specific questions.  *Id*. at 224-225.

And in *United States v. Quinn*, another case from this district, when the district court learned that the government had suppressed impeaching information about a cooperating witness, the district court did not stop at a simple admonishment to the government.  The *Quinn* court thoroughly investigated the matter by requiring multiple prosecutors and agents to file sworn declarations addressing all the key facts.  *See* 537 F. Supp. 2d at 105 (citing declarations by prosecutors and case agent).  Nor were prosecutors allowed to file these declarations *ex parte*.

The range of misconduct in this case far exceeds the conduct that justified detailed evidentiary hearings in *Sutton*, *Nejad*, and *Quinn*. This Court should order an evidentiary hearing prior to a decision on the merits.

### III.    AN EVIDENTIARY HEARING IS REQUIRED TO DETERMINE THE EXTENT TO WHICH MR. JIN'S CASE IS INFECTED WITH EVEN MORE DUE PROCESS VIOLATIONS.

Each time the government is forced to answer the due process allegations raised in the Motion to Dismiss, new revelations of stunning misconduct emerge. In the last 24 hours alone, the government admitted that Anglin falsely testified to the grand jury because he purportedly failed to verify information he received from HSI. ECF 326. What the government does not mention is that early in the case, the first trial team had notice from the defense that false testimony about the Argentina meeting was a significant issue, and so their decision to suppress Anglin's grand jury testimony about the Argentina meeting could not have been inadvertent or in good faith. *Id*. This issue alone raises many questions, such as why would a federal prosecutor make such a determination when it is clearly prohibited by law?; if they thought this was permitted as to false testimony by a key witness, what else did they "determine" to be "immaterial"?

The government's conduct in this case has been in stark contrast with its words. The government represented to the Court on the one hand that it had "provided the defendant with far more [discovery] than the law requires," ECF 71 at 8, while diligently concealed evidence on the other hand that its main law enforcement witness gave false testimony, and that its main cooperator tried to partner with the DOJ to commit bank fraud: an invitation that prosecutors only half-declined. The government represented that it would "immediately" disclose exculpatory evidence "such as a witness claiming that the defendant was not involved in the criminal conduct alleged in

10

the indictment," *id.* at 3, but concealed its knowledge that charged allegations relating to Carbuncle and Fully Max were false, and arranged to change the affected exhibits mid-trial, without notice.

The constant emergence of due process violations shows that the underlying problem is systemic, rather than isolated. An evidentiary hearing is necessary to determine the extent of the violations so that "[a] new trial would not be simply a repetition of the first trial, infected by non-disclosure of discoverable evidence." *United States v. Pasha*, 797 F.3d 1122, 1140 (D.C. Cir. 2015) (quoting *United States v. Bryant,* 439 F.2d 642, 653 (D.C.Cir.1971), *abrogated in part on other grounds by Arizona v. Youngblood,* 488 U.S. 51, 67–71 (1988)).

## IV.    AN EVIDENTIARY HEARING IS REQUIRED TO DETER FUTURE VIOLATIONS OF *BRADY* AND *NAPUE*.

Separate from the issue of an appropriate remedy, the need to deter the government from committing future due process violations also calls for an evidentiary hearing.

First, the government has continued to suppress numerous items of *Brady* evidence. For example, it has not responded to a defense request for evidence relating to the Carbuncle and Fully Max transactions (which will be the subject of a forthcoming motion). Likewise, the government has refused to disclose Dawson's Anglin's full, unredacted grand jury transcript, despite recently confirming that the transcript does in fact contain false testimony, and the only excuse for the false testimony is that Anglin apparently relied on an incorrect translation produced by the HSI. ECF 326. The government also abused Rule 16 to file affidavits under seal when the Court had previously denied the government's motions to proceed *ex parte*.

The government's conduct imposes significant costs on Mr. Jin and the Court. Defense counsel is forced to waste considerable time litigating the production of clearly exculpatory or impeaching documents, when counsel should be preparing for cross-examination of witnesses and

presentation of the defense case with the relevant material at his disposal. And the Court is forced to resolve these motions on a short timeline.

Second, every day new evidence emerges that the government has not carried out its duty to seek out all *Brad*y and *Giglio* information. This is apparent from the new trial team's ignorance of the false Carbuncle and Fully Max allegations, until the matter was brought to their attention by the recent Motion to Dismiss. Likewise, the new trial team was apparently unaware of the Peralta letter until it was requested by defense counsel. Had the prosecution engaged in any meaningful review for *Brady*, these were issues that surely would have been noticed without input from the defense. Just today, the government disclosed in its Reply to Mr. Jin's Motion to Compel Anglin's grand jury transcript that it did not even know that Anglin testified falsely on this issue and did not inquire of Anglin until after the hearing in which the Court ordered it to respond to Mr. Jin's motion. ECF 326 at 3 ("In fact, the first time Mr. Anglin became aware of this specific discrepancy was on a call with the government following the March 17, 2026 trial conference.").

Third, the government's narrow interpretations of its *Brady* obligations devolves into absurdity. For example, the government claimed that the Peralta letter, which showed that its key cooperator tried to solicit the aid of prosecutors and agents to commit bank fraud, was somehow not producible under *Brady* because it was an "advocacy piece" and "may not be technically false." ECF 316 at 6. The government claimed that Anglin's grand jury transcript, which showed that he gave false testimony, was somehow "not derogatory or impeaching of Mr. Anglin's credibility." ECF 326 at 3. The government makes such outrageous claims because it perceives that this Court will tolerate those claims.

Fourth, the government appears poised to engage in the same kinds of suppression by redaction that the first trial team deployed. For example, the new trial team indicated at the March

17, 2026 Pretrial Conference that government counsel plans to compare Tarango's affidavit with his trial testimony to decide what would be disclosed to the defense.  Tr. 3/17/26 at 8.  But a witness's Jencks statements are not limited to statements that the witness would testify to on direct examination, and *Brady* of course requires disclosure of any favorable evidence–including impeaching evidence–to the defense, regardless of the witness's planned testimony.

Mr. Jin should not be forced to endure the formality of a trial marred by *Brady* and *Napue* violations and seek redress for these due process violations after conviction, and that is only in the event that he is convicted.  *See United States v. Borda*, 941 F. Supp. 2d 16, 23 n.4 (D.D.C. 2013) (noting that the court held a 5-day evidentiary hearing on Brady violations after the trial).  If there is another hung jury, Mr. Jin would have to face a third trial, while the government continues to skirt its *Brady* obligations with apparent impunity.  The Court should exercise its discretion and hold an evidentiary hearing on these issues.  To do otherwise would be, under these circumstances, an abuse of discretion.

## CONCLUSION

The Court should hold an evidentiary hearing on the Defendant's Motion to Dismiss, ECF 309.

Respectfully submitted,

By: /s/ Eugene Gorokhov
Eugene Gorokhov, Esq.
D.C. Bar No. 979785
Burnham & Gorokhov, PLLC
1634 I Street NW, Suite 575
Washington, DC 20006
(202) 386-6920 (phone)
(202) 765-2173 (fax)
eugene@burnhamgorokhov.com

**CERTIFICATE OF SERVICE**

A copy of the foregoing motion was filed via ECF, which automatically sends a copy to all counsel of record.

Respectfully submitted,
By: /s/ Eugene Gorokhov
Eugene Gorokhov, Esq.
D.C. Bar No. 979785
Burnham & Gorokhov, PLLC
1634 I Street NW, Suite 575
Washington, D.C. 20006
(202) 386-6920 (phone)
(202) 765-2173 (fax)
eugene@burnhamgorokhov.com

1