**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | } | |
| | } | |
| **v.** | } | **Criminal No. 23-CR-91-CKK** |
| | } | |
| **GUANGHUA JIN,** | } | |
| | } | |
| **Defendant.** | } | |
| | } | |
| _____ | } | |

**REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION
OF *BRADY* AND *GIGLIO* INFORMATION AS TO
DAWSON ANGLIN AND JOY GALLANTE**

Mr. Jin's Motion to Compel, ECF 317, sought production of FoA Anglin's grand jury transcript, wherein Anglin made false statements concerning the Argentina meeting.  The Motion also sought SA Joy Gallante's communications regarding the search warrant and criminal complaint, which were official documents that Gallante signed under oath, and which contained allegations now conceded to be false.

The Government's Opposition, ECF 326, addresses the request for Anglin's grand jury transcript, but entirely ignores the portion of the Defendant's motion that sought production of SA Gallante's communications. Accordingly, the government has waived any objection to disclosure of SA Gallante's communications, and the Court should grant Mr. Jin's motion to compel as to that request.

Turning to Mr. Jin's claim for Anglin's grand jury transcript, the government makes two crucial concessions.  First, the government concedes that Anglin testified falsely.  Second, the government concedes that the first trial team was aware of this falsity, and deliberately decided against production.

1

Instead of admitting the only logical conclusion to flow from these two concessions–that the grand jury transcript is discoverable and the first trial team committed a *Brady* violation by not producing it–the government advances the implausible argument that suppression of evidence showing that its main law enforcement witness had provided false testimony under oath  is "especially reasonable," because such evidence "was not derogatory or otherwise impeaching." ECF 326.

The Court should reject this argument.  The grand jury transcript is discoverable. The first trial team violated *Brady* by not producing it. And the government's argument against production is another reason to hold an evidentiary hearing on Mr. Jin's pending Motion to Dismiss.

**A. The government concedes that Anglin testified falsely.**

There is no dispute that Anglin provided false testimony to the grand jury.  ECF 326 at 1 ("The defendant suspects portions of Mr. Anglin's grand jury transcript reveal that he gave false testimony to the grand jury…The defendant is correct.").

The government spends most of its brief explaining why Anglin's false testimony was allegedly a mistake, going so far as to include a flow-chart of the conversation from the Argentina meeting.  But one does not need two pages of a legal brief to explain this "mistake."  Even if he is given the benefit of the doubt, Anglin provided false testimony because, at best, he did not read the transcript of the Argentina meeting before he testified about it.  Had he read the transcript, he would have realized that the statement: "You guys are the ones committing fraud" was by the interpreter, not Mr. Jin.

The government's flow-chart was entirely unnecessary.  *See* ECF 326 at 2.  This one part of the Argentina meeting transcript (which was available to Anglin) reveals everything.

| Mr. Jin | 我们没有洗钱，我们在买货，有没有搞错？什么叫洗钱？ | We are not money laundering. We're buying goods. Are you sure? What is money laundering? |
| Interpreter 2 | Ustedes son lo que están cometiendo fraude yo estoy comprando una mercadería | You guys are the ones committing fraud, I'm simply buying merchandise |

**B. Anglin knew or had reason to know his testimony was false.**

The government claims that the false attribution resulted from a summary provided by HSI. ECF 326 at 2.  It argues that "[a]t the time Mr. Anglin read the statement to the grand jury, he had no knowledge of the statement's inaccuracy, nor had any other reason to believe it was false." ECF 326 at 3 (emphasis added). That is wrong. Setting aside the demands of basic due diligence, Anglin already knew, by the time of his grand jury testimony, that HSI's reporting of the undercover investigation was unreliable.  Indeed, prior to his grand jury testimony, Anglin had specifically sent an e-mail to AUSA Seifert informing her that something was "written incorrectly" in HSI's "write-up" of the undercover investigation.

