**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | } | |
| | } | |
| | } | **Criminal No. 23-CR-91-CKK** |
| **v.** | } | |
| | } | |
| **GUANGHUA JIN,** | } | |
| | } | |
| **Defendant.** | } | |
| | } | |
| | } | |

**DEFENDANT'S MOTION TO COMPEL PRODUCTION OF _BRADY_ INFORMATION**
**AND FOR AN EVIDENTIARY HEARING**

Pursuant to the Sixth Amendment, _Brady v. Maryland_, 373 U.S. 83 (1963) and its progeny, Fed. R. Crim. P. 5(f), and Local Rule 5.1, Defendant Guanghua Jin, through counsel, moves for an order requiring that the government: (1) produce all versions of exhibits, including drafts and native versions of such exhibits, that reference Carbuncle and Fully Max transactions, from either the first trial or the government's planned exhibits for retrial; (2) produce all communications between FoA Dawson Anglin and any member of the prosecution team regarding the Carbuncle and Fully Max transactions; and (3) produce all other exculpatory and/or impeaching documents or communications in relation to FoA Dawson Anglin. The Defendant also requests an evidentiary hearing on this Motion.

**BACKGROUND**

The relevant facts have been set forth in the Motion to Dismiss, ECF 309, and Reply in support of that Motion, ECF 322. We briefly repeat the facts here:

- Beginning as early as 2022, FoA Dawson Anglin falsely alleged that certain transactions involving Carbuncle and Fully Max, two DHID front companies, were linked to Winney.

1

- The allegations are conceded to be false.  There was no evidence linking the transactions to Winney.

- The false allegations were perpetuated in official filings, including the search warrant, the complaint, and the indictment.

- FoA Anglin, with the assistance of AUSA Seifert, prepared exhibits for use at the first trial containing these false allegations.

- In the middle of trial, shortly before FOA Anglin began his testimony, AUSA Seifert uploaded new, modified exhibits with the Carbuncle/Fully Max transactions removed.

- FoA Anglin was unsurprised by the modified exhibits, and swore to their accuracy.

- FoA Anglin testified about Exhibit 352, which still contained the false Carbuncle and Fully Max transactions.  Exhibit 352 was admitted at trial.

- The government did not disclose the change in the exhibits, nor the reason for the change, to the defense.

- In February 2026, five months after the first trial, FoA Anglin created at least one new exhibit including Carbuncle and Fully Max transactions.

*See generally* ECF 322 at 6-8.

On March 15, 2026, defense counsel sent two separate *Brady* requests to the government. The first request asked for: "all communications of Dawson Anglin with the prosecution team regarding the Carbuncle and Fully Max transactions, and all other exculpatory and impeaching communications involving Anglin."  Exhibit 1 – Email from E. Gorokhov to C. Magnani dated 3/15/2026.  The second request asked for: "all versions and drafts of exhibits listing Carbuncle and Fully Max as Winney transactions, including all native versions such as, but not limited to, excel spreadsheets." *Id.*   To date, the government has not responded.

**ARGUMENT**

*Brady* obliges the prosecution to disclose "evidence favorable to the accused…where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *In re Sealed Case No. 99-3096 (Brady Obligations)*, 185 F.3d 887, 891 (D.C. Cir. 1999).

The requested disclosures for Anglin's communications and exhibits that reference the Carbuncle and Fully Max transactions are favorable for at least two reasons.

First, the requested disclosures would plainly be, or lead to, evidence and information that impeaches Anglin, the author of many of the false exhibits, and one of two individuals bearing primary responsibility for injecting false allegations into this case. *United States v. Bagley*, 473 U.S. 667, 676 (1985)("impeachment evidence…as well as exculpatory evidence, falls within the *Brady* rule.")(quoting *Giglio v. United States*, 405 U.S. 150, 154 (1972)).

