**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **Criminal No. 23-cr-91-2 (CKK)** |
| v. | |
| **JIN GUANGHUA,** | |
| **Defendant.** | |

## STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the Assistant Attorney General for National Security, and the defendant, JIN GUANGHUA, with the concurrence of his attorney, agree and stipulate to the below factual basis for the defendant's guilty plea – that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

## BACKGROUND

1.     Since 2003, the Democratic People's Republic of North Korea ("DPRK" or "North Korea") has been under sanction by the United Nations ("UN") due to testing and expansion of its nuclear weapons program.  Since 2016, the United States has had comprehensive sanctions against North Korea, cutting it off from the U.S. financial system and limiting the ability of U.S. persons and companies to do business with North Koreans.  As a result, North Korea has sponsored various subterfuge schemes to earn money for the regime.

2.     The International Emergency Economic Powers Act ("IEEPA"), codified at Title 50 U.S.C. § 1701 *et seq.*, enacted in 1977, authorized the President to impose economic sanctions in response to an unusual or extraordinary threat, which has its source in whole or substantial part outside the United States, to the national security, foreign policy, or economy of the United States when the President declares a national emergency with respect to that threat.

3.      The Departments of the Treasury, Commerce, and State enforce and administer economic sanctions under their respective authorities, to accomplish U.S. foreign policy and national security goals. In particular, the Department of the Treasury publishes a publicly available list of individuals and entities ("Specially Designated Nationals and Blocked Persons" or "SDNs") targeted by U.S. economic sanctions. An SDN's property and interests in property, subject to U.S. jurisdiction or in the possession and control of U.S. persons, are blocked when the SDN is placed on the SDN list. U.S. persons, including U.S. financial institutions, are generally prohibited from dealing with SDNs and their property and interests in property.

4.      Using the powers conferred by IEEPA, the President and the Executive Branch have issued orders and regulations governing and prohibiting certain transactions with countries, individuals, and entities suspected of proliferating Weapons of Mass Destruction ("WMD"). On November 14, 1994, the President issued Executive Order ("EO") 12938, finding "that the proliferation of nuclear, biological, and chemical weapons ('weapons of mass destruction') and of the means of delivering such weapons, constitutes an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States, and [declaring] a national emergency to deal with that threat."

5.      On June 28, 2005, the President, to take additional steps with respect to the national emergency described and declared in EO 12938, issued EO 13382 ("Blocking Property of Weapons of Mass Destruction Proliferators and Their Supporters") to target proliferators of WMD and their support networks and to deny designated proliferators access to the U.S. financial and commercial systems. EO 13382 authorized the U.S. Secretary of the Treasury, in consultation with the U.S. Secretary of State, "to take such actions, including the promulgation of rules and regulations, as may be necessary to carry out the purposes" of the EO. Pursuant to that authority,

on April 13, 2009, the Secretary of the Treasury promulgated the "Weapons of Mass Destruction Proliferators Sanctions Regulations" ("WMDPSR"). *See* 31 C.F.R. § 544.101 *et seq.* EO 13,382 and the Weapons of Mass Destruction Proliferators Sanctions Regulations prohibit transactions or dealings by any U.S. person or within the United States with individuals and entities placed on the SDN list, unless exempt or authorized by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"), which is located in Washington, D.C.

6.      On August 11, 2009, the Department of the Treasury designated the North Korean bank Korea Kwangson Banking Corp. ("KKBC") under EO 13382 for providing financial services in support of both Tanchon Commercial Bank and Korea Hyoksin Trading Corporation, both of which were previously identified by the President as WMD proliferators. All three entities had been designated by the UN pursuant to UN Security Council Resolution 1718 for their roles in North Korea's WMD and missile programs.

7.      On March 11, 2013, the Department of the Treasury designated the Foreign Trade Bank ("FTB"), North Korea's primary foreign exchange bank, pursuant to EO 13382, for providing financial services that assisted in the proliferating of WMD. In the designation, Treasury stated, "North Korea uses FTB to facilitate transactions on behalf of actors linked to its proliferation network, which is under increasing pressure from recent international sanctions. . . . By designating FTB, the Treasury Department is targeting a key financial node in North Korea's WMD apparatus and cutting it off from the U.S. financial system. FTB is a state-owned bank established in 1959. FTB acts as North Korea's primary foreign exchange bank and has provided key financial support to [KKBC]."