**From:** Dawson Anglin <danglin@fbi.gov>
**Sent:** Monday, January 24, 2022 4:05 PM
**To:** Seifert, Karen (USADC) <KSeifert@usa.doj.gov>; Gallante, Joy (PX) (FBI) <jgallante@fbi.gov>
**Subject:** Re: At long Last - Winney

First, I'm working on getting you the registration information for Winney Entity 8 and second, I sent an e-mail to HSI today to get clarification on a part in their UC meeting write up that I think was written incorrectly.

Dawson

Exhibit 1 - Email from Anglin to Seifert dated 1/24/2022.[1]

Knowing that HSI' summary was "written incorrectly," Anglin nevertheless based his grand jury testimony on that summary. The government argues that this is "not derogatory or otherwise impeaching." To the contrary, it shows a reckless disregard for the truth. In an analogous case, another judge of this Court found evidence that a police officer "copied and pasted the factual narrative written by another officer…into an unsworn arrest report without reviewing it" was admissible to impeach the officer under Rule 608(b), because such conduct "bears relevancy to her credibility." *United States v. Moore*, No. CR 25-162 (BAH), 2026 WL 485282, at *10 (D.D.C. Feb. 20, 2026). In that case, Judge Howell specifically noted that the officer's misconduct is probative even though "failures to verify information written in unsworn reports may have lower probative value than similar failures in sworn reports." *Id.* Here, Anglin was not providing information in a sworn report; he was providing sworn testimony. *See also United States v. Cuffie,* 80 F.3d 514, 517 (D.C. Cir. 1996)(failure to disclose witness perjury violated *Brady*). His decision to "copy and paste" HSI's summary, and submitting it to the grand jury without verifying that summary (assuming that is all that transpired) is even more impeaching of his credibility than the officer's conduct in *Moore*.

Independent of Anglin's credibility, this evidence also permits the defendant to attack the thoroughness and good faith of the investigation. This is confirmed by numerous decisions over the past three decades. *See, e.*g., *Kyles v. Whitley*, 514 U.S. 419, 445 (1995) ("The thoroughness and even the good faith of the investigation" are proper subjects within the scope of inquiry);

---

[1]    We are compelled to note that the original version of this email entirely redacted Anglin's statement regarding the HSI's error. *See* Exhibit 2 - Original version of Email from Anglin to Seifert dated 1/24/2022. Furthermore, Anglin's actual email to HSI, which he referenced in this email to AUSA Seifert, remains undisclosed, despite multiple requests from the defense and a pending Motion to Compel. ECF 308 at 3-4.

*United States v. Quinn*, 537 F. Supp. 2d 99, 105 (D.D.C. 2008) (finding defendant was entitled to introduce evidence leading jury to question lack of reliability of the investigation); *United States v. Bagcho*, 151 F. Supp. 3d 60 (D.D.C. 2015) (defendant entitled to introduce evidence to undermine the reliability of the government's investigation and its sources).

And though the government has not argued that because the defendant now knows Anglin testified falsely, it should not be required to produce the transcript, such an argument would be unavailing. *See United States v. Robinson*, 68 F.4th 1340, 1351 (finding government suppression of a report violated *Brady* because "the prejudice to the defendant here occurs not from the lack of information contained in the Report, but from the inability to provide the more convincing source corroborating the information contained therein.").

**C. The government suppressed Anglin's grand jury transcript in bad faith.**

The government portrays the suppression of Anglin's grand jury transcript as the product of an "especially reasonable" "assessment" by the first trial team that the transcript was "not derogatory or otherwise impeaching." But contrary to this depiction, the first trial team did not even discover the problems surrounding the indictment's false description of the Argentina meeting (and by extension, Anglin's false testimony about that meeting) until they were alerted to the issue by the defense.

On March 13, 2025, the defense sent an email to the government identifying the false attributions in detail.

Eugene Gorokhov <eugene@burnhamgorokhov.com>                    Mar 13, 2025, 5:21 PM   ☆   ☺   ↩   ⋮
to Steven, Christina, Karen ▾

Counsel

Thanks for speaking with me today.  Below are the examples I mentioned on today's call.  But as mentioned I think the problem is significantly broader than just these specific examples.