Second, the requested disclosures also reflect negatively on the thoroughness and good faith of the investigation. *Kyles v. Whitley*, 514 U.S. 419, 445 (1995). That is, even if Anglin does not testify, or is excluded as a witness on retrial, the defense would be permitted to "examine[] the police to good effect on their knowledge of [Anglin's] statements and so have attacked the reliability of the investigation in failing even to consider [Anglin's] possible [falsehoods] and in tolerating (if not countenancing) serious possibilities that incriminating evidence had been planted." *Id.* at 446. *See also United States v. Quinn*, 537 F. Supp. 2d 99, 105 (D.D.C. 2008)("A common trial tactic of defense lawyers is to discredit the caliber of the investigation or the decision to charge the defendant, and [a court] may consider such use in assessing a possible *Brady* violation.")(quoting *Bowen v. Maynard*, 799 F.2d 593, 613 (10th Cir. 1986)). In discrediting the quality of an investigation, the defense may discredit the quality of the evidence that investigation

produced.  *See United States v. Sager*, 227 F.3d 1138, 1145 (9th Cir. 2000).  Both "the thoroughness and [ ] the good faith of the investigation" are on the chopping block.  *Kyles*, 514 U.S. at 445.

Likewise, AUSA Seifert's complicity in introducing these false allegations, and her role in covering up the false allegations, is a relevant factor which may be considered by the jury in assessing the strength of the government's case.  When members of the prosecution team engage in misconduct to levy false accusations, and then conceal exculpatory evidence, that conduct is highly probative of the strength of the government's evidence and the credibility of its witnesses. In *United States v. W.R. Grace*, for instance, the district court expressly instructed the jury that it should consider a witness's testimony "with skepticism" *because* "the Department of Justice and the United States Attorney's Office have violated their constitutional obligations to the defendants."  ECF 308-56 – Special jury Instructions from *United States v. W.R. Grace*.

The government's due process violations with respect to the Carbuncle and Fully Max transactions call for appropriate sanctions.  However, this Court should also grant the instant Motion requiring the government to disclose other exhibits which reference the Carbuncle and Fully Max transactions, as well as Anglin's communications with the prosecution team regarding such exhibits, because the disclosures call for further evidence of the government's misconduct, which is relevant and favorable to the defense.

Finally, the Court should order an evidentiary hearing at which the government should be required to disclose the full extent of its misconduct.  This includes answering questions about: (1) the timing of when the prosecution team understood that the Carbuncle/Fully Max transactions were not linked to Winney and (2) what steps the prosecution team took to disclose this fact to the defense.  The government's answers to these questions should be supported by relevant

4

contemporaneous documentation and communications of the issue, and affidavits from witnesses, including, of course, FoA Anglin himself.

In *Nejad*, the government buried a potentially exculpatory letter in discovery, and the court ordered fact finding to determine whether a *Brady* violation had occurred. 487 F. Supp. 3d at 222. The court sought to learn "who knew what when regarding the provenance of [the letter]," "whether the Government lawyers deliberately withheld exculpatory information," and "which prosecutor(s) were involved in making misrepresentation [about the letter]." *Id*. So the court ordered every attorney on the trial team to submit a declaration about when they learned about the letter, when they realized it had not been immediately disclosed, and why it wasn't. *Id*. at 224. The court further ordered the declaration to describe the "specific communications [about the letter] with other prosecutors" and to produce those communications.

Similar factfinding is warranted in this case, where the false allegations infested the complaint, indictment, and in at least one exhibit submitted at trial. Further, there is ample evidence that the prosecution's failure to disclose this to the defense was intentional, rather than inadvertent, and there is also evidence suggesting that at least some member of the prosecution team, i.e., FoA Anglin, had planned to resurrect the false allegations, knowing the allegations to be false.

## CONCLUSION

The Court should grant the Motion to Compel and order an evidentiary hearing.

Respectfully submitted,

By: /s/ Eugene Gorokhov
Eugene Gorokhov, Esq.
D.C. Bar No. 797985
Burnham & Gorokhov, PLLC
1634 I Street NW, Suite 575
Washington, DC 20006
(202) 386-6920 (phone)
(202) 765-2173 (fax)
eugene@burnhamgorokhov.com

6

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I served a copy of the foregoing motion via ECF which automatically sends a copy to all counsel of record.

Respectfully submitted,

By: /s/ Eugene Gorokhov
Eugene Gorokhov, Esq.
D.C. Bar No. 797985
Burnham & Gorokhov, PLLC
1634 I Street NW, Suite 575
Washington, DC 20006
(202) 386-6920 (phone)
(202) 765-2173 (fax)
eugene@burnhamgorokhov.com

7