8.      On March 15, 2016, the President, to take additional steps with respect to the previously described national emergency, issued EO 13,722 to address the Government of North

Korea's continuing pursuit of its nuclear and missile programs. Pursuant to that authority, on March 16, 2016, the Secretary of the Treasury promulgated the "North Korea Sanctions Regulations" ("NKSR"). *See* 31 C.F.R. § 510.101 *et seq.* EO 13,722 and the North Korea Sanctions Regulations prohibit the export of financial services from the United States or by any U.S. person to North Korea, unless exempt or authorized by OFAC. Under these orders, U.S. financial institutions were barred from providing correspondent banking services to North Korea entities.

9.    EO 13466, EO 13722, and North Korea Sanctions Regulations also prohibited any transaction by any U.S. person or within the United States that evaded or avoided, or had the purpose of evading or avoiding, any prohibition set forth in these regulations.

## ENTITIES AND CO-CONSPIRATORS

10.    Sim Hyon-Sop was a North Korean national employed by FTB and KKBC. Sim worked in the United Arab Emirates.

11.    North Korea Tobacco Company 1 ("NKTC1") was a tobacco company owned by North Korea's Ministry of People's Armed Forces ("MPAF"), which was designated by OFAC in June 2017.

12.    North Korea Tobacco Company 2 ("NKTC2") was a North Korean state-owned tobacco company, headquartered in Pyongyang, North Korea.

13.    Defendant JIN GUANGHUA was a Chinese national from Liaoning Province in China, and resident of Australia. JIN was a 50 percent shareholder and General Manager of a series of companies established in New Zealand, United Kingdom, China, and United Arab Emirates (the "Winney Entities").

4

14. Qin Guoming was a Chinese national from Liaoning Province in China, and resident of China. Qin was a 50 percent shareholder and senior executive of the Winney Entities.

15. Han Linlin was a Chinese national from Liaoning Province in China, and resident of China and the United Arab Emirates. Han was employed by the Winney Entities.

16. From at least on or about March 15, 2016, to in or around March 2019, the Winney Entities purchased approximately $14 million worth of tobacco from a tobacco producer in Argentina and sold the same to NKTC1 and NKTC2.

17. The U.S. dollar transactions were processed by U.S. financial institutions.

18. The funds that the Winney Entities used for the transactions had a North Korean nexus. Accordingly, U.S. financial institutions were prohibited under the WMDPSR and NKSR from processing these transactions without a license from OFAC.

19. JIN knew that the transactions were prohibited without a license from OFAC.

20. JIN, QIN, HAN, and SIM conspired to commit an offense against the United States: namely, to obstruct, impair, and impede the lawful function of OFAC. They agreed to conduct these transactions without obtaining a license from OFAC, while knowing that the transactions would be processed by U.S. financial institutions.

21. In furtherance of the conspiracy, one or more members of the conspiracy caused U.S. financial institutions to process these transactions by ordering wire transfers in U.S. dollars.

## LIMITED NATURE OF PROFFER

22.    This proffer of evidence is not intended to constitute a complete statement of all facts known by JIN but is a minimum statement of facts intended to provide the necessary factual predicate for the guilty plea.  The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for defendant's plea of guilty to the charged offense.

Respectfully submitted,

JOHN A. EISENBERG
ASSISTANT ATTORNEY GENERAL FOR
NATIONAL SECURITY

By:    */s/ Christopher Magnani*
CHRISTOPHER MAGNANI
ELI ROSS
Trial Attorneys
Counterintelligence and Export Control Section
National Security Division
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, D.C. 20530
Telephone: (202) 353-9261
Christopher.Magnani@usdoj.gov

6

## DEFENDANT'S ACKNOWLEDGEMENT

I, Jin Guanghua, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 5/22/2026

Jin Guanghua
Defendant

## ATTORNEY'S ACKNOWLEDGEMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 5/22/2C

Eugene Gorokhov
Attorney for Defendant

7