Here are some examples of false statements in the affidavits and indictment.

The affidavits and indictment state: "Jin further noted that, in such a scenario, Company 1 was 'the ones committing fraud, I'm simply buying merchandise.'"

Mr. Jin never made the above statement.  Instead, the statement was made by an interpreter who clearly misstated Mr. Jin's actual words.  Both the fact that this statement was made by the interpreter, and that the interpreter clearly misinterpreted Mr. Jin's words, are obvious from the face of the translation that the government produced:

| Mr. Jin | 我们没有洗钱，我们在买货，有没有搞错？什么叫洗钱？ | We are not money laundering. We're buying goods. Are you sure? What is money laundering? |
|---|---|---|
| Interpreter 2 | Ustedes son lo que están cometiendo fraude yo estoy comprando una mercadería | You guys are the ones committing fraud, I'm simply buying merchandise |

Exhibit 1–Email from E. Gorokhov to AUSA Wasserman *et al.* dated March 13, 2025.

Six months later, the prosecutors produced Anglin's grand jury transcript with portions of his testimony covering these same false attributions removed.  The omission was not the consequence of a good faith assessment about materiality.  The first trial team knew that the false attribution was a critical issue, and understood that a witness who testified to these false attributions would be thoroughly impeached on cross-examination.  They withheld Anglin's grand jury transcript precisely so the defense could not impeach him for it.

Even assuming, *arguendo*, that the first trial team made a determination to withhold Anglin's grand jury transcript on grounds of materiality, judges in this district have repeatedly admonished against withholding evidence on that ground.  *United States v. Sutton*, No. CR 21-0598-01 (PLF), 2022 WL 2383974, at *9 (D.D.C. July 1, 2022) (recognizing the government's "broad obligation to disclose favorable evidence – without regard to its 'materiality' – 'as soon as reasonably possible after its existence is known.'")(citing LCrR 5.1(a)); *United States v. Singhal*,

876 F. Supp. 2d 82, 102 (D.D.C. 2012) ("in the pretrial setting, *Brady* requires disclosure of any information favorable to the accused without regard to whether the failure to disclose it likely would affect the outcome of the upcoming trial." (cleaned up)(citing *United States v. Safavian*, 233 F.R.D. 12, 16 (D.D.C. 2005)); *see United States v. Naegele*, 468 F. Supp. 2d 150, 153 (D.D.C. 2007) ("[T]he duty to disclose evidence 'favorable to the accused' pretrial (and during trial) applies 'without regard to whether the failure to disclose it likely would affect the outcome of the upcoming trial.'" (quoting Safavian, 233 F.R.D. at 16)); *United States v. Trie*, 21 F. Supp. 2d 7, 26 (D.D.C. 1998)(The government "has the affirmative duty to resolve doubtful questions in favor of disclosure," so "if the sword of Damocles is hanging over the head of one of the two parties, it is hanging over the head of the government.") (cleaned up) (quoting *United States v. Blackley* 986 F. Supp. 600, 607 (D.D.C. 1997)); *see also Kyles v. Whitley*, 514 U.S. 419, 439 (1995) ("[A] prosecutor anxious about tacking too close to the wind will disclose a favorable piece of evidence. This is as it should be." (citation omitted)).

That same policy is reflected in the Justice Manual.  Justice Manual § 9-5.001 (" Recognizing that it is sometimes difficult to assess the materiality of evidence before trial, prosecutors generally must take a broad view of materiality and err on the side of disclosing exculpatory and impeaching evidence.") (citing *Kyles*, 514 U.S. at 439).  And if the first trial team had been unaware of the policy, the defense specifically identified it in a motion to compel filed before the first trial.  ECF 182 (filed September 9, 2025)(stating that "materiality determinations are not for the prosecution to make" and citing authorities).

### D. The government entrenches itself in the first trial team's bad faith *Brady* suppression.

The government does not apologize or promise to do better.  Instead, it doubles down and insists that suppression of Anglin's grand jury transcript was proper.  The government confesses,

albeit in passing, that it took no steps to seek it out—-and apparently was going to continue ignoring it—but for the Court's insistence that the government respond to the present motion.

There must come a time when this Court has determined that a line must be drawn.  Mr. Jin respectfully submits that such time has long passed.

**E. The sufficiency of probable cause for the grand jury to indict is irrelevant.**

The government advances the unexplained argument that "because the evidence presented was sufficient to find probable cause," the Court should deny the motion to compel Anglin's grand jury transcript.  ECF 326 at 1; *id.* at 4 ("Moreover, the evidence before the grand jury was sufficient to find probable cause despite the inclusion of the mistranslated statement.").  It is not clear why the government believes that the purported sufficiency of the grand jury's probable cause finding through excision of Anglin's false testimony is somehow relevant to the question of whether his transcript containing this false testimony must be produced.

Mr. Jin's Motion was not a motion to suppress the results of a search warrant, or a motion to dismiss for false testimony before the grand jury, where such an analysis would be applicable. *See, e.g.,* ECF 130 – Order denying Motion to Suppress (finding that in the suppression context, "[f]alse statements are 'material' if, when they are 'set to one side, the affidavit's remaining content is insufficient to establish probable cause.'").  Materiality in the *Brady* context is entirely different.  Evidence is "material" for *Brady* purposes so long as there is a "reasonable probability" of a different outcome.  *In re Sealed Case No. 99-3096 (Brady Obligations)*, 185 F.3d 887, 892 (D.C. Cir. 1999).  That the government appears to conflate the materiality standards in these two

distinct contexts proves the wisdom of this Court's admonishments that prosecutors should not withhold evidence on grounds of materiality.[2] *See supra*.

**F.  The government has waived, and therefore conceded, Mr. Jin's argument that the communications of Agent Gallante must be produced to the defense.**

The Defendant's Motion sought not just Anglin's grand jury transcript, but Agent Gallante's communications with the prosecution team regarding the search warrant and complaint, which were supported by affidavits that SA Gallante signed under oath, and which included allegations now conceded to be false.  ECF 317 at 7. The government's Opposition ignores this part of the defendant's motion, and should be deemed to have waived any objection to their production.  *United States v. Cabrera*, 796 F. Spp. 3d 660, 664 (S.D. Cal. 2025)("Generally, a party waives argument when it fails to respond to an argument made to the court."); *see also Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003)("[W]hen a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."); Local Criminal Rule 47(b).  *Wiener v. AXA Equitable Life Ins. Co.*, 58 F.4th 774, 782 (4th Cir. 2023) ("'[T]rial courts must be cautious about raising' waived issues *sua sponte* lest they 'erod[e] the principle of party presentation so basic to our system of adjudication.'") (quoting *Arizona v. California*, 530 U.S. 392, 412-13 (2000)) (alterations in original).

**CONCLUSION**

The Court should grant the Defendant's Motion to Compel.

---

[2]    It would be highly troubling, for example, if the new trial team has determined to not produce exculpatory or impeaching evidence because they concluded that the remaining evidence would still be sufficient for the jury to convict.

Respectfully submitted,

By: /s/ Eugene Gorokhov
Eugene Gorokhov, Esq.
D.C. Bar No. 979785
Burnham & Gorokhov, PLLC
1634 I Street NW, Suite 575
Washington, DC 20006
(202) 386-6920 (phone)
(202) 765-2173 (fax)
eugene@burnhamgorokhov.com

10

## CERTIFICATE OF SERVICE

A copy of the foregoing motion was filed via ECF, which automatically sends a copy to all counsel of record.

Respectfully submitted,
By: /s/ Eugene Gorokhov
Eugene Gorokhov, Esq.
D.C. Bar No. 979785
Burnham & Gorokhov, PLLC
1634 I Street NW, Suite 575
Washington, D.C. 20006
(202) 386-6920 (phone)
(202) 765-2173 (fax)
eugene@burnhamgorokhov.com

1